1  DILLINGHAM & MURPHY, LLP
2  CARLA J. HARTLEY (SBN 117213)
   BARBARA L. HARRIS CHIANG (SBN 206892)
3  225 Bush Street, 6th Floor
   San Francisco, California 94104-4207
4  Telephone:    (415) 397-2700
   Facsimile:    (415) 397-3300
5
6  Attorneys for Defendants
   R & L BROSAMER, INC., GUY CULP, JOHN
7  POLEGARD, SHAWN OTHEIN and JOSE
   ESCOBEDO
8

*ORIGINAL FILED*
*JUN 26 2008*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

9              UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

11  CHARLENE SHOEMAKER, an individual,       Case No.
                                             CV 08        3098  WDB
12              Plaintiff,
                                             NOTICE OF REMOVAL OF ACTION
13         v.                                UNDER 28 U.S.C. § 1441(b) AND 1446
                                             [FEDERAL QUESTION]
14  R & L BROSAMER, INC., a California
    corporation; GUY CULP, an individual; JOHN
15  POLEGARD, an individual; SHAWN OTHEIN,
    an individual; JOSE ESCOBEDO, an individual;
16  and DOES 1 through 120, inclusive,

17              Defendants.

18         TO PLAINTIFF CHARLENE SHOEMAKER, AND HER ATTORNEY OF RECORD,

19  AND TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

20  THE NORTHERN DISTRICT OF CALIFORNIA:

21         PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441(b) and 1446, defendant R &

22  L BROSAMER, INC. in Action No. C 08-00913, filed in the Superior Court of the State of

23  California in the County of Contra Costa, styled "CHARLENE SHOEMAKER, an individual, v.

24  R & L BROSAMER, INC., a California corporation; GUY CULP, an individual; JOHN

25  POLEGARD, an individual; SHAWN OTHEIN, an individual; JOSE ESCOBEDO, an individual;

26  and DOES 1 through 120, inclusive," hereby removes said action to the United States District

27  Court for the Northern District of California, San Francisco Division.

28         PLEASE TAKE FURTHER NOTICE THAT a true copy of this Petition For Removal is

---

1   being filed concurrently with the Clerk of the Superior Court of the State of California in the

2   County of Contra Costa.

3         REMOVAL IS BASED ON THE FOLLOWING GROUNDS:

4         1.      This is a civil action which the Court has original jurisdiction of under 28 U.S.C. §

5   1441 (federal question) and 28 U.S.C. § 1446.  The action may be removed to this Court by

6   defendant in that plaintiff alleges a claim for liquidated damages pursuant to the Fair Standards

7   Labor Act, 29 U.S.C. section 216, subsection (b) for unpaid overtime compensation and therefore

8   arises under the Constitution, laws, or treatises of the United States within the meaning of 28

9   U.S.C. § 1441(b).

10        2.      Additionally, this Court has original jurisdiction over this action and the First

11  Amended Complaint is removable to this Court on federal question grounds because plaintiff's

12  claim for recovery of unpaid wages, including overtime compensation, the Twelfth Cause of

13  Action (as well as her First Cause of Action for Unlawful a Harassment Based on Sex in violation

14  of California Government Code Section 12940, *et seq.*; Second Cause of Action for Unlawful

15  Discrimination in Pay Based on Sex in Violation of California Labor Code § 1197.5; Third Cause

16  of Action for Unlawful Discrimination Based on Sex in Violation of California Government Code

17  Section 12940, *et seq.*; Fourth Cause of Action for Unlawful Retaliation in Violation of California

18  Government Code Section 12940, et seq.; Fifth Cause of Action for Wrongful Termination and

19  Retaliation in Violation of Public Policy;  Eighth Cause of Action for Intentional Infliction of

20  Emotional Distress; and Ninth Cause of Action for Negligent Infliction of Emotional Distress

21  [each of these causes of action are incorporated by reference into the Twelfth Cause of Action])

22  are based upon, and necessarily involve, construction, application, and interpretation of the terms

23  of the collective bargaining agreement in place between R & L Brosamer, Inc., an employer, and

24  the Associated General Contractors of California, a labor organization representing employees in

25  an industry affecting commerce, as defined by 29 U.S.C. § 151 (the "CBA").[1]  Accordingly,

26  plaintiff's claims invest this Court with original subject matter jurisdiction under § 301 of the

27  _____

28  [1] A true and correct copy of the CBA in effect during the relevant period of plaintiff's employment
    with R & L Brosamer, Inc. and regulating the terms and conditions of plaintiff's employment, is
    attached hereto as Exhibit A.

1    Labor-Management Relations Act, 29 U.S.C. § 185 ("§ 301").

2          3.    The San Francisco Division of the Northern District Court is the correct division for

3    this action because defendant R & L Brosamer's principal place of business is located in Contra

4    Costa County and the matter was originally filed in Contra Costa County.

5          4.    Plaintiff Charlene Shoemaker filed her Complaint on April 4, 2008 in the Superior

6    Court of California in the County of Contra Costa against R & L BROSAMER, INC., GUY

7    CULP, OHN POLEGARD, SHAWN OTHEIN and JOSE ESCOBEDO (see Exhibit B, First

8    Amended Complaint for Damages ("FAC")). Plaintiff subsequently filed her First Amended

9    Complaint on April 24, 2008. Plaintiff's unverified First Amended Complaint alleges causes of

10   action for: (1) Unlawful a Harassment Based on Sex in violation of California Government Code

11   Section 12940, *et seq.*; (2) Unlawful Discrimination in Pay Based on Sex in Violation of

12   California Labor Code § 1197.5; (3) Unlawful Discrimination Based on Sex in Violation of

13   California Government Code Section 12940, *et seq.*; (4) Unlawful Retaliation in Violation of

14   California Government Code Section 12940, *et seq.*; (5) Wrongful Termination and Retaliation in

15   Violation of Public Policy; (6) Assault; (7) Battery; (8) Intentional Infliction of Emotional

16   Distress; (9) Negligent Infliction of Emotional Distress; (10) Negligent Hiring of Guy Culp; (11)

17   Negligent Retention of Guy Culp; (12) Recovery of Unpaid Wages, Including Overtime

18   Compensation and liquidated damages pursuant to 29 U.S.C. section 216, subsection (b) of the

19   Fair Labor Standards Act; and (13) Recovery of Waiting Time Penalties.

20         5.    R & L Brosamer, Inc. has filed no other paper or pleading in said action and this

21   Notice of Removal is filed within thirty days after service was allegedly effected on R & L

22   Brosamer, Inc. Plaintiff attempted to serve R & L Brosamer, Inc. by substitute service. R & L

23   Brosamer, Inc. disputes valid service of the Summons and First Amended Complaint.

24         6.    The First Amended Complaint alleges that plaintiff, a union-represented employee

25   of R & L Brosamer, worked five, one hour pre-shift hours per week for which she was allegedly

26   not compensated, and did not accrue additional vacation time, retirement pay, and/or paid time off

27   based on the Pre-Shift hours. (FAC ¶¶ 100, 102.)

28         7.    Specifically, the First Amended Complaint alleges: "During the entire time Plaintiff

1   worked on the Coachella Project, . . ., she reported to work no less than one hour prior to the start

2   time of each of her shifts and performing work from said time up to the start of each shift ("Pre-

3   Shift Hours"). . . . Plaintiff was not paid wages for any of these Pre-Shift Hours worked.

4   Approximately all of the Pre-Shift Hours were worked by Plaintiff in addition to her eight (8)-hour

5   shift per scheduled work day, thereby entitling Plaintiff to overtime compensation for each of the

6   Pre-Shift Hours." (FAC ¶ 100.)  "Plaintiff did not accrue additional vacation time, retirement pay,

7   and/or paid time off based on the Pre-Shift Hours she worked, to which she was entitled."  (FAC ¶

8   102.)

9          8.     This Court has original jurisdiction over this action and the First Amended

10  Complaint is removable to this Court on federal question grounds because Plaintiff seeks

11  liquidated damages in an amount equal to the alleged unpaid overtime compensation pursuant to

12  the Fair Labor Standards Act,  29 U.S.C. section 216, subsection (b).  (FAC ¶ 107.)

13         9.     A further basis for jurisdiction over this action is that Plaintiff's claim for wages, is

14  based upon, and necessarily involves, construction, application, and interpretation of the terms of

15  the collective bargaining agreement in place between the Associated General Contractors of

16  California, Inc., the Building Industry Association of Southern California, Inc., and the Southern

17  Contractors Associate, Inc. and the Southern California District Council of Laborers affiliated with

18  Laborers' International Union of North America, AFL-CIO, a labor organization representing

19  employees in an industry affecting commerce, as defined by 29 U.S.C. § 151 (the "CBA").

20  Accordingly, plaintiff's claims invest this Court with original subject matter jurisdiction under §

21  301 of the Labor-Management Relations Act, 29 U.S.C. § 185 ("§ 301").

22         10.    As reflected in Exhibit A, the terms and conditions of plaintiff's employment, with

23  R & L Brosamer are regulated by the CBA.

24         11.    As stated by the Ninth Circuit Court of Appeals in Young v. Anthony's Fist

25  Grottos, Inc. (9th Cir. 1987) 830 F.2d 993, 997:

26         A suit for breach of a collective bargaining agreement is governed exclusively by
           federal law under Section 301.  The preemptive force of Section 301 is so powerful
27         as to displace entirely any state claim based on a collective bargaining agreement,
           and any state claim whose outcome depends on analysis of the collective bargaining
28         agreement.

1   To determine plaintiff's hours, wages, eligibility for vacation, retirement benefits, and time

2   off, the Court will necessarily have to interpret and apply the provisions of the CBA.  Section 301

3   thus completely preempts plaintiff's Twelfth Cause of Action for Recovery of Unpaid Wages,

4   Including Overtime Compensation, and the Complaint is accordingly removable on the basis that it

5   presents a federal question.  (Caterpillar, Inc. v. Williams (1987) 482 U.S. 386, 391-393.)

6        12.    Removal is proper even though the First Amended Complaint may combine other

7   state claims along with plaintiff's federal claims.  Pursuant to 28 U.S.C. § 1367(a), federal courts

8   have supplemental jurisdiction to adjudicate state claims that are transactionally related to the

9   federal claim.  Supplemental jurisdiction is proper where the relationship between the federal and

10  state claims is such that the claims "form part of the same case or controversy under Article III of

11  the United States Constitution." (28 U.S.C. § 1367(a).)  No other basis for federal jurisdiction is

12  required.  (See Danner v. Himmelfarb (9th Cir. 1988) 858 F.2d 515, 521-522.)  Here, the

13  allegations of the First Amended Complaint make it plain that the identical alleged facts and

14  circumstances purportedly giving rise to plaintiff's state claims (First through Eleventh Causes of

15  Action, which are incorporated by reference into the Twelfth Cause of Action) are also alleged to

16  give rise to her federally preempted claim.

17       13.    The following exhibits are the only pleadings defendant R & L Brosamer, Inc. has

18  been served with in the State Court action:  Exhibit B, First Amended Complaint for Damages

19  with Summons; Exhibit C, Complaint.

20       14.    This Notice of Removal is signed by counsel for R & L  Brosamer, Inc. pursuant to

21  Rule 11 of the Federal Rules of Civil Procedure.

22       15.    All other defendants, Guy Culp, John Polegard, Shawn Othein, and Jose Escobedo,

23  consent to the removal of this matter.  (See Consent Of Defendants Guy Culp, John Polegard,

24  Shawn Othein And Jose Escobedo To  Removal Of Action By Defendant R & L Brosamer, Inc.,

25  filed concurrently with this Notice.)

26  //

27  //

28  //

1    WHEREFORE, R & L Brosamer, Inc. respectfully requests that this action be removed to

2    this Court.

3    Dated:  June 26, 2008                      DILLINGHAM & MURPHY, LLP
                                                CARLA J. HARTLEY
4                                               BARBARA L. HARRIS CHIANG

5

6                                    By:    *Barbara L. Harris Chiang*

7                                          Attorneys for Defendants
                                           R & L BROSAMER, INC., GUY CULP, JOHN
8                                          POLEGARD, SHAWN OTHEIN and JOSE
                                           ESCOBEDO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

**2003 - 2006
Laborers
Agreement**

# TABLE OF CONTENTS

| Title | Article | Page |
|---|---|---|
| Apprenticeship | XXV | 40 |
| Breaks | XVI | 25 |
| Business Representatives | VII | 19 |
| Center For Contract Compliance | XXII | 37 |
| Classifications | VIII | 20 |
| Contract Administration Fund | XXI | 37 |
| Contributions to Trust Funds | Attachment No.1 | 45 |
| Coverage | I | 2 |
| Davis-Bacon | XXIV | 40 |
| Definitions | I | 2 |
| Delinquencies | XXIII | 38 |
| Demolition Work | I | 4 |
| Dispatching Procedures | III | 8 |
| Drinking Water | XVII | 26 |
| Drug and Alcohol Abuse Prevention Program | XXVI | 41 |
| Emergencies | XVIII | 29 |
| Equal Employment Opportunity | XIII | 22 |
| Foreman | XV | 23 |
| Foreman Wage Rate | XIX | 32 |
| Fund for Construction Industry Advancement | XX | 37 |
| General Provisions | I | 2 |
| General Saving Clause | XI | 22 |
| Grievances and Disputes, Procedure for Settlement | VI | 17 |
| Health and Welfare | XIX | 31 |
| Hiring Hall Provisions | III | 8 |
| Holidays | XVI | 24 |
| Industry Fund | XX | 37 |
| Jobsite Transportation | XVII | 26 |
| Jurisdictional Disputes | IV | 13 |
| Manhole Building | I | 6 |
| Material, Supplies, Equipment, Purchase of | V | 15 |
| Meal Periods | XVI | 25 |
| Other Agreements | X | 21 |
| Overtime, Rates | XIX | 30 |
| Overtime, Shift | XVIII | 27 |
| Owner-Operators | V | 15 |
| Parking | XVII | 26 |
| Payment of Wages | XVI | 24 |
| Pension Plan | XIX | 31 |
| Prejob Conference | XIV | 23 |
| Protective Clothing | XVIII | 30 |
| Public Works Project | XXIV | 40 |
| Qualifications | IX | 21 |
| Repairs, Warranty | I | 4 |
| Reporting Time and Minimum Pay | XVIII | 29 |
| Residential Wages | XIX | 36 |



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**

## TABLE OF CONTENTS (Continued)

| Title | Article | Page |
|---|---|---|
| Residential Work | Appendix A | 43 |
| Rest Periods | XVII | 26 |
| Safety | XVII | 25 |
| Shifts: | | |
|   Single | XVIII | 26 |
|   Special | XVIII | 28 |
|   Multiple | XVIII | 27 |
| Show-up Time | XVIII | 30 |
| Signing of Documents | XVII | 26 |
| Starting Times, Deviation | XVIII | 27 |
| Stewards | VII | 19 |
| Strikes, Lockouts, Jurisdictional Disputes | IV | 13 |
| Subcontracting, Employees Rights, Union Standards and Work Preservation | V | 14 |
| Subsistence | XVIII | 29 |
| Supplemental Dues | III | 12 |
| Term, Termination and Renewal | XII | 22 |
| Tide Work | XVIII | 28 |
| Training and Retraining Trust | XIX | 32 |
| Transfer of Employees | III | 13 |
| Union Recognition | II | 8 |
| Unit Work (other agreements) | I | 6 |
| Vacation Plan | XIX | 32 |
| Wage Scales | XIX | 30 |
| Watchmen | XIX | 31 |
| Work Assignments | IV | 14 |
| Working Rules | XVIII | 26 |



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

# MASTER LABOR AGREEMENT

## between

## SOUTHERN CALIFORNIA GENERAL CONTRACTORS

## and

## THE SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS

This Agreement entered into this first day of July 2003, by and between the **Associated General Contractors of California, Inc.**, the **Building Industry Association of Southern California, Inc.**, and the **Southern California Contractors Association, Inc.**, on behalf of their respective eligible members, hereinafter referred to as the **CONTRACTORS**; and, the **Southern California District Council of Laborers affiliated with Laborers' International Union of North America, AFL-CIO**, on behalf of itself and on behalf of its affiliated Local Unions which have jurisdiction over the work in the territory hereinafter described, all affiliated with the Building and Construction Trades Department of the American Federation of Labor and Congress of Industrial Organizations; hereinafter referred to as the **UNION**.

## PURPOSE

The Contractors are engaged in construction work in Southern California and, in the performance of their present and future operations, are employing and will employ workmen under the terms of this Agreement. The Contractors want to be assured of their ability to procure workmen in the geographic area hereinafter defined in Article I, in sufficient number and with sufficient skill to assure continuity of work in the completion of their construction work. The Union and the Contractors, by this Agreement, intend to establish uniform rates of pay, hours of employment and working conditions for the employees covered by this Agreement. The Union and the Contractors further intend by this Agreement to provide, establish and put into practice an effective method for the settlement of misunderstandings, disputes or grievances, with the thought in mind that the Contractors are assured continuity of operation and the employees of the Contractors are assured continuity of employment and industrial peace is maintained.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market areas and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the individual employers.

To effectively implement the foregoing, the parties to the Agreement hereby establish a Committee composed of seven (7) representatives appointed by the Southern California District Council of Laborers and seven (7) representatives appointed by the Southern California General Contractors. This Committee will review requests for changes in the terms and conditions of the Labor Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by the Agreement. The Committee is authorized to recommend such changes as it deems to be in the best interest of the parties to the Agreement, which changes, if approved as set forth below, shall not be subject to Article X, Paragraphs A or B of the Agreement.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 2

Approval of any change shall not be subject to Article IV or VI of the Agreement, and shall require a written agreement approved and executed by duly authorized representatives of the Southern California District Council of Laborers and the Southern California General Contractors.

This Committee shall be empowered to develop rules and procedures for its deliberations.

## ARTICLE I
## General Provisions

### A. DEFINITIONS:

1. The term "Contractor" or "Employer," as used herein, shall refer to an Employer party to or bound by this Agreement.

2. The term "Association," as used herein, shall refer to the Associations previously named and signatory to this Agreement.

3. The term "Union," as used herein, shall refer to the Southern California District Council of Laborers and its affiliated Local Unions which have jurisdiction over the work in the territory covered by this Agreement. The term "Local Union", as used herein, shall refer to a local Union affiliated with Southern California District Council of Laborers, which has jurisdiction over the work in the territory covered by the agreement.

4. The term "Workman" or "Workmen," as used herein, shall refer to a person, or persons, in the labor market who are not employed.

5. The term "Employee(s)" as used herein, shall refer to the employed person, or persons, working in the jurisdiction covered by this Agreement.

6. The term "Superintendent" as used herein shall refer to an employee who does not work with the tools of the trade and who may supervise employees working at the trade.

7. All personal nouns and pronouns refer to the male and female gender.

### B. COVERAGE

1. This Agreement shall apply to and cover all hours of employment of each employee of the Contractors, including Developers, Builders or Construction Managers and to Owner-Builders to the extent permitted by law within the territory as described in this paragraph, employed to perform or performing any construction work within the jurisdiction of the Union, as such employees and construction work are respectively defined hereafter in this Agreement in the area known as Southern California and more particularly described as the Counties of Los Angeles, Inyo, Mono, Orange, Riverside, San Bernardino, Imperial, Ventura, Santa Barbara, San Luis Obispo, Kern and in addition: Richardson Rock, Santa Cruz Island, Arch Rock, San Nicholas Island, Santa Catalina Island, San Miguel Island, Santa Barbara Island, San Clemente Island, Santa Rosa Island, Anacapa Island, including the Channel Islands Monument.

2. This Agreement is made for and on behalf of and shall be binding upon all eligible persons, firms or corporations who at the time of execution of this Agreement are, or during the term hereof become, eligible members of the Associations.

3. Each individual Contractor, whether corporate or other legal entity, or its successor, shall be liable under,

**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

subject to and bound by this Agreement. It is agreed that the wages, hours and working conditions of this Agreement are the wages, hours and working conditions in the area covered by this Agreement.

4.   This Agreement is separate and distinct from and independent of all other Agreements entered into between the Union and other Contractor organizations, irrespective of any similarity between this Agreement and any such other Agreements, and no acts or things done by the parties to such Agreements or notices given pursuant to the provisions hereof, shall change or modify this Agreement or in any manner affect the contractual relationships of the parties herein, except as otherwise provided in the Article covering existing and other Agreements.

5.   This Agreement shall cover all work coming within the claimed jurisdiction of the Laborers' International Union of North America, including all work involved in laying and installation of pipe, to be performed at the jobsite as set forth in Article I of this Agreement.

(a)   It shall cover work on building, heavy highway, and engineering construction, including the construction of, in whole or in part, or in improvement or modification thereof, including any structure or operations which are incidental thereto, the assembly, operation, maintenance and repair of all equipment, vehicles, and other facilities, including helicopters used in connection with the performance of the aforementioned work and services and including without limitation the following types or classes of work:

(b)   Street and highway work, grading and paving, excavation of earth and rock, including non-destructive utility line location (hydrovac operations), grade separations, elevated highways, viaducts, bridges, abutments, retaining walls, subways, airport grading, surfacing and drainage, electric transmission line and conduit projects, underground communication and conduit installation, fiberoptic installation, blowing, splicing, testing and related work for telephone, T.V. or other communication transmission through underground conduit, water supply, water development, reclamation, irrigation, draining and flood control projects, water mains, pipe lines, sanitation and sewer projects, dams, aqueducts, canals, reservoirs, intakes, channels, levees, dikes, revetments, quarrying of breakwater or riprap stone, foundations, pile driving, piers, locks, dikes, river and harbor projects, breakwaters, jetties, dredging, tunnels, soil testing and building inspection.

(c)   The construction, erection, alteration, repair, modification, demolition, addition or improvement, in whole or in part, of any building structure, including oil or gas refineries and incidental structures, solar energy installations and appurtenances thereto, also including any grading, excavation, or similar operations which are incidental thereto, or the installation, operation, maintenance and repair of equipment, and other facilities used in connection with the performance of such building construction except where such structures are an incidental or supplemental part of highway and engineering construction, as defined in this Article.

(d)   All work involved in laying and installation of industrial pipe regardless of the material used or substance conveyed.

(e)   All work involved in laying and installation of pipe both outside and within sewage filtration and water treatment plants, including, but not limited to, mechanical and pressurized pipe within.

(f)   All work involved in laying and installation of landscaping irrigation pipe.

6.   All work performed in the Contractor's warehouses, shops or yards which have been particularly provided or set up to handle work in connection with a job or project covered by the terms of this Agreement and all of the production or fabrication of materials by the Contractor for use on the project shall be subject to the terms and conditions of this Agreement.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 4

**C.    Repairs**

Repairs necessitated by defects of material or workmanship or adjustments of newly purchased and/or installed equipment or machinery will not be subject to this Agreement when such repairs and/or adjustments are made by the manufacturer thereof or his agents or employees pursuant to the terms of a manufacturer's guarantee and the Union will not hamper such manufacturer or his agents or employees on such exempted work.

**D.    Demolition**

It is agreed that where demolition work is included under the terms of the job specifications of the General Contractor or subcontractor such work, including the salvage of the material from the buildings to be demolished, as limited by the definition of "Demolition Laborer, the Cleaning of Brick and Lumber" contained in the wage scale, shall be performed by a person, firm or corporation signatory to this Agreement.

**E.**    This Agreement shall cover all work coming within the claimed jurisdiction of the Laborers' International Union of North America, including all work involved in laying and installation of pipe, to be performed at the jobsite as set forth in Article I of this Agreement.

**F.**    Subject to the preceding paragraph, and subject to Paragraphs I and K of this Article, it is agreed that Laborers work shall include but not be limited to:

1.    All work necessary to tend all other building trades craftsmen, including stripping of concrete forms, handling and raising of slip forms, sewer cleaners, gardening, horticulture, landscaping, trackmen (construction, maintenance and repair), cleanup of debris, grounds and buildings and all General Laborers' work. The hoisting of rods except when a derrick or outrigger operated by other than hand power is used is claimed as Laborers' work, also the erection and dismantling of scaffolding regardless of height.

2.    All work in connection with excavation for building and other construction including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons and cofferdams, manning, setting and moving all manually movable pumps.

3.    All work in connection with concrete work, including all concrete tilt-up, including chipping and grinding, patching, sandblasting, water blasting, mixing, handling, shoveling, rough-strike off of concrete, concrete that may be hand worked by any method or means, conveying, pouring, handling of the chute from readymix trucks, walls, slabs, decks, floors, foundations, footings, curbs, gutters and sidewalks, concrete pumps and similar type machines, grout pumps, nozzlemen, (including gunmen and potmen), vibrating, guniting and otherwise applying concrete whether done by hand or any other process; and wrecking, stripping, dismantling and handling concrete forms and false work, cutting of concrete piles and filling of cracks by any method on any surface.

4.    Installation and application of epoxy.

5.    All work in the excavation, grading, preparation, concreting, asphalt and mastic paving, paving, ramming, curbing, flagging, traffic control by any method, and laying of other stone materials, and surfacing of streets, ways, courts, underpasses, overpasses and bridges.

6.    All work in connection with the operation of spreader boxes, such as True-Lay, Rola Pavers and Laytons or similar type models, including but not limited to shoveling and shifting material and cleaning of boxes.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

7. All work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concrete of same; and the backfilling, grading and resurfacing of same.

8. All work in connection with the construction of caissons, cofferdams, subways (except as covered by the Tunnel Master Labor Agreement), aqueducts, irrigation water lines, culverts, flood controls, and both metallic and non-metallic drains and sewers, any type of conduit, no-joint pipe, including the cribbing, lagging, bracing, sheeting and checking grade for pipe laying, trench jacking and handling of hand-guided lagging hammers on all open trenches and ditches.

9. All work in connection with the shoring and under-pinning, including cutting, fitting, placing and raising, of all structures, soldier beams and sheet beams.

10. All work in connection with drilling, all work of loading, placing and blasting of all powder and explosives of whatever type, regardless of the method used for such loading and placing. All power drills (whether core, diamond, wagon, track, multiple unit or other) and any and all types of mechanical drills without regard to motive power, size of drill bit, or self contained nature of the machine.

11. All work in connection with horizontal directional drills, including operation of drill and electronic tracking device (locator). All helper work on water well drills.

12. All work involved in the construction, replacement, alteration or modification of all rail lines, including salvage, demolition and take up, on main lines, siding, service lines or on any structures part of or appurtenant to such facilities, whether located on railroad, public or private property and rights of way of any sort.

13. All signaling and rigging in connection with Laborers' work.

14. All work in connection with the wrecking of buildings and structures as limited by the definition of "Demolition Laborer, the Cleaning of Brick and Lumber" contained in the wage scale.

15. All work in connection with the slinging, handling and placing of all riprap, rock and stone on highways, jetties, retaining walls or wherever used, wrecking yards and wrecking work on construction and/or razing sites.

16. The operation of remote controlled robotic equipment in connection with Laborers' work.

17. Mechanically stabilized earthen wall construction and installation.

18. All work on precasting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job.

19. All stocking and distribution of drywall material after it has been delivered to the jobsite; general cleanup of drywall scrap, framing scrap, lathing scrap, roofing scrap, plastering scrap, electrical scrap and associated materials; jobsite distribution of all appliances, ranges and furniture as well as cleanup work associated therewith.

20. The installation of all forms of fencing of any type or material including chain link, V-mesh, rectangular and square mesh fabrics, revetments, wire netting and barb wire, baseball backstops, tennis courts, cribs, cages, window guards and safety screens, interior and exterior. All screens including panels of metal, fiberglass, glass or synthetic materials. Metal corrals, pens, runs or enclosures. Metal and wood



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006**
**Laborers**
**Agreement**
Page 5

guard rail, road markers and street signs. Post and cable or chain fences or barriers. Installation of recreational game equipment including swings, slides, climbing structure, basketball backstops, net post and bars. Installation of metal gates and mechanical operators. Balcony railings where wire mesh, metal or wood panels are involved. Flag poles and street subdivision identification sign posts. All post hole drilling or excavation and the driving of fence posts for the work described above. The loading, moving and unloading of fencing materials.

21.   Installation and cutting of pavers and paving stone.

22.   Operation of all small skid steer loaders.

G.   Classifications listed in this Agreement which are not listed under this Section shall be included in the coverage and description of Laborers' work claimed just as though incorporated in full in this Article. This does not restrict the Laborers from performing other work.

H.   Any Contractor not signatory to both the Laborers' Tunnel Agreement and the Master Labor Agreement shall agree that whenever work is performed which is covered by the terms of the Laborers' Tunnel Master Agreement for the Eleven Southern California Counties, the provisions of that Agreement shall be fully applicable to and binding upon the individual Contractor.

I.   It is agreed that work covered by the following agreements: Plaster Tenders, Brick Tenders, Tunnel, Gunite, Housemovers, Horizontal Directional Drill, Parking and Highway Improvement and Landscape are a part of the work description covered by this Agreement and are a part of the bargaining unit work covered by this Agreement for work in the Eleven Southern California Counties. To the extent that any work covered by such agreement is encompassed by any construction agreement being performed by or let to the Contractor, such other wages, hours and economic terms of employment shall be considered a part of this Agreement in the Eleven Southern California Counties by reference. It is agreed that the foregoing work is unit work and as such the subcontracting provisions of Article V shall be applicable to such work.

J.   This Agreement shall not prevent the Contractor from negotiating or making agreements with the Laborers' Union for any work or classification not covered by this Agreement.

K.   Whenever any work covered by this Agreement is to be eliminated or modified by the introduction of any new machine, mechanized process, new or different materials, or new or different method or technology with respect to the performance of such work, persons employed under this Agreement and subject thereto, will be given preference for employment and will be assigned such work where it is not in conflict with International jurisdictional agreements with respect to such new machine, mechanized process, new or different material, or new or different method or technology; and the use of any such new machine, mechanized process, new or different material, or new or different method or technology shall be subject to and covered by this Agreement, regardless of the nature, size or characteristics of such new machine, mechanized process, new or different material, or new or different method or technology.

L.   Manhole building shall be performed by bargaining unit employees qualified to perform manhole building. The Contractor may subcontract such work to a licensed contractor whose bargaining unit employees shall perform such work. Such subcontract shall in all ways comply with the article of this Agreement dealing with subcontracting. Bargaining unit employees shall receive wages and benefits equivalent to or greater than those contained in this Agreement for unit employees performing such work. In either case the bargaining unit employees shall receive benefits for actual hours worked, as per Article XVIII, Paragraph M, of this Agreement.

M.   Work involved in laying and installation of pipe which is covered by this Agreement shall include, but shall not be limited to:



AGC
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

1.   All work incidental to the laying of pipe, the unloading, handling and distribution of all pipe, fittings, tools, materials, equipment and laser beam operation.

2.   Industrial pipe fitting in connection with Laborers' work.

3.   All inside pipe coating or lining by any method including joint finishing; pipe bursting.

4.   Welding, certified or otherwise, in connection with Laborers' work.

5.   Installation of low voltage automatic irrigation and lawn sprinkler systems, including but not limited to installation of automatic controllers, valves, sensors, master control panels, display boards, junction boxes and conductors including all components thereof.

6.   Installation of valve boxes, thrust blocks, both precast & poured in place, pipe hangers & supports incidental to installation of the entire piping system.

7.   Start-up testing, flushing, purging, water balancing, placing into operation all piping equipment, fixtures and appurtenances installed under this Agreement.

8.   Any line inside a structure which provides water to work covered by this Agreement, including piping for ornamental pools and fountains when done in conjunction with landscaping.

9.   All piping for ornamental stream beds, waterways and swimming pools.

10.  All piping for sewers and drain lines and all preparation on the jobsite allied directly thereto, including fabrication, replacement, repair and service of such installations.

11.  All temporary irrigation and lawn sprinkler systems, all temporary water lines.

12.  All decorative landscaping, such as decorative pools, ponds, reflecting units, hand grade landscaped areas, finish grade, spread top soil, build mounds, trenching by normal methods, backfill trenches, seed lawns, lay sod, use of ground cover such as flatted materials, riprap, gravel & rock, crushed rock, pea gravel and all other landscapable ground covers, installation of header boards and mowing edges, soil preparation such as wood shavings, fertilizers (organic, chemical or synthetic), top dress ground cover areas with bark or any wood, residual or other specified top dressing.

N.   All work in connection with the handling, control, removal, abatement, encapsulation or disposal of asbestos and/or toxic waste. The work tasks shall include, but not be limited to, the erection, moving, servicing and dismantling of all enclosures, scaffolding, barricades, etc., and the operation of all tools and equipment used in the handling, control, removal or disposal of asbestos and toxic waste; as well as the bagging, cartoning, crating, or otherwise packaging of materials for disposal.

O.   All work in connection with traffic control, including but not limited to flagging, signaling, assisting in the moving and installation of barriers and barricades, safety borders and all equipment; operation of pilot trucks.

P.   All work in connection with geotechnical, toxic or hazardous waste, environmental remediation, environmental investigation, anode or cathodic protection drilling, including but not limited to helper, drilling crew foreman, operation of geotechnical or environmental drills and development equipment without regard to motive power, size of drill bit or gig, type or method of drilling or self contained nature of the machine. Drills include but are not limited to Central Mine Equipment (CME), Foremost, Geoprobe or other similar makes.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 8

## ARTICLE II
## Union Recognition

A.    The Contractor hereby recognizes the Union as the sole and exclusive collective bargaining representative of all employees and persons employed to perform work covered by this Agreement. It is understood that the Union does not at this time, nor will it during the term of this Agreement, claim jurisdiction over the following class of employees: executives, superintendents, assistant superintendents, master mechanics, time keepers, messenger boys, office workers or any employees of the Contractor above the rank of craft foreman. Employees and persons employed to perform work covered by this Agreement specifically include Craft Foremen.

B.    The Union recognizes the Associated General Contractors of California, Inc., the Building Industry Association of Southern California, Inc., and the Southern California Contractors Association, Inc., as the sole and exclusive bargaining representatives for their respective eligible members, present and future, who are or who become bound by this Agreement and agree that during the term of this Agreement it will not negotiate or enter into any agreement with such individual members of the Associations relative to part or all of the subject matter covered by this Agreement.

C.    This Agreement shall be binding upon each and every eligible member of the Associated General Contractors of California, Inc., the Building Industry Association of Southern California, Inc., and the Southern California Contractors Association, Inc., with the same force and effect as if this Agreement were entered into by each eligible member individually. All eligible members of the Associated General Contractors of California, Inc., the Building Industry Association of Southern California, Inc., and the Southern California Contractors Association, Inc., shall remain jointly and severally liable under this Agreement for the term of the Agreement irrespective of whether any eligible member shall resign or be suspended from any of the Associations prior to the expiration date of this Agreement and such liability shall survive the termination or suspension of membership and remain in force during the term of this Agreement, provided, however, that as to such former or suspended members, the provisions of Article IV and Article VI shall not apply from the time when such member resigns or is suspended from any of the Associations. Such former or suspended member shall automatically be bound by all of the terms of the Laborers' Short-Form Agreement for the Construction Industry except that he may terminate the Short-Form Agreement by giving the appropriate Association and the Union at least sixty (60) days written notice prior to June 30, 2003 (or June 30 of any subsequent year if the Union fails to give notice in 2003) of his intent not to be bound by any new or renewed agreement. Thereafter the termination clause of the Short-Form Agreement shall apply. The Associations will advise the Union of any new or resigned or suspended members within thirty (30) days after admission to membership or change in membership status.

## ARTICLE III
## Dispatching Procedures, Hiring Hall Provisions

A.    In the employment of workmen for all work covered by this Agreement, the following provisions shall govern:

     1.    Each Local Union shall establish and maintain an employment facility at which it shall establish and maintain an open and non-discriminatory employment list for the use of applicants for employment in the geographical area serviced by that employment facility.

     2.    Applicants shall be registered on the employment list in the order of time and date of registration. There shall be five (5) groupings in the out-of-work list as hereinafter more particularly described.

     3.    Each applicant for employment shall be required to furnish such data, records, names of employers, length of employment or other information as may be considered necessary to the operation of said



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

employment lists and each applicant shall complete prior to registration such forms for recording such information as may be submitted to him. Applicants shall list any special skills which they may possess.

4.   The Contractor shall first call the employment facility servicing the geographical area in which the project is located on which employees are needed and that employment facility shall immediately dispatch to the Contractor the number of qualified and competent applicants of the classifications needed and requested by the Contractor. The employment facility shall dispatch workmen strictly in accordance with the provisions of this Agreement.

5.   It shall be the responsibility of the Contractor, when ordering men, to give the employment facility all of the pertinent information regarding the prospective employment.

6.   (a)   The employment facility will furnish in accordance with the request of the Contractor each such qualified and competent applicant from among those registered on said employment list to the Contractor by use of a written dispatch slip stating information pertinent to the prospective employment, in the order of preference stated below. The selection of applicants for dispatch to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, by-laws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements. The order of preference in the dispatch of applicants who are available for employment is as follows:

Group A:  Applicants whom a Contractor requests by name who have been laid off or terminated from employment of the type covered by this Agreement in the area served by the employment facility within five (5) years before a request from the same Contractor or a joint venture of which one (1) or more members is a former employer, who laid off or terminated them provided they are available for employment. This provision shall also apply to individual employers wishing to rehire employees of a joint venture of which the individual employer was a member.

Group B:  In addition to requests permitted in Group A, above, the Contractor may request for employment in Wage Classification Groups II, III, IV, V and VI, any person registered on the out-of-work list out of order for any reason; provided, however, that the person has worked at least three hundred (300) hours under this Agreement in the previous six (6) months in the area served by the Local Union employment facility, or has been available for work on the out of work list at least 300 hours  (calculated at 8 hours per day) at the Local Union employment facility, or a combination of both totaling at least 300 hours. Under this section, working in the area served by the Local Union employment facility shall include a person dispatched to a Contractor in that area and then transferred by the Contractor to another area pursuant to the transfer provisions contained in this Agreement. At no time shall any job contain more than fifty (50%) percent of persons requested under this section. Any Local Union, may at its option, permit a percentage of individual requests greater than fifty (50%) percent on any job.

Group C:  Applicants whose names are entered on the employment list of the registration facility and who are available for employment and who have been employed in the type of work covered by this Agreement within the geographical jurisdiction of the Union, excluding San Diego County, for at least one hundred (100) hours within the preceding year. Workmen in Group C shall be referred on a first-in, first-out basis; that is, the first man registered in that group shall be the first man referred.

Group D:  All other applicants whose names are entered on the employment list of the registration facility and who are available for employment. Workmen in Group D shall be referred on a first-in, first-out basis; that is, the first man registered in that group shall be the first man referred.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 10**

Apprentices: The Local Union, through the Joint Apprentice Committee, shall dispatch Apprentices from a separate list on a first-in, first-out basis: that is, the first person registered in that group shall be the first person referred; provided, however, a Contractor may request an Apprentice by name and such Apprentice shall be dispatched regardless of the Apprentice's placement on the list.

(b)    Expedited Dispatch Group: The Union recognizes the need of the Contractor to have the Union dispatch workers on an expedited basis to jobsites, and the Contractor recognizes the requirement for the Union to operate a fair hiring hall. Notwithstanding any other provision of this Article, if the Contractor contacts the Local Union after posted dispatch hours and requests workers to be dispatched to a jobsite within twenty-four (24) hours of the Contractors' call to the Local Union (and the Contractor does not request the worker by name pursuant to Group A and B, above), the Local Union shall dispatch the person nearest to the top of the out-of-work list who is present at the Local Union hiring hall and if no one is present, then the person nearest to the top of the out-of-work list who can be contacted by telephone. If the Local Union cannot contact a person by telephone after one telephone call, the Local Union shall call the next qualified person on the list. A person who is not present at the Local Union hiring hall or reachable by telephone for an Expedited Dispatch shall not be eliminated from the out-of-work list.

(c)    Notwithstanding the provisions of this Article, a worker shall be given preference in the order of dispatch under any of the following circumstances:

     a.    A Contractor becomes newly bound to this Agreement and requests the dispatch of its existing employees at the time the Contractor becomes bound.

     b.    A Contractor agrees to sponsor an employee as a Journeyman Laborer who has not worked under any Laborers Union Agreement; provided the Contractor agrees in writing that it intends to employ the worker on a full time basis. The Contractor shall send a letter to the Local Union to document its request.

     c.    A worker is "stripped" from a non-union employer and is dispatched to a Contractor.

     d.    A worker is a certified job steward and is dispatched to the job to act in such capacity.

At no time shall any job contain more than fifty percent (50%) of persons requested under subsection b, c and d, above. Any Local Union may, at its option, permit a percentage of individual requests greater than fifty percent (50%) on any job.

(d)    For Contractor requests by name pursuant to the provision of Article III, Section 6(a), Group A and B and Apprentices, above, the Contractor shall document the request in writing, dated, signed by an appropriate management representative, specifying whether the person is a rehire and names the job for which the referral is requested.

(e)    Available for employment shall mean persons eligible for referral and present at the hiring hall or present at their residence telephone (if the Local Union permits dispatching by telephone) during the Local Union's posted dispatch hours, and all persons eligible for referral and present at the hiring hall after posted dispatch hours, unless excused for the following reasons:

     (i)    When death occurs in the immediate family, from the date of death and not exceeding one (1) week after the date of burial; provided, however, that the applicant produces bona fide proof of such death.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

(ii)   Persons on jury duty, provided they produce bona fide proof they are serving on jury duty.

(iii)  Persons temporarily serving in the U.S. Military Reserve, provided they produce bona fide proof of such service.

(iv)   Required attendance at a Workers' Compensation hearing or other administrative or court hearing, provided they produce bona fide proof of their required attendance at such hearing.

(v)    Any other reason stated in the Local Union's hiring hall rules.

(f)    Persons shall be eliminated from the registration list for the following reasons:

(i)    Dispatched to a job, except that a person who is rejected by the Contractor or fails to complete five (5) days of work (or such other period of time set forth in a Local Union's hiring hall rules) shall retain his/her position on the list. Upon request of the Contractor, no person who is rejected by the Contractor shall be dispatched again to the Contractor. Upon Local Union's request, the Contractor will confirm its request in writing.

(ii)   Failure to accept the dispatch.

(iii)  Unavailable for employment during posted dispatch hours.

(iv)   Failure to report to a job to which the person was dispatched.

(v)    Failure to register or attend roll call in accordance with the Local Union's rules.

(vi)   Any other reason stated in the Local Union's hiring hall rules.

(g)    There is hereby established a Joint Referral Committee consisting of four (4) representatives of the Contractor and four (4) representatives of the Union. The establishment of the Committee is for the purpose of interpreting and enforcing all the terms and provisions of Article III, A. Any person having any disagreement with an applicant's placement or dispatch under Article III, A, shall submit his grievance to the Joint Referral Committee, by filing a written grievance with the Local Union stating the reasons for the grievance within ten (10) working days after the occurrence of the grievance. The Joint Referral Committee shall have full power to adjust the grievance and its decision shall be final and binding upon the person submitting the grievance and all other parties involved in the dispute. In the event of deadlock of the Joint Referral Committee, the grievance shall be referred to the permanent hiring hall neutral arbitrator, whose decision shall be final and binding. The costs of arbitration shall be borne equally by the Employer and the Local Union involved in the dispute. Forms for the submission of any such grievance shall be available at all times in the offices of the Local Unions. Neither the Joint Referral Committee nor the permanent hiring hall neutral arbitrator has the authority to modify, vary, change, add to or remove any of the terms or conditions of this Agreement.

(h)    The parties agree that, at its option a Local Union may elect to delete Group D by posting written notice of such election at the place of dispatch.

(i)    When ordering workmen, the Contractor will give notice to the appropriate Local Union, or its Agents, not later than 2:30 P.M. of the day prior (Monday through Friday), or in any event, not less than seventeen and one-half (17½) hours before the required reporting time; and in the event that forty-eight (48) hours after such notice the appropriate Local Union, or its Agents, shall not furnish such workmen, the Contractor may procure workmen from any other source, or sources. If workmen are so employed, the



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 12

Contractor will immediately report to the Local Union having work and area jurisdiction, or its Agents, each such workman by name.

B. 1.  New Employees who have not worked under this Agreement may be employed by the Contractor as a Journeyman, if so requested by the Contractor and if in accordance with this Agreement. Otherwise, all such employees should be screened and tested by the Joint Apprenticeship Committee to determine whether the employee is a journeyman or should be registered as an apprentice.

B. 2.  In the event an employee is employed as a Journeyman at the request of a Contractor pursuant to section 1, above, and leaves the employment of the Contractor and returns to the Local Union for dispatch, the employee shall be referred to the Joint Apprenticeship Committee for screening and testing to determine whether the employee shall maintain journeyman status or should be registered as an apprentice. The JAC's decision shall determine whether the employee is placed on the journeyman or apprentice out-of-work list for dispatch to another employer.

C.  It is agreed that all employees, covered hereby shall be, or become, on the eighth day after employment or the eighth day after the execution of this Agreement, whichever is later, and remain continuously, members in good standing of the Union signatory hereto through its affiliated Local Unions having work and area jurisdiction and on whose behalf this Agreement is executed as a condition of employment. Membership in such Union shall be available upon terms and qualifications not more burdensome than those applicable at such times to other applicants for membership to such Union.

D.  The Contractor shall discharge any employee pursuant to the foregoing section upon written notice from the Union of such employee's non-payment of initiation fees or dues. Such written notice shall indicate the amount of initiation fees or dues which are in a state of delinquency and shall give the employee forty-eight (48) hours within which to cure the delinquency. The Contractor agrees to furnish a copy of such notice to the employee forthwith. The Union will hold the Contractor harmless for compliance with this Section.

E.  **Supplemental Dues**

1.  Subject to the following conditions, the Contractor agrees that he shall, if he is furnished with his employee's written authorization to do so, deduct the sum certified by the Union as the amount owing for supplemental dues from the amounts required to be paid by the third paragraph of Attachment No. 1 of this Agreement for each employee for each hour worked or paid for in each payroll period, as special supplemental dues. In implementing the foregoing, the parties have heretofore established the Laborers Vacation Dues Reconciliation Trust (hereinafter "Dues Trust") as agent for the purpose of receiving and holding written authorization cards and for receiving, holding, allocating and distributing the dues monies.

2.  Said supplemental dues shall be transmitted to the Dues Trust concurrently with, but not as a part of, the employer's monthly vacation contributions with respect to his employees covered by this Agreement to the Construction Laborers Vacation Trust for Southern California. All sums deducted by the employers pursuant to the provisions of this Section shall, from the instant of their deduction, be considered dues if proper authorization shall have been furnished. All other sums transmitted by the employers pursuant to the provisions of this Section shall, from the instant of their transmittal, be considered vacation contributions if no such proper authorization shall have been furnished and shall be held by the Vacation Trust for the account of the employee. Prior to deposit in the separate bank accounts of the Dues Trust, on the one hand, and the Vacation Trust, on the other, the bank shall separate the funds transmitted into dues and vacation contributions, respectively, based upon whether or not a proper dues deduction authorization shall have been filed. The bank shall then deposit such sums in the account of



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

the appropriate Trust referred to in this Section. The Union shall bear the entire responsibility for furnishing the written authorization referred to above. All costs incidental to receipt, administration and remittance to the Union of the supplemental dues payments shall be borne solely and entirely by the Union. This provision shall not reduce the obligations of the Contractor to pay the full amount of vacation contributions specified in this Agreement. All written authorizations referred to above shall be irrevocable for a period of one (1) year from the date of the execution and shall renew automatically from year to year thereafter, unless the employee, by written notice served upon the Southern California District Council of Laborers and/or the Dues Trust, as agent for the Contractor, within fifteen (15) days following the first year or any year thereafter, revokes such authorization.

F.    Subject to the foregoing, the Contractor shall have complete freedom of selectivity in hiring and the Contractor retains the right to reject, for any reason, any job applicant referred by the employment facility. The Contractor may discharge any employee for any cause which he may deem sufficient, provided there shall be no discrimination on the part of the Contractor against any applicant or employee, nor shall any such employee be discharged by reason of any Union activity not interfering with the proper performance of his work.

G.    The Contractor recognizes the desirability of employing workmen from the area in which the work is located and the Union recognizes that in the employ of the Contractor are Laborers who are necessary to the efficient continuity of the Contractor's operations. Therefore, the Contractor may transfer up to four (4) Laborers and one (1) foreman from area to area. After the transfer of no more than four (4) Laborers and one (1) foreman, the Contractor must hire the next two (2) Laborers from the Local Union hiring hall in the geographical area in which the work is performed. Thereafter the Contractor may transfer one (1) additional Laborer for each Laborer hired from the Local Union hiring hall in whose jurisdiction the work is performed. The Employer shall keep this 50-50 ratio intact (one (1) local person and one (1) person from outside the area) in employing, laying off and terminating Laborers. Only employees who have been employed by the Contractor for at least three hundred (300) hours in the last six (6) months may be transferred from one area to another area. The Contractor must properly clear all employees, including foreman and Key employees, with a dispatch slip from the Local Union having geographical jurisdiction over the project prior to those employees beginning work. The Union will not unreasonably withhold issuing a clearance. For the transfer of additional Laborers, the Contractor shall first contact the office of the appropriate Local Union in the area where the work is to be performed. The above additional transfers shall only be made by mutual consent.

H.    Employees employed by any Contractor pursuant to the terms of this Agreement shall not be removed nor transferred by the Union unless the prior approval of the Contractor has been obtained.

# ARTICLE IV
## Strikes - Lockouts - Jurisdictional Disputes

A.    It is the purpose and intent of the parties that all grievances or disputes arising between them over the interpretation or application of the terms of this Agreement shall be settled by the procedures set forth in Article VI and that during the term of this Agreement the Union shall not call or engage in, sanction or assist in a strike against, or any slowdown, or stoppage of work of the Contractor. During the term of this Agreement, a Contractor shall not cause or permit any lockout of the employees covered under this Agreement.

B.    Except as otherwise provided in this Agreement, there shall be no strike, lockout or work stoppage by any party hereto or any individual Employer.

C.    No employee covered hereby may be discharged by an individual Employer for refusing to cross a primary picket line sanctioned by the Building and Construction Trades Council in the area or for engaging in any conduct protected by Sections 7 or 502 of the Labor-Management Relations Act of 1947, as amended.



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 14**

1. If work on a project is declared to be unfair as the result of a primary dispute by a Building and Construction Trades Council in the area and the work thereon is stopped for that reason, the Union shall not be deemed to have violated this Agreement if, during the period of said work stoppage, the members of the Union fail to perform their work for the Contractor or their subcontractors.

D. During the term hereof there shall be no strikes, slowdowns or stoppages of work occasioned by jurisdictional disputes between the Union signatory hereto and any other Union and that all employees covered by this Agreement shall perform the work customarily performed by them and will cooperate and work with members of other organizations affiliated with the Building and Construction Trades Department, AFL-CIO, or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, without regard to past, present or future disputes on jurisdictional claims.

E. When making work assignments, the Contractor shall assign the work in accordance with existing intercraft agreements. In the absence of such intercraft agreements, then past practice or the prevailing practice in the locality shall apply. The Union will furnish the Association with approved intercraft agreements. The locality for the purpose of determining the prevailing practice shall be defined as the geographical area covered by this Agreement. If a dispute arises prior to the assignment of work, or where there is no predominant practice in the locality or intercraft agreement, the Contractor shall consult the representatives of the contesting trades regarding any arguments of facts the trades may wish to present to their claim to the work.

F. Jurisdictional disputes shall be settled by the Unions themselves. If not settled, then the dispute shall be submitted to the International Presidents of the Unions involved in the dispute for determination. While such procedures are being invoked and exhausted, the work shall proceed as assigned by the Contractor. The Contractor and the Union shall be and are bound by such determination and decision and the misassignment, if any is found, shall be promptly corrected by the Contractor.

## ARTICLE V
## Subcontracting, Employee Rights, Union Standards and Work Preservation

A. The purposes of this Article are to preserve and protect the work opportunities normally available to employees and workmen covered by this Agreement, maintenance and protection of standards and benefits of employees and workmen negotiated over many years and preservation of the right of Union employees, employed hereunder, from being compelled to work with non-union workmen.

B. Definition of Subcontractor. A subcontractor is defined as any person (other than an employee covered by this Agreement), firm or corporation, holding a valid state contractor's license where required by law, who agrees orally or in writing to perform, or who in fact performs for or on behalf of an individual Contractor, or the subcontractor of an individual Contractor, any part or portion of the work covered by this Agreement.

C. Neither the contractor nor any of his subcontractors shall subcontract any work to be done at the site of the construction, alteration, painting or repair of a building, structure or other work coming within the jurisdiction of the Union except to a person, firm or corporation party to an appropriate current labor agreement with the Union or with the appropriate Local Union.

D. Jobsite work covered by the Plaster Tenders, Brick Tenders, Tunnel, Gunite, Housemovers, Horizontal Directional Drilling, Parking and Highway Improvement and Landscape Agreements of the Union are a part of the work description and bargaining unit covered by this Agreement.

E. Any dispute involving this Article will be resolved under the grievance procedure of this Agreement. An award of the Laborers Joint Adjustment Board may be judicially enforced. Notwithstanding any other provisions of



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

this Agreement, the Union shall not have the right to use strike or any other economic action to enforce any provisions of this Article on subcontracting.

F.   The Contractor shall provide in his contract with the subcontractor the following provisions: "The subcontractor accepts and agrees to be bound by the procedures for settling jurisdictional disputes as set forth in Article IV of this Agreement. The subcontractor agrees that he will bind his subcontractor to said procedures in the same manner and to the same effect as provided with respect to him."

G.   The Contractor and his subcontractor shall have freedom of choice in the purchase of materials, supplies and equipment, except that every reasonable effort shall be made by the Contractor and his subcontractor to refrain from the use of materials, supplies and equipment, which will tend to cause any discord or disturbance on the project.

H.   In the event the Contractor is required to subcontract work on a public works project to a certified MBE/WBE/DBE subcontractor to meet requirements contained in governmental rules or regulations, the contractor shall notify in writing the Local Union in whose jurisdiction the work is to be performed. The Union shall offer to sign the subcontractor to the Union's MBE/WBE/DBE Public Works Short-form Agreement.

I.   In the event the contractor is a partnership, no more than one (1) partner shall perform work covered by this Agreement. However, during each day on which the partnership employs on a full-time basis at least three (3) Laborer employees, pursuant to the terms of this Agreement, then one (1) additional partner shall be allowed to perform work covered by this Agreement. All partners who perform work covered by this Agreement and pursuant to this Paragraph I, shall be paid not less than the hourly wage rates stipulated in this Agreement for such work and the partnership shall contribute to all Trust Funds on behalf of all working partners at the hourly rates specified in Attachment #1, except the hourly Pension contribution rate which instead shall be paid to the Construction Laborers' Vacation Fund for Southern California. The Contractor shall be liable in damages to the Union in a sum equivalent to the hourly wage rate, and to the Trust Funds in a sum equivalent to the hourly contribution rate, for each hour worked by a partner in violation of Paragraph I.

J.   In the event the Contractor is a sole proprietorship that employs other individuals and the sole proprietor performs work covered by this Agreement, the sole proprietor shall be paid not less than the hourly wage rates stipulated in this Agreement for such work and the sole proprietorship shall contribute to all Trust Funds on behalf of the working sole proprietor at the hourly rates specified in Attachment #1, except the hourly Pension contribution rate which instead shall be paid to the Construction Laborers' Vacation Fund for Southern California. The Contractor shall be liable in damages to the Union in a sum equivalent to the hourly wage rate and to the Trust Funds in a sum equivalent to the hourly contribution rate for each hour worked by the sole proprietor in violation of this Paragraph J. If the sole proprietor has no employees, the sole proprietorship shall be considered an owner-operator subject to the provisions of Article V, Paragraph K.

K.   1.   An Owner-Operator is a person who has legal or equitable title to his equipment and operates the equipment himself on work covered by this Agreement and he shall operate only that equipment to which he has legal or equitable title. An Owner-Operator shall have proof of ownership of the equipment being operated in his possession at all times and shall produce such proof of ownership upon request by the Union or Contractor. It is further agreed that any time an individual Owner-Operator has a piece of equipment operated by someone other than himself on any given job or project, the provisions of this Paragraph K will not apply to such equipment, rather the subcontracting provisions contained in Article V, Paragraph A to C of this Agreement shall become applicable.

   2.   The Owner-Operator shall not be subject to the dispatch obligations contained in Article III of this Agreement, provided that the Owner-Operator has signed a W-4 form and becomes a bona fide employee



AGC
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 16

of the Employer prior to going to work and the Union shall be notified of the name and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator is hired, such notice to be given to the Local Union in whose area the work is being performed and confirmed in writing within twenty-four (24) hours thereafter. A copy of the notification shall be furnished by the contracting Employer to the Owner-Operator, and this copy shall be in the possession of the Owner-Operator at all times, so long as he remains on the job or project. This notice must be produced upon request of the Union. Failure of the Owner-Operator to provide proof of ownership of the equipment being operated shall be cause for his removal from the job or project until the Owner-Operator and the Employer have complied with the requirements of this Paragraph K. The Owner-Operator is subject to the union security and supplemental dues provisions of Article III.

3.   (a)   Effective from the time the Owner-Operator first reports to work on the job or project, the Contractor shall take all necessary steps to make the Owner-Operator an actual bona fide employee of the Contractor. The Contractor shall retain and exercise supervision and control over the manner and means by which the Owner-Operator performs work under this Agreement, and shall treat the Owner-Operator in all respects as any other employee of the Contractor is treated, except as otherwise provided in this Paragraph K. The Contractor shall deal with the Owner-Operator solely in an employer-employee relationship, and shall not treat the Owner-Operator as a self-employed person, independent contractor or brokered service. The Contractor shall not act as broker of Owner-Operator services to any other party and any payment by the Contractor to any broker or other person except a signatory subcontractor for the services of an Owner-Operator shall be a violation of this Agreement.

(b)   The Contractor shall not permit a self-employed person to perform any work covered by this Agreement, except as otherwise provided in Article V, Paragraphs I and J. A "self-employed person" is one who works for an unincorporated trade or business in which that person owns ten (10%) percent or more of the interest in the capital or profits.

(c)   The Contractor shall be liable to the Trust Funds described in this Agreement in an amount equal to the contributions plus interest and liquidated damages from the date contributions would have been due that would have been paid on an employed person to perform work covered by this Agreement. The portion of the contribution designated as supplemental dues shall be forwarded to the Union by the Trust Administrator. The sums paid under this provision shall be as damages and not for the benefit of any specific individual.

(d)   An incorporated Owner-Operator shall for the purposes of this Agreement, be designated and recognized as a subcontractor and subject to the provisions of Article V and, as such provide the Contractor, Union and Trust Funds with bona fide information to the effect of such incorporation.

4.   Separate checks shall be issued to such Owner-Operator for [1] employee wages and [2] for his equipment.

5.   All hours worked or paid for under the terms of this Paragraph K shall be reported to, and payments made to, the Trust Funds, as provided for in this Agreement.

6.   The individual Employer will not devise or put into operation any scheme to defeat the terms of this section of this Agreement.

7.   If a Contractor, through the grievance procedure, is found violating any portion of this Article, the Contractor shall immediately pay compensatory damages in the amount of one (1) day's pay at the Group III rate for each day or portion of a day in which the violation occurred.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

# ARTICLE VI
## Procedure for Settlement of Grievance and Disputes

A.    There is hereby established a Laborers' Joint Adjustment Board consisting of four (4) regular and four (4) alternate representatives of the Contractors and four (4) regular and four (4) alternate representatives of the Union. The establishment of this Board and the purpose of its existence is for the purpose of interpreting and enforcing all the terms and provisions contained in this Agreement. No dispute, complaint or grievance shall be recognized unless called to the attention of and, in the event it is not resolved, confirmed in writing to the individual Contractor, the appropriate Association, or the Local Union and the Union within fifteen (15) calendar days, except on discharges, which shall be seven (7) working days after the alleged violation occurred.

B.    An individual employee having a grievance or dispute shall first attempt to adjust said grievance or dispute with the Contractor or his representative. If the grievance or dispute is not settled at the first step, then the job steward, if any, is to receive grievances or disputes from employee members of his craft and shall immediately report them to his business representative or special representative, who shall attempt to adjust said grievance or dispute with the Contractor or his representative.

C.    In cases of violation, misunderstanding or differences of interpretation of this Agreement by either party, there shall be no cessation or stoppage of work except as otherwise provided in this Agreement.

D.    In the event a grievance or dispute cannot be satisfactorily adjusted on the job between the representative of the Union and the Contractor or his representative within twenty-four (24) hours, the Labor Relations Representative of the appropriate Contractor's Association shall meet as soon as possible with the Contractor and the Union representative in an attempt to resolve the dispute. If the dispute is not resolved at this meeting, the issue shall be immediately referred to the Joint Adjustment Board in writing for their consideration and decision.

E.    A contractor shall refer a grievance or dispute to the Chairman of the Joint Adjustment Board through the appropriate Employer Association. The Association shall then refer the grievance or dispute to the Board by sending written notice to the Contractor and the Union Chairman of the Joint Adjustment Board. The Local Union shall refer a grievance to the Joint Adjustment Board by sending written notice to the Union Chairman of the Joint Adjustment Board and the Management Chairman of the Joint Adjustment Board. The written notice of referral required by this paragraph shall contain the name of the Contractor and the Local Union directly involved, the date and place of occurrence of the grievance or dispute and a brief description of the nature of the grievance or dispute.

F.    Each of the parties shall within ten (10) days after the execution of this Agreement, appoint its representatives and immediately notify the other party, in writing, of the name and business address of each representative appointed. The Joint Adjustment Board shall thereafter meet within ten (10) days, select its Chairman and Secretary and agree upon its procedural rules.

G.    The Joint Adjustment Board shall meet at 9:00 A.M. on the first Wednesday of each month, and shall in addition meet at the call of the Co-Chairmen. The Joint Adjustment Board shall issue decisions immediately. In the event the Joint Adjustment Board does not reach a decision for reasons of its own, any dispute or grievance may be referred to arbitration by either or both parties within five (5) working days to the arbitrator designated in Paragraph H. The arbitrator shall meet with the members of the Joint Adjustment Board within seventy-two (72) hours and render a decision within seventy-two (72) hours thereafter. The time limits specified in this paragraph may be extended by mutual agreement. A simple majority of the Joint Adjustment Board shall be final and binding upon all parties and the grievants. In the event of a deadlock and the use of the arbitrator is required, a majority decision of the Joint Adjustment Board and the arbitrator shall be final and binding upon all parties and the grievants.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 18

H.  The regular members of the Joint Adjustment Board designated in accordance with Paragraph F shall select a list of seven (7) permanent arbitrators. In the event the members of the Joint Adjustment Board, by majority vote, are unable to agree upon the names of the seven (7) permanent arbitrators, then as to those upon whom agreement cannot be reached, the following procedure shall be followed:

1.  The Union representatives shall nominate ten (10) persons for the positions remaining unfilled on the panel of arbitrators and the Contractor Representatives shall nominate ten (10) persons for the positions remaining unfilled on the panel of arbitrators. Thereafter, the Union Joint Chairman and the Contractor Joint Chairman shall alternately strike names from the lists until there remain only that number of names necessary to fill the remaining seven (7) positions on the permanent panel of arbitrators. Those names remaining shall be added to the permanent panel of arbitrators. The determination as to who will strike first will be by lot, with the loser making the first strike.

2.  Thereafter the Joint Adjustment Board shall select an arbitrator to hear a pending grievance or dispute by rotation. If for any reason the arbitrator whose turn it is to hear a dispute is unavailable or the parties mutually agree that an unreasonable time would be required in order for him to become available, then the next arbitrator in succession shall be selected.

I.  The Contractors and the Union shall each have a total of four (4) votes on the Joint Adjustment Board and four (4) representatives and not less than two (2) appointed by each party and the Chairman shall constitute a quorum.

J.  All expenses incurred and approved by the Joint Adjustment Board necessary for the consideration and decision of grievances or disputes submitted to it shall be borne by and divided equally by the Union and the Contractor. All fees and expenses of the Arbitrator shall be borne by the party against whom the Arbitrator rules.

K.  If there is any question as to which is the losing party, or if a case is referred back to the parties without decision or if there are decisions against more than one of the parties to the arbitration, the Arbitrator is authorized and requested to determine who shall pay the fees and may in such case order a sharing of such fees. In such event the decision of the Arbitrator on this issue shall be final and binding.

L.  No jurisdictional disputes shall be submitted for determination to any grievance procedure provided in this Article, but shall be determined in the manner provided in Article IV of this Agreement.

M.  No grievance body established under this Agreement, including the Joint Adjustment Board and Arbitrator, in determining any grievance, shall have the authority to modify, vary, change, add to or remove any of the terms or conditions of this Agreement.

N.  The provisions of this Article VI shall not apply in the event the Contractor or the subcontractor or the subcontractor of a subcontractor fails to pay or is delinquent in contributions to any Trust established under this Agreement.

O.  The Joint Chairmen of the Joint Adjustment Board shall, immediately following the decision rendered in Executive session, announce the decision of the Board to the parties. In addition, such decision shall be served upon the parties in writing, with copies of such decision being furnished to both the Union and the Association. The Joint Adjustment Board shall have full authority to fashion such remedies, whether by way of damages, orders to cease and desist, or any and all other reasonable remedies designed to correct any violation which the Joint Adjustment Board may have found to have existed.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

Minutes of all meetings of the Joint Adjustment Board shall be recorded by one of the Board members selected by the Board, and shall be signed by all members of the Board. Minutes shall be condensed and need not be verbatim.

P.     Each decision of the Joint Adjustment Board and the Arbitrator shall be made in writing and a copy of each sent to each interested party, particularly including separate copies to the Local Union and the Contractor directly involved, and each of the Contractor Associations and Unions signatory to this Agreement. The determinations of the Joint Adjustment Board or Arbitrator are final and binding upon the parties.

Q.     It is understood and agreed that the procedures outlined in this Article VI shall be the exclusive remedy for any violation of this Agreement.

# ARTICLE VII
## Craft Steward and Business Representative

A.     The Union business representative or special representative shall have access to the project during working hours and shall make every reasonable effort to advise the Contractor or his representative of his presence on the project.

B.     The craft job steward, if any, shall be a working employee appointed by the Union, who shall, in addition to his regularly assigned work, be permitted to perform during working hours, such of his steward duties, as outlined in Paragraph D, as cannot be performed otherwise. The Union agrees that such duties shall be performed as expeditiously as possible and the Contractor agrees to allow the performance of such duties as herein set forth. The Union shall notify the Contractor or his representative, in writing, of the appointment of a craft job steward, and send a copy to the Contractor's home office address.

C.     It is recognized by the Contractor that the employee selected as the job steward shall remain on the job as long as there is work being performed in a classification in which he is qualified to perform, except that at the completion of the job, the Contractor shall not be required to retain the steward in lieu of the foreman or key man upon reduction in force. The Contractor or his representative, before laying off, or discharging the craft job steward for any cause other than stated in Paragraph D, below, shall notify the Union in writing of his intent to do so two full working days prior to such intended layoff or discharge. The Contractor or his representative will meet with the representative of the Union during this two day period and attempt to resolve the matter. The craft job steward shall not be discharged or laid off for the performance of his agreed upon duties when performed in accordance with this Article, or without just cause.

D.     To promote harmony between the Union and the individual Contractor, the craft job steward shall be limited to and shall not exceed the following duties and activities:

   1.     Check the job referral of each employee dispatched under the terms of this Agreement to the Contractor.

   2.     Work with the Contractor's designated representative in charge of the job in an attempt to resolve disputes prior to the application of the grievance procedure.

   3.     Report to the Contractor's designated representative any employee covered by this Agreement who works for less than the negotiated wage scale, for less than the overtime rate or who goes to work without a referral.

   4.     Report to the Contractor's designated representative any work belonging to his craft being done by non-dispatched men or by workmen of another craft.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 20

5.  Report to his Business Representative infractions of the Agreement which have not been resolved between himself and the Contractor's designated representative.

6.  Make a complete job check during working hours no more often than once a week.

7.  Report to his Business Representative any employee covered by this Agreement who leaves the jobsite without giving the Contractor and the craft job steward prior notice.

8.  Report any reckless or unsafe employees covered by this Agreement on the jobsite to the Contractor's designated representative or his Business Representative.

9.  The craft job steward shall not:

    a.  Stop the Contractor's work for any reason.
    b.  Tell any workman or any employee covered by this Agreement that he cannot work on the job.
    c.  Initiate any physical altercation with any person on the jobsite.

10.  Infraction of any of the rules in subparagraph 9 shall be cause for immediate dismissal of the craft job steward without any prior notice and this shall be the exclusive remedy for a violation of this section.

11.  Any dispute in connection with this Article VII shall be referred to the Grievance and Arbitrations procedure of this Agreement.

## ARTICLE VIII
## Classifications

A.  Should the Contractor or any subcontractors, as defined in Article I and V of this Agreement employ employees in the prosecution of this work in occupations or upon equipment which is not covered by one of the classifications herein specified, such employment shall, within three working days after a work assignment is made, or the equipment is operated, be temporarily classified by the appropriate Contractor Association and the Union under the classifications contained herein which more nearly fit the particular character of the employment. Temporary classifications and wage rates shall be immediately referred to the Laborers' Joint Adjustment Board which shall review and recommend usage of the proper classifications and wage rates. Either party shall thereafter have the right to submit a dispute under this section in the manner set forth in Article VI of this Agreement.

B.  The number of employees and the number of classifications of employees required to perform any operation covered by this Agreement shall be determined by the Contractor, provided that if a Contractor, in determining the number of employees, or the number of classifications of employees, shall lessen the number of employees or the number of classifications customarily used to perform any such operation, the Union may have the issue of such reduction in employees or in classifications determined by the grievance and arbitration procedure provided in Article VI of this Agreement. In determining such disputes, consideration shall be given to the necessity for additional employees or classifications as well as other pertinent factors.

C.  Because the Contractors and the Union recognize the necessity of eliminating restrictions on production and promoting efficiency, nothing shall be permitted that restricts production or increases the time required to do the work, and no limitation shall be placed upon the amount of work which an employee shall perform, nor shall there be any restriction against the use of any kind of machinery, tools, or labor-saving devices, provided, however, that such machinery or power equipment shall be furnished by the Contractor, and provided further that no employee shall be required to work under any conditions that are injurious to his health or safety or in conflict with a present well-established custom regulating such use where the work is being performed.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

D.    The Contractor agrees to recognize and observe craft jurisdiction insofar as possible and practicable and that wage scales apply to classifications rather than to men, and the Union agrees to permit the occasional or temporary transfer of employees from one classification to any other classification; provided that, when such transfers are made, the employee shall be paid for the entire day on the basis of the rate of the highest paid classification in which he worked during the day. When such transfers involve the classifications of more than one craft, it shall not be necessary for the operation of this policy that employees be referred to a project by more than one Union or employed at classifications of more than one craft. Abuse by any Contractor of the privilege granted in this paragraph D, Article VIII, shall subject him to withdrawal of the privilege for an appropriate period through the procedures established in Article VI of this Agreement.

E.    Each employee employed in accordance with the terms of this Agreement shall receive wages based upon the minimum hourly wage rates specified in Article XIX of this Agreement calculated by the number of hours he was employed, less all legal deductions. Any other method of paying the employees, such as the use of piece work, bonus systems or lumping of the work, shall be deemed a violation of this Agreement. Grievances shall be settled in accordance with Article VI of this Agreement.

## ARTICLE IX
## Qualifications

A.    Each of the parties hereto warrants and agrees that it is under no disability of any kind whether arising out of the provisions of its Articles of Incorporation, Constitution, By-Laws, or otherwise, that will prevent it from fully and completely carrying out and performing each and all of the terms and conditions of this Agreement and further, that it will not, by the adoption or amendment of any provisions of its Articles of Incorporation, Constitution, or By-Laws, or by contract or by any means whatsoever, take any action that will prevent or impede it in the full and complete performance of each and every term and condition hereof. The warranties and agreements contained in this paragraph are made by each of the signatories hereto on his own behalf and on behalf of each organization for which it is acting hereunder. The individuals signing this Agreement in their official capacity and the signatories hereto hereby guarantee and warrant their authority to act for and bind the respective parties or organizations and each of their eligible members and the Union on whose behalf the said parties are signing the said Agreement.

B.    Nothing contained in any other Agreement will change the conditions as set forth in this Agreement pertaining to use of equipment or the working rules and classifications of employees when said equipment is owned by the Contractor and operated or used on any work on which he is the prime or subcontractor. Nothing contained in this Agreement shall relieve any Contractor or subcontractor from his contractual obligations under such other agreements.

C.    No agent or representative of either party has authority to make, and none of the parties shall be bound by nor liable for, any statement, representation, promise, inducement or agreement not set forth herein. Any provision in the working rules of the Union with reference to the relations between the Contractors and their employees, in conflict with the terms of this Agreement shall be deemed to be waived and any such rules or regulations which may hereinafter be adopted by the Union shall have no application to the work covered herein.

## ARTICLE X
## Existing and Other Agreements

A.    In the event the Union establishes special conditions for work covered by this Agreement, those special conditions shall be made available to the Contractor or individual Contractors who wish to perform the designated work in the same locality.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006**
**Laborers**
**Agreement**
**Page 22**

B.     The Union will promptly notify the Employer in writing of any amendment, modification, exception or addendum of this Agreement which might be negotiated in any area covered by this Agreement between the Union, an individual employer or group of individual employers. No contractor signatory hereto shall be required to pay higher wages or be subject to less favorable working conditions than those applicable to other Contractors employing workers covered by the terms of this Agreement.

C.     The provisions of the article will not apply to special projects, jobsite Agreements or MBE/WBE/DBE public works Agreements which may be negotiated in any area covered by Agreements.

D.     This Agreement shall be deemed to be executed when the parties signing shall have affixed their signatures hereto. Before accepting as an affiliate or issuing a charter to a local Union in the area herein defined, the Union shall be required as a condition of such affiliation that said local Union be bound by the terms hereof.

## ARTICLE XI
## General Saving Clause

It is not the intent of either the Contractors or the Union to violate any laws, rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the Contractor and the Union agree that, in the event any provision of this Agreement is finally held or determined to be illegal or void, as being in contravention of any such laws, rulings, or regulations, the remainder of the Agreement shall remain in full force and effect, unless the part so found to be void is wholly inseparable from the remaining portion of this Agreement. The Contractors and the Union agree that if and when any provision of this Agreement is held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof. In the event the parties are unable to reach agreement within sixty (60) days following the beginning of such negotiations the parties agree to submit the issue to final and binding arbitration. Selection of an arbitrator shall be made in the manner prescribed in Article VI of this Agreement. The Arbitrator shall render decisions only on the specific issue submitted to him, and shall have no authority to change or abrogate other conditions of this Agreement. Any fees and/or expenses of the Arbitrator shall be borne by and divided equally by the Union and the Contractors. The decision of the Arbitrator shall be final and binding on the parties. The no-strike, no lockout provisions of Article IV shall not apply if either party fails to comply with the decision of the Arbitrator.

## ARTICLE XII
## Term, Termination and Renewal

The term of this Agreement is July 1, 2003, to June 30, 2006, and from year to year thereafter unless either the Union or the Associations give written notice received by the others not less than sixty (60) days prior to June 30, 2006, or sixty (60) days prior to June 30 of any subsequent year, of a desire to change, amend, modify, or terminate the Agreement.

## ARTICLE XIII
## Equal Employment Opportunity

A.     The Employer and the Union will not discriminate against any person with regard to employment or Union membership because of his race, religion, color, sex, age, national origin, or ancestry and hereby declare their acceptance and support of existing laws. This shall apply to hiring, placement, training during employment, rates of pay or other forms of compensation, layoff or termination, and application for admission to Union membership. A violation of this paragraph shall be subject to the grievance procedure but not subject to the hearing procedure before the Joint Adjustment Board or arbitrator contained in Article VI.



**AGC**
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

B.     If the Union is unable to refer applicants for employment to an employer in sufficient number, or sufficient type, from the groups represented within the local area as may be necessary to enable the Employer to fully comply

with minority or female hiring requirements imposed by its construction contract with any Federal, State or governmental body, commission or agency or to enable the employer to fully comply with all Federal and State Laws, Presidential Executive Orders, regulations, rules, directives or orders which cover hiring and which are applicable to the Employer, the Employer may directly recruit from any source such number of minority or female applicants acceptable to the Employer as may be necessary to satisfy the Employer's needs to effect such compliance. As an exception to the dispatch procedures in Article III, the Union may dispatch workers who are not next in order, to aid the Employer in complying with government requirements.

C.   The Employer shall submit to the Union, in writing, any such request for minority or female applicants for employment, together with a copy of the order, directive, rules or regulations pursuant to any such Presidential Executive Order, Federal, State or local law; the Construction project number; and a copy of the compliance order.

## ARTICLE XIV
## Pre-job Conference

A.   It is agreed there will be a pre-job conference prior to the start of any job or project at the option of either party where the agreed or estimated cost is one million dollars ($1,000,000.00) or more.

B.   If the Contractor is a member of a signatory Association, the pre-job conference will be arranged through the appropriate Association with the Building and Construction Trades Council or a Union having jurisdiction over the work in the area of the project.

C.   The individual Contractor shall, upon request, advise the Union, in writing, of the names and addresses of all subcontractors employed or contracted with for services to be performed under this Agreement.

## ARTICLE XV
## Laborers' Foremen

A.   The selection of the employee who will be the Laborer Foreman is at the sole discretion of the Contractor. Where the employees of the Contractor employed on the project are predominantly Laborers and performing Laborers' work, the employee selected by the Employer to be Foreman shall be an employee employed under the terms of this Agreement and shall receive the Laborer Foreman's wage rate. The Laborer Foreman may work with the tools of the trade in accordance with the provisions of Paragraph C, Article VIII of this Agreement. As an exception to the dispatch procedures contained in Article III, the Union may dispatch workers requested by the Contractor as a Laborer Foreman, who are not next in order on the out of work list.

B.   Only Laborer Foremen who normally work with the tools of the trade during straight time periods, in addition to the performance of Foreman duties, may work with the tools of the trade during overtime periods. The need for and the number of Laborer Foremen required for the performance of the work shall be determined in accordance with the provisions of Paragraph B, Article VIII of this Agreement. It is understood that in certain cases, by reason of custom and practice established by the parties hereto, a Foreman may be over the work and employees of more than one craft. If a dispute arises with respect to the application of this understanding, such dispute shall be determined according to the procedure set forth in Article VI of this Agreement on the basis of such custom and practice.

C.   In the event the Contractor, at his option, elects to use a Laborer Foreman to supervise other Laborer Foremen, he shall be paid not less than one dollar ($1.00) per hour more than the hourly rate of the highest classified Laborer Foreman over whom he has leadership.



AGC
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 24

D.  Except in case of emergency, if any of the employees not covered by this Agreement as set forth in Paragraph A, Article II of this Agreement such as superintendents, assistant superintendents or master mechanics, shall act in the capacity of a Laborer Foreman or work with the Laborers' tools or at classifications in the Laborers' category, he shall be an employee under the jurisdiction of the Union.

# ARTICLE XVI
## Holidays, Payment of Wages, Meal Periods

### A.  Holidays

The following holidays shall be observed on the date designated by Federal Law: New Year's Day, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, the day after Thanksgiving Day, and Christmas Day. If any of the above holidays should fall on Sunday, the Monday following shall be considered a legal holiday. Work on such days shall be paid for at the holiday overtime rate provided herein. No work shall be performed on Labor Day except in case of extreme urgency when life or property is in imminent danger.

### B.  Payment of Wages

1.  All wages shall be paid on a designated weekly payday and in no event shall the Contractor withhold more than five (5) working days. If the regular payday falls on a holiday, the employees shall be paid on the next regular workday. Employees shall be paid prior to the ending of their regular shift. In the event an employee is not paid prior to the ending of his regular scheduled shift, he shall be compensated in increments of one-half ($\frac{1}{2}$) hour at the applicable overtime rate until such time as he does receive his pay.

2.  When men are laid off or discharged, they must be paid wages due them at the time of layoff or discharge. At such times as an employee is paid, he shall be furnished a personal record, showing straight time and overtime hours paid and all deductions itemized for the current pay period. Such record shall show the employee's name, and the Employer's name and address. In the event the Employer fails to pay employees laid off or discharged, they shall be paid waiting time at the straight time rate of eight (8) hours per day, five (5) days per week, until the time such payment has been made.

3.  An employee who quits shall be mailed his pay in full by certified mail to his last known address within seventy-two (72) hours, or be paid prior to leaving the job or project. In the event these stipulations are not met, he shall receive waiting time as noted above.

4.  If a Contractor pays an employee by check, draft or voucher, which check, draft or voucher is subsequently refused payment because the Contractor has no account with the bank, institution or person on which drawn, or insufficient funds to his account at the time of presentation, the Contractor shall be required to issue only certified checks for all employees working under this Agreement on that job for the duration of the job on which said check was issued, and shall reimburse the employee immediately by certified check for the insufficient fund check issued and for the bank charges assessed.

5.  When employees covered under the terms of this Agreement are employed at a higher rate of pay than the minimum established herein during any shift, the higher rate of pay shall apply on all time worked during that day.

6.  The Employer shall not discharge or discriminate against an employee under this Agreement because of any industrial injury incurred prior to employment, or the filing of a claim for worker's compensation benefits.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

7.    When an employee is injured while at work to the extent of being unable to work for the balance of the day, he shall be paid for a full day at his regular rate. His ability to work or not to work shall be determined by a qualified physician.

**C.    Meal Period**

Employees shall not work more than five (5) consecutive hours without a one-half (½) hour meal period. When employees work over five (5) hours without being provided with a one-half (½) hour meal period, they shall receive one-half (½) hour pay at the double time rate (2), in addition to their normal straight time shift period of eight (8) hours. When an employee is required to work more than three (3) hours after his regular shift, he will be entitled to a one-half (½) hour meal period at the end of the three (3) hours without loss of pay and an additional half (½) hour each five (5) hours thereafter, without loss of pay. In the event an employee is required to work through an overtime meal period, then the employee shall receive pay for an additional one-half (½) hour at the double time rate. Meal periods may be staggered to meet job requirements.

**D.    Breaks**

The parties to this agreement recognize Industrial Wage Order 16-2001 covering "On Site Construction, Mining, Drilling and Logging Industries." Any dispute or grievance arising from the Wage Order shall be processed under and in accordance with Article VI, Procedures for Settlement of Grievances and Disputes of this agreement." Wherever the Wage Order refers to collective bargaining agreements, this Master Labor Agreement shall be deemed to satisfy all of the requirements for treatment as a qualified collective bargaining agreement.

# ARTICLE XVII
# Safety, Rest Periods, Parking, Drinking Water, Jobsite Transportation, Signing of Documents

**A.    Safety**

The Unions shall cooperate (1) with the individual Contractor and with each other in carrying out all of the individual Contractor's safety measures and practices for accident prevention, and (2) employees shall perform their duties in each operation in such a manner as to promote efficient operations of each particular duty and of any job as a whole. The individual Contractors must post the name and address of their doctor and the compensation insurance carrier on the jobsite.

1.    An employee who has been found, through the grievance procedure, to have been unjustifiably disciplined or discharged for refusing to perform work which would endanger his health or safety, or the health or safety of any other employee, shall be reinstated in his former classification. This is not to be construed as a waiver of the employee's rights under Section 502 of the Labor Management Relations Act of 1947, as amended.

2.    The Contractor shall be solely responsible for implementation and maintenance of such safety laws, rules, regulations, standards, orders and decisions. Neither the Union nor any local Unions or District Councils are responsible for such implementation or maintenance.

3.    After July 1, 2000, all graduates of a Laborers Training Program shall receive certification that they have successfully completed the Basic Safety Course to be developed by the Laborers Training and Retraining Trust Fund of Southern California. Such certification will be at no cost to the Employer.



AGC
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA



**2003 - 2006
Laborers
Agreement**
Page 26

**B.   Rest Periods**

    1.    Employees shall be given a rest period of not less than six (6) hours between the termination of any overtime work, except for pre-shift overtime work up to a maximum of eight (8) hours, and the commencement of another straight time shift, unless performing emergency work which is not considered a normal job operation.

    2.    If employees do not receive the required six (6) hours' rest period, they shall be paid at the applicable overtime rate for each hour worked until they receive six (6) hours' rest off the job or project, regardless if a new workday starts or not.

**C.   Parking**

In the event free parking facilities are not available within three hundred and fifty (350) yards of a jobsite, the individual Employer will provide such facilities and the individual Employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public facilities, the Employer shall reimburse the employee for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof, such reimbursement to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier. Designated parking areas shall be reasonably level and graded to drain.

**D.   Drinking Water**

The Contractor shall furnish cool and potable drinking water in sufficient quantities for the needs of the employees and make available sanitary drinking cups and adequate toilet facilities in accordance with California State Law.

**E.   Jobsite Transportation**

Whenever, because of remoteness of parking areas, hazardous road conditions or security restrictions, the Employer is required to furnish transportation for men within the jobsite to the place of their "work", this transportation shall be equipped with seats and handrails.

**F.   Signing of Documents**

Workmen and/or employees shall not be required to sign any documents other than those required by law. Under no circumstances will an employee be required to sign any other document and the Union shall not be held in violation of this Agreement for ceasing to work on a job or project where such demand is made by the Employer.

## ARTICLE XVIII
## Working Rules for Laborers

The following working rules shall cover the employment of Laborers performing any work covered by the terms of this Agreement in the area of Southern California as described in Paragraph B, Article I, of this Agreement.

**A.   Shifts:**

    1.    Eight (8) consecutive hours, exclusive of meal period, between 5:00 a.m. and 5:00 p.m., shall constitute a day's work. Forty (40) hours Monday 5:00 a.m. through Friday 5:00 p.m. shall constitute a week's work.

**AGC CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

2. The starting time of single shifts shall be at 5:00 a.m., 5:30 a.m., 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m., or 8:00 a.m., Monday through Friday. Starting times may be changed to meet job requirements, including maximum utilization of daylight hours. Telephonic notice shall be given to the Union in cases of deviation from the original starting time, followed by written confirmation.

3. All time worked before 5:00 a.m. and after 5:00 p.m., or all time worked in excess of eight (8) consecutive hours, exclusive of meal period, and all work performed on Saturdays, Sundays and Holidays, shall be paid at the applicable overtime rate.

**B.    Multiple Shifts:**

1. When so elected by the Contractor, multiple shifts may be worked for three (3) or more consecutive working days, provided that the Union is notified in writing twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations, provided however, that men working on multiple shifts shall not be interchangeable with those working on a single shift basis. All employees on multiple or single shifts commencing work prior to the established starting time, shall be paid at the applicable overtime rate. In no event shall the regular working hours of different shifts overlap nor shall any interval between shifts exceed the reasonable time necessary to change shifts, and in no event shall such interval exceed one (1) hour, except when a special shift is established in accordance with Paragraph F Special Shifts.

(a)    It is understood that a single and a multiple shift may work concurrently on a project.

2. When two (2) or three (3) shifts are worked, the first and second shift shall work eight (8) consecutive hours, exclusive of meal period, for which eight (8) hours of straight time shall be paid Monday through Friday and the third shift shall work seven (7) consecutive hours, exclusive of meal period for which eight (8) hours straight time shall be paid, Monday through Friday. All time worked or hours paid for, on the third shift, in one (1) day on Saturday, Sunday and holidays shall be paid for at the appropriate overtime rate.

3. Any time worked from Friday midnight to Sunday midnight, or on holidays or in excess of the regular shift hours or hours paid for shall be paid at the appropriate Craft Overtime Rate, except as provided in Paragraph 4 of this Paragraph B.

4. The Friday graveyard shift ending on Saturday morning will be considered Friday work. The Saturday graveyard shift ending Sunday morning will be considered Saturday work. The Sunday graveyard shift ending on Monday morning will be considered Sunday work.

**C.**  1. When so elected by the Contractor, a single shift starting at 5:00 a.m., 5:30 a.m., 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m. or 8:00 a.m., of four (4) ten (10) hour days may be worked for eight (8) or more consecutive days, excluding Saturdays, Sundays and holidays, provided the Union is notified in writing twenty four (24) hours in advance of the effective date of the starting of such shift. All employees working this shift shall work ten consecutive hours, exclusive of meal period, for which ten (10) hours of straight time shall be paid Monday through Friday. All time worked before 6:00 a.m. or in excess of ten (10) hours in any one (1) day shall be paid for at the appropriate overtime rate. All hours worked in excess of forty (40) hours in any one week shall be paid at the appropriate overtime rate. Written notice shall be given to the Union in cases of deviation from the original starting time.

2. The provisions of Paragraph C will apply only if the Carpenters, Cement Masons, Operating Engineers and Teamsters who have members working on the job or project for the Contractor agree to the same provisions as outlined in the preceding Paragraph.



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 28**

3.    If the Contractor works for a period of less than eight (8) days, employees will then be paid at the appropriate overtime rate for all hours in excess of eight (8) hours for the days worked.

D.    In the event, due to inclement weather or similar Act of God, it is not reasonably possible to complete forty (40) hours of work, on either an eight (8) hour day shift or ten (10) hour day shift, as outlined in Paragraphs A or C of this Article, Monday through Friday, then the balance of the forty (40) hours may be worked on Saturday at the straight time rate. No employee will be terminated for refusing to work on Saturday at the straight time rate of pay.

E.    It is agreed that the contractor and the Union may mutually agree, by telephone to be followed in writing, upon different starting or quitting times for any of the above shift arrangements.

F.    **Special Shifts:**

1.    When the Contractor produces evidence in writing to the Union of a bonafide job requirement that work can only be performed outside or in addition to, the regular day shift due to safety conditions or other requirements, an employee shall work eight (8) consecutive hours, exclusive of meal period, for which he shall receive eight (8) hours pay at the straight time rate of pay, Monday through Friday. All time worked or hours paid for Saturday, Sunday and holidays shall be paid for at the appropriate overtime rate. In addition, when the above conditions exist and it is necessary to begin or end a shift during the hours specified in paragraph B.4 of this Article (for Sunday work) in order for an employee to complete a forty (40) hour work week, the overtime rate will not apply; otherwise, all time worked or hours paid for Saturdays, Sundays and Holidays and hours worked in excess of eight (8) hours, shall be paid for at the appropriate overtime rate. It is agreed, however, in the operation of this shift, no employee will lose a shift's work. Employees working this special Sunday shift shall receive fifty cents ($.50) per hour in addition to his regular rate of pay.

2.    If maintenance or remodeling work cannot be performed on the regular shift because of the fact that establishments cannot suspend operations during the day, a special single shift may be employed starting at a time designated by operations of the establishment, Monday through Friday. The employees on this shift will work eight consecutive hours exclusive of meal period for which they shall receive eight (8) hours pay at the straight time rate.

G.    **Tide Work Schedule:**

The following provisions shall apply to employees on jobs working a single shift only:

1.    When employees are called out to work broken time or tide work, Monday through Friday, the minimum pay for such work shall be eight (8) hours at the applicable, regular straight-time rate. Subject to the above minimum, in computing the time to be paid for under this provision, eight (8) hours or less worked between 7:00 a.m. and 5:00 p.m. shall be paid for at the applicable straight-time rate, and time in excess of eight (8) hours worked between 7:00 a.m. and 5:00 p.m., and any time worked before 7:00 a.m. or after 5:00 p.m. shall be paid for at the applicable overtime rate.

2.    When employees are called out to work broken time or tide work on Saturdays, Sundays or holidays, the minimum pay for such work shall be eight (8) hours at the applicable overtime rate.



**AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA**

**H.    Emergencies:**

When it is mutually agreed that an emergency exists, such as earthquakes, floods or fire, the starting time for the shift may be made to fit the emergency and eight (8) hours in any twenty-four (24) hour period may be worked at the straight time rate. All other terms and conditions of this Agreement shall apply.

**I.    Subsistence**

1.    Subsistence shall be paid at the rate of forty-five dollars ($45.00) per scheduled workday. There shall be no prorating of subsistence. Subsistence shall apply to workmen and/or employees who report to work and for whom no work is provided.

2.    Subsistence as provided in Paragraph I-1 hereof shall be paid on jobs on the following offshore islands:

Richardson Rock                     San Miguel Island
Santa Cruz Island                   Santa Barbara Island
Arch Rock                           San Clemente Island
San Nicholas Island                 Santa Rosa Island
Santa Catalina Island               Anacapa Island

(a)    Employees reporting at the embarkation point for travel to the above named islands shall be paid travel time from the mainland to the islands and return at the straight-time rate and in no event shall the travel time be less than one (1) hour regardless of mode of travel.

3.    In lieu of subsistence, the Contractor may provide and maintain acceptable room and board on or immediately adjacent to the project seven (7) days per week in compliance with California State Laws.

**J.**    Employees shall travel to and from their daily initial reporting place on their own time and by means of their own transportation. The Contractor shall be responsible for payment of wages from the reporting point, as ordered by the Contractor, to the jobsite and from job to job and return. However, employees who voluntarily report to a point for free transportation to the jobsite will not be compensated from the time en route and return. For offshore work, employees will receive travel pay at straight-time rates from port of embarkation to jobsite and from jobsite to debarkation regardless of mode of transportation, which transportation shall be at the Contractor's expense. If no camp is furnished by the Contractor, such transportation shall be furnished daily.

**K.**    Workmen referred under Article III to the Contractor's job who arrive in an unfit condition for work, without a written dispatch slip from the employment facility, without the proper documentation as set forth on INS I-9 Form, or who are not ready to go to work or who are not otherwise qualified in accordance with their written dispatch slip from the employment facility shall not be paid show-up time or subsistence.  Grievances or disputes arising out of the interpretation or application of this particular paragraph shall be referred to the procedure for settlement of grievances and disputes.

**L.**    Any time worked on Saturday, Sunday or holidays outside of the shift hours provided in the Agreement shall be paid for on the basis of the actual hours worked at the Laborers' overtime rate, except that any workmen or employees reporting for work at the stipulated time and for whom no work is provided shall receive pay for two (2) hours at the overtime rate; any workmen or employees who report for work and for whom work is provided shall receive not less than four (4) hours' pay at the overtime rate; and if an employee works more than four (4) hours, he shall be paid for the actual hours worked at the overtime rate.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 30**

M.  1.  Any workman or employee reporting for work at the regular starting time and for whom no work is provided, shall receive pay for two (2) hours at the stipulated rate for so reporting, unless he has been notified before the end of his last preceding shift not to report; and any workman or employee who reports for work and for whom work is provided shall receive not less than four (4) hours' pay; and if more than four (4) hours are worked in any one day, he shall receive not less than a full day's pay therefor, unless prevented from working for reasons beyond the control of the Contractor, including, but not limited by, such factors as inclement weather, a breakdown causing discontinuance of a major unit of the project during which time workmen or employees are not required or requested to remain on the project by the Contractor or his agent. New employees on their first day of work shall be paid for their actual time worked.

  2.  On concrete coring and concrete sawing operations, only, any employee reporting for work and for whom no work is provided shall receive pay for two (2) hours at the stipulated rate for so reporting, unless he has been notified before the end of his last preceding shift not to report; and any workman or employee who reports for work and for whom work is provided shall receive not less than four (4) hours pay; and if more than four (4) hours are worked in any one (1) day, he shall receive not less than six (6) hours pay, and if more than six (6) hours work is provided, he shall receive not less than eight (8) hours pay.

N.  When it is necessary to shut down a job or project because of a bomb threat, employees will be compensated as follows:

  (a)  If such an event occurs before the regular starting time, all workmen or employees who have not been notified not to appear for work and who show up at the jobsite shall receive two (2) hours' pay and subsistence at the applicable rate.

  (b)  In order to qualify for this two (2) hours' pay (and subsistence if applicable), the employee and/or workman must remain on the job available for work during the two (2) hour period of time for which he receives pay unless released sooner by the employer or his representative. Time spent in a holding area as directed by the Contractor shall be considered as time worked and paid accordingly.

O.  Flagmen shall be entitled to adequate relief for the use of toilet facilities.

P.  The Contractor shall be required to furnish goggles and/or hard hats where needed. When employees are required to work outside in the rain or snow, they shall be furnished rain coats, rain hats and boots. Employees working in or handling cement or concrete shall be furnished rubber boots and gloves. Employees required to work in mud, slush or water shall be furnished boots and other necessary waterproof clothing. The employee shall return all such clothing of the Contractor in the same condition as received, subject to reasonable wear and tear. Such equipment shall be sanitized before reissue. The employee shall sign for receipt of such protective clothing and on signed authorization the reasonable value of such protective clothing may be deducted from the employee's pay check. Upon return of the protective clothing, the employee shall be reimbursed in the amount of the deduction.

## ARTICLE XIX
## Wage Scales

The following hourly wage rates shall apply to the following classifications on all work covered by the terms of this Agreement:

A.  **Overtime Rates:**

Time and one-half, except hours worked over 12 in a single workday, Sundays and Holidays, which are double (2) time.

AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**B.    Watchmen:**

Watchmen shall work eight (8) consecutive hours per day, exclusive of lunch period, and forty (40) hours per week, Monday through Sunday, at straight-time rates, provided they receive their two-day rest period consecutively. Watchmen shall receive time and one-half for all time worked in excess of eight (8) hours per day and for the sixth consecutive day worked, and double time for the seventh consecutive day worked. Watchmen shall also receive time and one-half for holidays, except where a holiday falls on the seventh consecutive day worked, which shall be double time. This provision shall be applicable to persons whose principal function is to tend patrol dogs at the jobsite but shall not include services exclusively of delivery and retrieval of the dogs.

**C.    Health and Welfare:**

1.    Contractors covered by the terms of this Agreement agree to pay to the Laborers' Health and Welfare Trust Fund for Southern California the sum designated in Attachment #1 of this Agreement for each hour worked or paid for on all classifications contained in this Agreement.

2.    The Contractor may make voluntary contributions on behalf of supervisory employees above the rank of craft foreman in the amounts and manner to be determined by the Trustees.

3.    Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated by the Laborers' Health and Welfare Trust Agreement for Southern California and further ratify, confirm and consent to all acts heretofore taken in the creation and administration of said Trust by the joint Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

**D.    Pension:**

1.    Contractors covered by the terms of this Agreement agree to pay to the Construction Laborers' Pension Trust Fund for Southern California the sum designated in Attachment #1 of this Agreement for each hour worked or paid for on all classifications contained in this Agreement.

2.    The Contractor may make voluntary contributions on behalf of supervisory employees above the rank of craft foreman in the amounts and manner to be determined by the Trustees.

3.    Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated by the Construction Laborers Pension Trust Agreement for Southern California and further ratify, confirm, and consent to all acts heretofore taken in the creation and administration of said Trust by the joint Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

4.    The Pension Trust Fund agreement will be amended to provide that the Trustees may not increase pension benefits during the life of the Agreement. Any increase in pension contributions will be directed to decrease the unfunded accrued liabilities. The establishment of an Annuity Trust Fund Agreement between the Contractors and the Union may be initiated at any time during the life of this Agreement by mutual consent.



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 32**

E.    **Vacation:**

1.    Contractors covered by the terms of this Agreement agree to pay to the Construction Laborers' Vacation Trust Fund for Southern California the sum designated in Attachment #1 of this Agreement for each hour worked or paid for on all classifications contained in this Agreement.

2.    Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated by the Construction Laborers' Vacation Trust Agreement for Southern California and further ratify, confirm, and consent to all acts heretofore taken in the creation and administration of said Trust by the joint Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

F    **Training and Retraining:**

1.    Contractors covered by the terms of this Agreement agree to pay to the Laborers' Training and Retraining Trust Fund for Southern California the sum designated in Attachment #1 of this Agreement for each hour worked or paid for on all classifications contained in this Agreement.

2.    Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated by the Laborers' Training and Retraining Trust Agreement for Southern California and further ratify, confirm, and consent to all acts heretofore taken in the creation and administration of said Trust by the joint Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

G.    The collective bargaining parties direct the Trustees of the Laborers' Health and Welfare Trust and the Construction Laborers' Pension Trust for Southern California to adopt procedures which will permit a retiree to authorize the Pension Trust to deduct lawfully from his pension benefits and to remit to the Health and Welfare Trust the amount of the retiree's contribution to the Health and Welfare Trust should a retiree contribution be required by the Health and Welfare Trustees.

H.    Where the Contractor transfers key laborers out of the geographical area of this Agreement, to an area where the Contractor is not signatory to a Laborers' Agreement, the Contractor shall contribute to the Trust Funds mentioned in this Agreement for all hours worked by or paid to such key laborers for the duration of the job for which they were transferred.

I.    **Foreman:**

Laborer Foremen employed in accordance with Article XV of this Agreement shall be paid not less than one dollar and fifty cents ($1.50) per hour more than the hourly wage rate of the highest classification over which they have leadership. In the event the Contractor, at his option, elects to use a Laborer Foreman to supervise other Laborer Foremen, he shall be paid not less than one dollar ($1.00) per hour more than the hourly rate of the highest classified Laborer Foreman over whom he has leadership.



**AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA**

**J.    Laborers' Hourly Wage Scales**

July 1, 2003, increases allocated as follows:

$0.75 to Health & Welfare
$0.55 to Pension *

$0.10 is also reallocated from Training to Pension

**Classifications**

| | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| **GROUP I** | | | |
| | $20.10 | **$1.35 | **$1.40 |

Boring Machine Helper (outside)
Cleaning and Handling of Panel Forms
Concrete Screeding for Rough Strike-Off
Concrete, Water Curing
Concrete Curb and Gutter Laborer
Certified Confined Space Laborer
Demolition Laborer, the cleaning of brick if performed by an employee
  performing any other phase of demolition work, and the cleaning of lumber
Expansion Joint Caulking by any method (including preparation and clean-up)
Environmental Remediation, Monitoring Well, Toxic waste, and Geotechnical Drill Helper
Fiberoptic Installation, Blowing, Splicing, Testing and related work
Fire Watcher, Limbers, Brush Loaders, Pilers and Debris Handlers
Flagman
Gas, Oil and/or Water Pipeline Laborer
Laborer, Asphalt-Rubber Material Loader
Laborer, Concrete
Laborer, General or Construction
Laborer, General Cleanup
Laborer, Landscaping
Laborer, Jetting
Laborer, Temporary Water and Air Lines
Material Hoseman (Walls, Slabs, Floors and Decks)
Plugging, Filling of Shee-Bolt Holes; Dry Packing of Concrete and Patching;
Post Hole Digger (manual)
Railroad Maintenance, Repair Trackman and Road Beds; Streetcar
  and Railroad Construction Track Laborers
Rigging and Signaling
Scaler Slip Form Raisers
Filling of Cracks by any method on any surface Tarman and Mortar Man
Tool Crib or Tool House Laborer
Traffic Control by any method (including assisting in the moving and
  installation of construction signs, barriers barricade, delineators, cones, etc.)
Traffic Control Pilot Truck
Water Well Drill Helper
Window Cleaner
Wire Mesh Pulling - All Concrete Pouring Operations
Vehicle Operator in connection with all Laborers work.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement**
Page 34

| Classifications | | | |
|---|---|---|---|
| **GROUP II** | 07/01/03 | 07/01/03 | 07/01/05 |
| | $20.65 | **$1.35 | **$1.40 |

Asbestos AbatementAsphalt Shoveler
Cement Dumper (on 1 yard or larger mixer and   handling bulk cement)
Cesspool Digger and Installer
Chucktender
Chute Man, pouring concrete, the handling of the chute from readymix
trucks, such as walls, slabs, decks, floors, foundations, footings,
curbs, gutters and sidewalks
Concrete Curer - Impervious Membrane and Form Oiler
Cutting Torch Operator (Demolition)
Fine Grader, Highways and Street Paving, AirportRunways, and
similar type heavy construction
Gas, Oil and/or Water Pipeline Wrapper Pot Tender and Form Man
Grout Man (including forming, pouring, handling, mixing, finishing
and cleanup of all types of grout)
Guinea Chaser
Headerboard Man - Asphalt
Installation of all Asphalt Overlay Fabric andMaterials used
for Reinforcing Asphalt
Irrigation LaborerLaborer, Packing Rod Steel and Pans
Membrane Vapor Barrier Installer
Power Broom Sweepers (small)
Riprap, Stonepaver, placing stone or wet sacked concrete
Roto Scraper and Tiller
Sandblaster (Pot Tender)
Septic Tank Digger and Installer (leadman)
Tank Scaler and Cleaner
Tree Climber, Faller, Chain Saw Operator,
Pittsburgh Chipper and similar type Brush Shredders
Underground Laborers, including Caisson Bellower

| Classifications | | | |
|---|---|---|---|
| **GROUP III** | 07/01/03 | 07/01/04 | 07/01/05 |
| | $21.20 | **$1.35 | **$1.40 |

Asphalt, Installation of all fabrics
Buggymobile Man
Bushing Hammer
Compactor (all types including Tamper, Barko, Wacker)
Concrete Cutting Torch
Concrete Pile CutterDriller, Jackhammer, 2-1/2 feet drill steel or longer
Dri Pak-it Machine
Fence Erector
Gas, Oil and/or Water Pipeline Wrapper - 6" Pipe and over by
any method, inside and out
Guardrail Erector
High Scaler (including drilling of same)



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 36**

| Classifications | | | |
|---|---|---|---|
| **GROUP V** | **07/01/03** | **07/01/04** | **07/01/05** |
| | $23.10 | **$1.35 | **$1.40 |

Blasters Powderman - All work of loading holes, placing and blasting
of all powder and explosives of whatever type, regardless
of method used for such loading and placing
Horizontal Directional Driller, Boring System Electronic Tracking
Driller: All power drills, excluding Jackhammer, whether core, diamond,
wagon, track, multiple unit, and any and all other types of mechanical
drills without regard to the form of motive power
Environmental, Remediation, Monitoring Well, Toxic Waste and Geotechnical Driller
Toxic Waste Removal Welding, certified or otherwise, in connection with Laborers' Work

| Classifications | | | |
|---|---|---|---|
| **GROUP VI** | **07/01/03** | **07/01/04** | **07/01/05** |
| | $24.60 | **$1.35 | **$1.40 |

Horizontal Directional Drill Locator and/or Foreman

| Watchman | | | |
|---|---|---|---|
| | $18.11 | **$1.35 | **$1.40 |

** To be allocated by the Union (includes $0.64 to Pension on 07/01/04 and $0.40 to Pension on 07/01/05)

**Residential Work (See Appendix A for definition)**

**Residential Wage Rates**

| | 07/01/03 |
|---|---|
| Cleanup, Landscaping, Fencing (Chain Link and Wood) | $18.57 |
| All other work on residential projects as described in MLA | $19.57 |

**Residential Fringe Benefit Contribution Rates**

| | 07/01/03 |
|---|---|
| Health & Welfare .................................................... | $ 4.16 |
| Vacation* ............................................................... | $ 1.65 |
| Pension .................................................................. | $ 1.75 |
| Training & Retraining ............................................ | $ .26 |

* Includes Supplemental Dues Contribution

## FUTURE INCREASES: WATCHMAN AND RESIDENTIAL

07/01/04: $1.35 to be allocated by the Union (includes $0.64 to Pension on 07/01/04)
07/01/05: $1.40 to be allocated by the Union (includes $0.40 to Pension on 07/01/05)

* Upon written notice to the Associations at least sixty (60) days prior to July 1 of any year, the Union may allocate all
or a portion of the future increases to (1) Hourly wage rate; (2) Health and Welfare; (3) Pension; (4) Vacation; (5)
Training and Retraining; (6) Supplemental Dues; (7) Center for Contract Compliance; (8) Any combination thereof.

**AGC CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

Hydro Seeder and Similar Type
Impact Wrench, Multi-Plate
Kettlemen, Potmen and Men applying asphalt, lay-kold, creosote, lime
 caustic and similar type materials ("applying" means applying, dipping,
 brushing or handling of such materials for pipe wrapping and waterproofing)
Operators of Pneumatic, Gas, Electric Tools,Vibrating Machines, Pavement
 Breakers, Air Blasting, Come-Alongs, and similar mechanical tools not
 separately classified herein; operationof remote controlled robotic
 tools in connectionwith Laborers' work
Pipelayer's Backup Man, coating, grouting, making of joints, sealing,
 caulking, diapering and including rubber gasket joints, pointing and
 any and all other services
Power Post Hole Digger
Rock Slinger
Rotary Scarifier or Multiple Head Concrete Chipping Scarifier
Shot Blast Equipment Operator (8 to 48 inches)
Small Skid Steer Loader
Steel Headerboard Man and Guideline Setter
Trenching Machine, Hand Propelled

**Classifications**

| | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| **GROUP IV** | $22.75 | **$1.35 | **$1.40 |

Any Worker Exposed to Raw Sewage
Asphalt Raker, Luteman, Ironer, Asphalt Dumpman and
 Asphalt Spreader Boxes (all types)
Concrete Core Cutter (walls, floors or ceilings) Grinder or Sander
Concrete Handworking by any method or means
Concrete Saw Man, Cutting Walls or Flat Work,Scoring old or new concrete
Cribber, Shorer, Lagging, Sheeting and Trench Bracing,
 Hand-Guided Lagging Hammer
Head Rock Slinger
Installer of Subsurface Instrumentation, Monitoring Wells or Points,
Remediation Systems Installer
Laborer, Asphalt-Rubber Distributor Bootman
Laser Beam in connection with Laborer's work
Oversize Concrete Vibrator Operator, 70 pounds and over
Pipelayer performing all services in the laying, installation and all forms
 of connection of pipe from the point of receiving pipe in the ditch until
 completion of operation, including any and all forms of tubular material,
 whether pipe, metallic or non-metallic, conduit, and any other stationary
 type of tubular device used for the conveying of any substance or element,
 whether water, sewage, solid, gas, air, or other product whatsoever
 and without regard to the nature of material from which the tubular material
is fabricated; No-joint pipe and stripping of same; Industrial Pipefitter
in connection with Laborers' Work
Prefabricated Manhole Installer
Sandblaster (Nozzleman), Porta Shot - Blast, Water Blasting
Traffic Lane Closure, Certified



AGC
**CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

## ARTICLE XX
## Fund for Construction Industry Advancement

A.   The Parties to this Agreement recognize that to protect and expand the interests of the Construction Industry, to be aware of modes and methods of improving the efficiency of the industry and to protect the industry from harmful legislation whose impact is detrimental to both the employees and the Contractors and without regard to whether such employees are employed by members of Contractors the individual employer will contribute the sum of six cents ($0.06) per hour for all hours worked or paid for by all employees employed under the terms of this Agreement to the FUND FOR CONSTRUCTION INDUSTRY ADVANCEMENT, an employer established and administered Trust formed and created for this purpose and the individual employer hereby adopts and agrees to be bound by the terms of that certain Trust Agreement establishing the FUND FOR CONSTRUCTION INDUSTRY ADVANCEMENT, and further agrees to observe and be bound by the actions and determinations of the Board of Trustees of said Trust.

B.   It is understood that independent of any other provisions, contained in this Agreement which provide for its termination, ASSOCIATIONS shall have the right and power to cancel unilaterally the provisions, solely of this Article at any time by delivering notice to the Union in writing to that effect.

C.   The Fund for Construction Industry Advancement shall be used only for the purpose set forth in paragraph A and shall not be used for anti-labor or anti-employee purposes.

## ARTICLE XXI
## Contract Administration Fund

A.   A trust fund entitled "The Contract Administration Trust Fund for Southern California" shall be used only to provide compensation to the Contractors for negotiations and administration of the provisions of this Agreement, including Article VI, for the Industry. Individual Employers shall contribute into the Contract Administration Trust Fund six cents ($0.06) per hour for each hour paid for or worked and an additional two cents ($0.02) per hour may be allocated by the Trustees during the life of this agreement. The trust fund shall be administered solely by Trustees selected by the Contractors in accordance with a trust agreement to be executed by the contractors. The Union shall have the right, not more than one (1) time per year, to independently audit the Trust Fund.

B.   Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated pursuant to the Declaration of Trust establishing the Contract Administration Trust Fund for Southern California and further ratify, confirm, and consent to all acts heretofore taken in the creation and administration of said Trust by its Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

## ARTICLE XXII
## Center For Contract Compliance Trust Fund

1.   Contractors covered by the terms of this Agreement agree to pay to the Center for Contract Compliance Trust Fund effective July 1, 2000, the sum of fifteen cents ($0.15) per hour for each hour worked or paid for on all classifications contained in this Agreement.

2.   Contractors covered by the terms of this Agreement agree to be bound by all the terms and conditions of the Agreement and Declaration of Trust as they may be constituted in its original form and insofar as it may be amended.



**AGC CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA


**2003 - 2006
Laborers
Agreement
Page 38**

3. The parties agree that a review of the Center for Contract Compliance may be performed annually.

4. This Article shall be subject to the Agreement of the parties on the language for the Agreement and Declaration of Trust.

# ARTICLE XXIII
## Delinquency and Collection Procedure

A. The Trustees of the Trust Fund shall furnish the Contractor Associations and the Union with a list of delinquent contractors each month. Such list will also be available to all signatory contractors on request, subject to such reasonable cost as may be determined by the administrative office of the Trust Funds as representing the cost of duplication and transmission of such lists, payment for which to be made in advance. The Contractor agrees he will not subcontract any portion of his job to any subcontractor whose name appears on the delinquent list until such subcontractor has paid all delinquent monies to the various Trust Funds. In the event the Contractor subcontracts to any such delinquent subcontractor in violation of the foregoing, the Contractor shall remove such subcontractor from the job immediately, unless such delinquent subcontractor immediately makes full payment for all delinquencies to the Trusts.

B. If the Contractor fails to remove the delinquent subcontractor, the Contractor shall become financially responsible for all fringe benefits owed to any funds established by this Agreement by the Contractor or by his subcontractor or the subcontractor of his subcontractor for work performed on the Contractor's job or project in accordance with the requirements set forth below.

C. The term "Contractor" for delinquency purposes only, shall include all entities of the delinquent contractor, change of name, or change of entity, provided that the delinquent contractor holds at least ten (10%) percent ownership in the new entity.

D. In the event the Contractor subcontracts to a subcontractor that is not on the delinquency list at the time the subcontract is entered into, the Trust Office shall notify the Contractor of any delinquency of the subcontractor within ninety (90) days of the date the delinquency first occurred and in no case shall the Contractor be liable for fringe benefit contributions of a subcontractor for more than ninety (90) days prior to the date the Trust Office notice is sent to the Contractor.

E. Where a Contractor contracts with a listed delinquent subcontractor or subcontractors, and the Contractor fails to terminate the subcontract of such delinquent subcontractor, or subcontractors, the contractor shall become financially responsible for the liability of the delinquent subcontractor's fringe benefits on that job from the commencement of the work under the subcontract to the date of termination of that subcontract.

F. The Trust Office shall send delinquency notices to Contractors whose contributions are not paid as required. The Trust Office shall notify the Union of those contractors who fail to pay within five (5) days of such notice and the Union shall within forty-eight (48) hours after receipt of such notice withhold service from the Contractor involved until contributions are paid or satisfactory arrangements made with the Trustees for payment.

G. Any employee rendered unemployed by reason of the foregoing shall not be deemed engaged in a work stoppage or labor dispute but shall be deemed constructively laid off by the Contractor by failure to pay monies due for the benefit of the employees. Contractor agrees that such employees are entitled to unemployment insurance and warrants that he will take no action to interfere with the employee's application for unemployment insurance. Any dispute in connection with this paragraph is subject to the grievance procedure.

H. The Trust Office shall issue delinquency notices and clearances to Contractors confirmed in writing.


**AGC CALIFORNIA**
ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA

I.   All employees shall be covered by this Agreement and the provisions applicable to Trust Funds. The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to payroll records, time cards, Federal W-2 Forms, 1099 and 1096 Forms, Quarterly State Tax returns and cash disbursement ledgers, all canceled checks, check registers and invoices. If requested by the Trusts, the Contractor shall provide payroll breakdown by job when a lawsuit has been filed against a contractor. The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys fees and costs, whether or not the audit reveals a delinquency. Any Contractor delinquent under this Article may be required by the Trust Funds to submit, in addition to regular reports, payroll breakdowns by job, and the failure to submit timely job breakdowns shall be considered a delinquency under this Article. If a Contractor refuses to furnish the foregoing the Union may take economic action.

J.   It is recognized that a delinquency in contributions causes damages beyond the value of the unpaid contributions, which are difficult to quantify. These damages include, but are not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on Contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to but for the delinquency of the Contractor. Because these damages are difficult, if not impossible, to quantify on a case-by-case basis, the parties agree that liquidated damages, not a penalty, for such losses shall be set at the greater of $25 or 20% of the contributions late or unpaid for each Trust Fund. The parties have reviewed the costs of collection by the Trust Funds, and agree that 20% liquidated damages is an accurate projection of the Trusts' damages that result from a delinquency. In addition, any Contractor delinquent in its obligations under this Article shall be required to pay interest on the delinquent contributions (at a rate to be set by the Trustees of the Trust Funds), and any audit fees. In the event that litigation is necessary to collect any delinquent contributions (including litigation to enforce mechanic liens, stop notices, bond claims or similar remedies, and any bankruptcy or receivership proceedings) or to enforce any obligation under this Article, in addition to liquidated damages owed by the delinquent Contractor, the Contractor shall also be liable for all reasonable attorney fees and legal costs incurred in such litigation. The Trustees of the Trust Funds may waive or reduce the amount of liquidated damages, at their sole discretion and consistent with their fiduciary duties. The decision of the Trustees in any request to waive or reduce liquidated damages shall be final and binding upon the parties.

K.   For the purposes of this Agreement, delinquency in failure to make the required reports and contributions to the Trust Fund as determined by the Trustees, shall consist of the following:

   (a)   Failure to submit trust report forms.
   (b)   Failure to report on all employees.
   (c)   Failure to make the payments as required on time.
   (d)   Failure to pay audit amounts and audit fees and other costs and damages as determined by the Trust.
   (e)   Failure of the bank to honor checks submitted.
   (f)   Failure to pay monies due.
   (g)   Failure to submit to an audit.

L.   In addition to any other remedies under this Article, the Union may terminate the participation of a delinquent contractor. Notice of such termination shall be sent to the Contractor, and each of the employees listed on the last report submitted by that Contractor, and shall be effective 30 days from such notice. Upon termination, no employee of the delinquent Contractor shall accrue credit for any benefits for hours worked for that Contractor. However, termination shall not end or alter the obligations of the Contractor (or any Contractor subcontracting to that Contractor) under this Article. In addition to any other damages under this Article, a Contractor so



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

2003 - 2006
Laborers
Agreement
Page 40

terminated shall be liable to the Trust Fund for the cost of notice, and shall be liable to its employees for the value of any benefits lost in an amount not exceeding the hourly contributions and liquidated damages that would otherwise have been due.

## ARTICLE XXIV
## Public Works Project Davis-Bacon Act and Related Statutes

In the event an individual Employer bids a public job or project being awarded by a federal, state, county, city or public entity which is to be performed at a predetermined and/or prevailing wage rate established by the Secretary of the U.S. Department of Labor (pursuant to Public Law 74-403 as amended by Public Law 88-349 whose regulations are contained in 29 CFR Parts 1, 3, 5 and 7, and which determinations are published in The Federal Register), or by the Director of the California Division of Industrial Relations, or a County, City or other public entity and the established prevailing wage rate, including vacation contributions, is lower by no more than fifteen (15%) percent on residential or housing work or by no more than ten (10%) percent on any other type of work, than the Master Labor Agreement hourly wage rate (excluding fringe benefits) the published hourly wage rate, including vacation contributions, at the time of bid shall apply to the job or project for the duration of the job or project but in no event to exceed an eighteen (18) month period.

In the event the job or project extends beyond eighteen (18) months, the wage rates, including vacation contributions, shall be increased thereafter to maintain the appropriate fifteen (15%) or ten (10%) percent differential under the then current Master Labor Agreement.

Should the predetermined wage rate and the Master Labor Agreement rate be the same, it is agreed that rate shall be in effect for an eighteen (18) month period. On work that extends beyond eighteen (18) months, then the current Master Labor Agreement rate shall apply.

If any public agency publishes prevailing wage and fringe benefit rates for Laborers classifications for a specific job or project which are less than the rates set-forth in the Master Labor Agreement, and there are non-signatory prime bidders on the plan holders list, or if there is no bid list published, then the individual Employer may bid said project in accordance with the wage rates, fringe benefit rates and other applicable provisions of the Prevailing Wage Determination incorporated in the bid specifications.

## ARTICLE XXV
## Laborer Joint Apprenticeship Committee

A.   The Contractors and the Union recognize the need for apprentice training and to this end shall indenture apprentices in conformity with California Labor Code Section 1777.5 governing employment of apprentices upon public work. Apprentices shall be employed in accordance with the Standards and guidelines as established by the Laborers Joint Apprenticeship Committee and approved by the Division of Apprenticeship Standards. The terms and conditions of this Agreement shall apply to Apprentices.

B.   The ratio of Apprentices to Journeymen shall be one Apprentice when at least five (5) Journeymen are regularly employed, and one (1) additional Apprentice for every five (5) additional Journeymen.

C.   The Contractor will make an effort to keep Apprentices reasonably employed regardless of period status or advancement to a higher period of pay.

D.   The Local Union, through the Joint Apprenticeship Committee, shall dispatch Apprentices to the Contractors.

E.   The Contractor shall pay to Apprentices the wages and to the Trust Funds the sums designated below for each hour worked or paid to Apprentices.



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

F.    The parties have agreed to a Memorandum of Understanding regarding Apprenticeship ratios.

1.    Apprentice wages shall be paid pursuant to the wage schedule set forth below and contained in the Apprenticeship Standards of the Joint Apprenticeship Committee, which is based on the following percentages of the Group V journeyman rate of $23.10:

| | | | |
|---|---|---|---|
| 1st period | 1 - 500 hours | 50% | $11.55 |
| 2nd period | 501 - 1000 hours | 55% | $12.71 |
| 3rd period | 1001 - 1500 hours | 60% | $13.86 |
| 4th period | 1501 - 2000 hours | 70% | $16.17 |
| 5th period | 2001 - 2500 hours | 80% | $18.48 |
| 6th period | 2501 - 3000 hours | 85% | $19.64 |

*Apprentices shall receive the appropriate percentage of any increase to the journeyman wage during the term of this Agreement.

2.    The Contractor shall pay to the Laborers Trust Funds the sum designated below for each hour worked or paid for on all Apprentices.

Trust Fund contributions for Apprentices*:

| | | |
|---|---|---|
| Health & Welfare | (70%) | $2.91 |
| Pension | (20%) | $0.86 |
| Vacation/Supp. Dues. | (70%) | $1.79 |
| Training and Retraining | (100%) | $0.26 |
| C.C.C. | (100%) | $0.15 |
| Industry Fund | (100%) | $0.06 |

*Apprentice shall receive the appropriate increase to the journeyman fringe benefit rate increases.

# ARTICLE XXVI
# Drug and Alcohol Abuse Prevention Programs

The parties recognize the problems which drug and alcohol abuse have created within the construction industry and have reached formal agreement on a Memorandum of Understanding on Drug Abuse Prevention and Detection. Any testing program implemented by an individual employer must conform to the provisions of the Memorandum of Understanding agreed upon by the parties.

The parties have agreed to a Memorandum of Understanding on Drug Screening.



**AGC CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

**2003 - 2006
Laborers
Agreement
Page 42**

IT IS AGREED by the parties hereto that all matters of wages, hours, and conditions, whether or not specifically set forth in this Agreement, are closed for the term of the Agreement.

**Associated General Contractors
of California, Inc.**

By: _____ Thomas Holsman _____

Date _____

**Southern California District Council
of Laborers**

By: _____ Mike Quevedo, Jr. _____

Date _____

**Building Industry Association of
Southern California, Inc.**

By: _____ Pamela Ackrich _____

Date _____

**Southern California District Council
of Laborers**

By: _____ Tony R. Hoffman _____

Date _____

**Southern California Contractors
Association**

By: _____ Jere Meacham _____

Date _____

**Southern California District Council
of Laborers**

By: _____ Angel Sambrano, Sr. _____

Date _____



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

## Appendix A

## Residential Work

The provisions of the Master Labor Agreement apply except as modified by this Appendix A.

A.   **Definition:**

1.   Residential work is defined as all Laborers' work on wood or metal frame construction of single family residences, apartments and condominiums. This residential work shall not include projects that exceed three stories over a garage level; any utility work, such as telephone, gas, water, sewer, and other utilities; or any work outside property lines, including curbs, gutters, and sidewalks.

2.   This residential work shall include all rough grading work at the job site behind the existing public right-of-way, at the time of commencement of said work. It shall not include any fine grading work, utility work, or paving work in the future street and public right-of-way.

B.   **Application:** The Contractor may pay to its employees the rate for residential work, but only on residential work. Any work that is not residential work or is excluded from residential work as defined in paragraph A, shall be paid at the construction rate.

C.   **Enforcement:** For purposes of this Appendix A and not withstanding any other steps in the grievance procedure of this Agreement a claimed violation of this Article shall be handled in the following manner:

1.   Within twenty-four (24) hours of a request by the Union to the Contractor and to the Associations, a representative of the Union and a representative of the Associations shall meet on the job and review with the Contractor the work in question or the contractor's bid, or both, to determine whether the Contractor has bid the job or a portion of the job, or has permitted any work to be performed on the job under residential rates where the work in question was not residential. If the Contractor refuses to participate or to furnish its bid, it shall be presumed that a deliberate, major violation of this article occurred.

2.   If the Union and Association representatives find a violation of this Article, or less than construction rates were paid at a time when the Contractor did not have an Agreement with the Union to pay less than construction rates, the representatives shall issue a written award in the following language:

"(Name of Contractor) is hereby found to be performing non-residential work, for which the Contractor has paid or proposes to pay residential rates. The remedy for this violation is an injunction against further work on the job known as (describe job) except at the construction overtime rate (as liquidated damages). This injunction shall be enforceable by a court injunction, and the plaintiff shall be entitled to its attorneys' fees and cost."

The Union and the Association representatives shall thereafter examine the Contractor's books and records and make an award of damages, with the overtime portion of the award being paid to the Union as its damages.

3.   If the Union and Association representatives find, or if it is found by any other arbitrator that the payment of less than construction rates by the Contractor for other than residential work was not inadvertent and minor, the Contractor shall lose the benefit of the residential rate of this Agreement for one year from the finding of a violation. The burden of showing that the violation was inadvertent and



AGC
CALIFORNIA
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA



2003 - 2006
Laborers
Agreement
Page 44

minor is on the Contractor. If there is a finding of a second violation, the Contractor shall lose the benefit of the residential rate for the remainder of the Agreement.

4. If the Union and Association representatives cannot agree, the dispute shall proceed through the normal grievance procedure of this Agreement or the Short Form Agreement (whichever is applicable to the Contractor), and the award shall be as set forth in paragraph 2.

D. If the Union finds that the enforcement of this clause is not succeeding, the Union may reopen the Agreement for the purpose of amending this paragraph, and if no agreement is reached within 15 days on more stringent enforcement, the dispute shall be submitted to arbitration for the sole purpose of adopting language that is more stringent and easier to enforce.

E. **Transfer Provisions:** The Contractor recognizes the desirability of employing workmen from the area in which the work is located and the Union recognizes that in the employ of the Contractor are Laborers who are necessary to the efficient continuity of the Contractor's operations. Therefore, the Contractor may transfer up to four (4) Laborers and one (1) foreman from area to area. After the transfer of no more than four (4) Laborers and one (1) foreman, the Contractor must hire the next two (2) Laborers from the Local Union hiring hall in the geographical area in which the work is performed. Thereafter the Contractor may transfer one (1) additional Laborer for each Laborer hired from the Local Union hiring hall in whose jurisdiction the work is performed. The Employer shall keep this 50-50 ratio intact (one (1) local person and one (1) person from outside the area) in employing, laying off and terminating Laborers. Only employees who have been employed by the Contractor for at least three hundred (300) hours in the last six (6) months may be transferred from one area to another area. The Contractor must properly clear all employees, including foreman and Key employees, with a dispatch slip from the Local Union having geographical jurisdiction over the project prior to those employees beginning work. The Union will not unreasonably withhold issuing a clearance. For the transfer of additional Laborers, the Contractor shall first contact the office of the appropriate Local Union in the area where the work is to be performed. The above additional transfers shall only be made by mutual consent.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

2003 - 200
Laborer
Agreemen
Page 4

## ATTACHMENT #1

## CONTRIBUTIONS PAYABLE TO TRUST FUNDS

**EFFECTIVE**

| | 07/01/03 | 07/01/04** | 07/01/05** |
|---|---|---|---|
| Laborers' Health and Welfare Fund for Southern California | $4.16 | | |
| Construction Laborers' Pension Fund for Southern California | $4.31 | $0.64 | $0.40 |
| Construction Laborers' Vacation Fund for Southern California | $2.55* | | |
| Laborers' Training and Retraining Fund for Southern California | $0.26 | | |
| Fund for Construction Industry Advancement | $0.06 | | |
| Center for Contract Compliance Trust Fund | $0.15 | | |
| Contract Administration Fund | $0.06 | | |

\* Includes Supplemental Dues contribution

<u>FUTURE INCREASES</u> **

**07/01/04:**   $1.35  to be allocated by the Union (includes $0.64 to Pension on 07/01/04)
**07/01/05:**   $1.40  to be allocated by the Union (includes $0.40 to Pension on 07/01/05)

** To be allocated by the Union to (1) Hourly wage rate; (2) Health & Welfare; (3) Pension; (4) Vacation; (5) Training and Retraining; (6) Supplemental Dues; (7) Center for Contract Compliance; (8) Any combination thereof.



**AGC
CALIFORNIA**
ASSOCIATED
GENERAL
CONTRACTORS
OF CALIFORNIA

Exhibit B



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

R & L BROSAMER, INC., a California corporation; GUY CULP, an individual; JOHN POLOGAR , an individual; SHAWN OTHEIN, an individual; JOSE ESCOBEDO, an individual; and DOES 1 through 120, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHARLENE SHOEMAKER, an individual

F I L E D

APR 2 4 2008

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By **D. WAGNER**
, Deputy Clerk

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Martinez Superior Court, County of Contra Costa
725 Court St.
Martinez, CA 94553

CASE NUMBER:
*(Número del Caso):* 08 - 00913

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sofian Solomon Dawood   SBN: 250363
7170 N. Financial Dr., Suite 101 ~ Fresno, CA  93720  (559) 447-8768

DATE: 4/24/08
*(Fecha)*

CLERK OF THE SUPERIOR COURT

Clerk, by **D. WAGNER** , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. www.USCourtForms.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Sofian Solomon Dawood, Attorney at Law   SBN: 250363
Monterey Office Building
7170 N. Financial Dr., Suite 101
Fresno, CA 93720
TELEPHONE NO. (559) 447-8768      FAX NO. (559) 447-8765
ATTORNEY FOR *(Name)*: Charlene Shoemaker

**F I L E D**

APR 2 4 2008

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____ . Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS 725 Court St.
MAILING ADDRESS
CITY AND ZIP CODE Martinez - 94553
BRANCH NAME

CASE NAME:
Shoemaker v. R & L Brosamer, Inc., Culp, Pologar , Othein & Escobedo

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER C 08 - 00913 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✓] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.[✓] monetary  b.[ ] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action *(specify)*: 13
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: APR 2 2 2008
Sofian S. Dawood
(TYPE OR PRINT NAME)            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)

Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

1 | SOFIAN DAWOOD 250363
LAW OFFICES OF SOFIAN SOLOMON DAWOOD
2 | 7170 N. Financial Suite 101
Fresno, California 93720
3 | Telephone: (559) 447-8768
Facsimile:  (559) 447-8765
4

F I L E D

APR 2 4 2008

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____ D. WAGNER
, Deputy Clerk

5 | Attorneys for Plaintiff
CHARLENE SHOEMAKER
6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | IN AND FOR THE COUNTY OF CONTRA COSTA

9 | UNLIMITED CIVIL DIVISION

10 | * * *

11 | CHARLENE SHOEMAKER, an individual, )

12 | )

13 | Plaintiff, )

14 | vs. )

15 | R & L BROSAMER, INC., a California )
corporation: GUY CULP, an individual; )
16 | JOHN POLOGAR  , an individual; )
SHAWN OTHEIN, an individual; JOSE )
17 | ESCOBEDO, an individual; and DOES 1 )
through 120, inclusive, )
18 | )

19 | Defendants. )

20 | )

21 | )

22 | )

23 | )

24 | )

25 | )

26 | )

27 | )

**Case No. 08-00913**

**_FIRST AMENDED_ COMPLAINT FOR DAMAGES FOR:**

**(1) UNLAWFUL HARASSMENT BASED ON SEX IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, _ET SEQ._; (2) UNLAWFUL DISCRIMINATION IN PAY BASED ON SEX IN VIOLATION OF CALIFORNIA LABOR CODE § 1197.5; (3) UNLAWFUL DISCRIMINATION BASED ON SEX IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, _ET SEQ._; (4) UNLAWFUL RETALIATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, _ET SEQ._; (5) WRONGFUL TERMINATION AND RETALIATION IN VIOLATION OF PUBLIC POLICY; (6) ASSAULT; (7) BATTERY; (8) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (9) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; (10) NEGLIGENT HIRING OF GUY CULP; (11) NEGLIGENT RETENTION OF GUY CULP; (12) RECOVERY OF UNPAID WAGES, INCLUDING OVERTIME COMPENSATION; AND (13) RECOVERY OF WAITING TIME PENALTIES**

28 | ///

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

1

COMES NOW Plaintiff CHARLENE SHOEMAKER (hereinafter referred to as "Plaintiff" or "SHOEMAKER"), alleging for her *First Amended* Complaint as follows:

## I.

## GENERAL ALLEGATIONS

1.      SHOEMAKER is an adult female residing at all times alleged herein in the State of California.

2.      Plaintiff is informed and believes, and thereon alleges, that Defendant R & L BROSAMER, INC. ("BROSAMER" or the "Company") is a California corporation with its principal place of business in the City of Walnut Creek, County of Contra Costa, State of California.  At all times alleged herein, BROSAMER was an employer as defined in California Government Code section 12926(d) and within the meaning of the California Fair Employment and Housing Act ("FEHA").

3.      Plaintiff is informed and believes, and thereon alleges, that Defendant GUY CULP ("CULP") is an individual residing in the State of California who, at all times alleged herein, is and was employed as a paving superintendent at BROSAMER.  CULP was, at all times alleged herein, a managing agent of BROSAMER and had both direct and indirect supervisory authority over SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California Government Code section 12926, subdivision (r).  At all times alleged herein, CULP was acting, at least in part, in the course and scope of his employment with BROSAMER and with the permission, consent, and knowledge of BROSAMER. BROSAMER and other managing agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of CULP alleged herein.

4.      Plaintiff is informed and believes, and thereon alleges, that Defendant JOHN POLEGARD ("POLEGARD") is an individual residing in the State of California who, at all times alleged herein, is and was employed as a Southern Area Manager at BROSAMER. POLEGARD was, at all times alleged herein, a managing agent of BROSAMER and had both direct and indirect supervisory authority over SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California Government Code section 12926,

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

2

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1  subdivision (r). At all times alleged herein, POLEGARD was acting, at least in part, in the
2  course and scope of his employment with BROSAMER and with the permission, consent, and
3  knowledge of BROSAMER.    BROSAMER and other managing agents aided, abetted,
4  authorized, condoned, conspired with, and/or ratified the acts of POLEGARD alleged herein.

5       5.    Plaintiff is informed and believes, and thereon alleges, that Defendant
6  SHAWN OTHEIN ("OTHEIN") is an individual residing in the State of California who, at all
7  times alleged herein, is and was employed as a Project/Equal Employment Opportunity Manager
8  ("Project/EEO Manager") at BROSAMER.    OTHEIN was, at all times alleged herein, a
9  managing agent of BROSAMER and had both direct and indirect supervisory authority over
10 SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California
11 Government Code section 12926, subdivision (r). At all times alleged herein, OTHEIN was
12 acting, at least in part, in the course and scope of his employment with BROSAMER and with
13 the permission, consent, and knowledge of BROSAMER.  BROSAMER and other managing
14 agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of OTHEIN
15 alleged herein.

16      6.    Plaintiff is informed and believes, and thereon alleges, that Defendant
17 JOSE ESCOBEDO ("ESCOBEDO") is an individual residing in the State of California who, at
18 all times alleged herein, is and was employed as an Equal Employment Opportunity Officer
19 ("EEO Officer") at BROSAMER. ESCOBEDO was, at all times alleged herein, a managing
20 agent of BROSAMER and had both direct and indirect supervisory authority over
21 SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California
22 Government Code section 12926, subdivision (r). At all times alleged herein, ESCOBEDO was
23 acting, at least in part, in the course and scope of his employment with BROSAMER and with
24 the permission, consent, and knowledge of BROSAMER.  BROSAMER and other managing
25 agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of
26 ESCOBEDO alleged herein.

27      7.    At all relevant times herein, SHOEMAKER was an employee of
28 BROSAMER, said employment having commenced in or about May of 2003 and having

3

***FIRST AMENDED COMPLAINT FOR DAMAGES***

1  continued intermittently since said date until her constructive discharge, as set forth below.  At

2  all times mentioned herein, SHOEMAKER was duly qualified to perform, and did perform, her

3  employment duties in a satisfactory manner.

4          8.      This action is brought in part to remedy discrimination and harassment

5  against SHOEMAKER on the basis of sex, in the terms, conditions, and privileges of

6  employment; and, to remedy retaliation against Plaintiff for activity protected under, and in

7  violation of, California Government Code section 12900, *et seq.*  This action is also brought to

8  remedy discrimination, harassment, and retaliation against SHOEMAKER on the basis of her

9  opposition to the Company's illegal and/or unethical conduct, as well as on the basis of her

10  complaints of, and opposition to, sexual harassment in the workplace and in the terms,

11  conditions, and privileges of employment, and to remedy retaliation against Plaintiff for activity

12  protected under, and in violation of, California Government Code section 12900, *et. seq.*

13          9.      SHOEMAKER timely filed charges of discrimination, harassment, and

14  retaliation with the Department of Fair Employment and Housing (DFEH) against Defendants,

15  true and correct copies of which are attached hereto collectively as Exhibit "A" and incorporated

16  herein by this reference.

17          10.     SHOEMAKER received her Right to Sue letters from the DFEH with

18  respect to the above complaints submitted thereto, true and correct copies of which are attached

19  hereto collectively as Exhibit "B" and incorporated herein by this reference.

20          11.     SHOEMAKER has complied with all prerequisites to jurisdiction of this

21  Court under California Government Code section 12900, *et seq.* and has, therefore, exhausted

22  her administrative remedies.

23          12.     Venue is proper in this County because it is the county in which

24  BROSAMER's principal place of business in located.

25          13.     The true names and capacities of the defendants named herein as DOES 1

26  through 120, inclusive, whether an individual, corporation or otherwise, are unknown to the

27  Plaintiff who, therefore, sues such defendants by fictitious names pursuant to Code of Civil

28  Procedure Section 474.  Alternatively, such DOE Defendants are persons whose identities are

Law Offices of Soflan
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

4

*FIRST AMENDED* COMPLAINT FOR DAMAGES

1  known to Plaintiff, but about whom sufficient facts are not known that would support the
2  assertion by Plaintiff of a civil claim at this time. When Plaintiff obtains information supporting
3  a claim against any DOE Defendant, she will seek leave to amend this Complaint and will assert
4  appropriate charging allegations.

5          14.    BROSAMER, CULP, POLEGARD, OTHEIN, ESCOBEDO, and the
6  DOE Defendants may hereinafter sometimes be referred to collectively as "Defendants."

7          15.    Plaintiff is informed and believes, and thereon alleges, that defendants,
8  and each of them, are the agents, employees, shareholders, and/or parent, subsidiary, or sister
9  corporations of each other and are responsible for the acts complained of herein and in so acting
10 were functioning as the owner, shareholder, principal, agent, servant, partner, joint venturer,
11 alter-ego, employee, proxy, and/or managing agent of the other defendants herein, and in
12 performing the acts mentioned herein were acting, at least in part, within the course and scope of
13 such authority and with the permission and consent of the other defendants.

14         16.    Plaintiff is informed and believes, and thereon alleges, that the above
15 defendants, managing agents, and supervisors, aided, abetted, condoned, permitted, approved,
16 authorized, and/or ratified the unlawful acts described herein.

17                                          **II.**

18                        **BACKGROUND ALLEGATIONS**

19         17.    SHOEMAKER commenced employment with BROSAMER in or about
20 May of 2003 and continued to work for BROSAMER intermittently thereafter until the time of
21 her constructive discharge in or about September of 2006. SHOEMAKER was initially hired as
22 a laborer but was subsequently promoted to the position of foreman.

23         18.    Plaintiff is informed and believes, and thereon alleges, that in or about
24 January of 2006, CULP was interviewed and hired by Bob Brosamer, one of the owners of
25 BROSAMER, as a paving superintendent. Plaintiff is further informed and believes, and thereon
26 alleges, that immediately thereafter, CULP was assigned to be the paving superintendent of the
27 project about to commence at a canal located in Coachella, California (the "Coachella Project").
28 ///

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

*FIRST AMENDED* COMPLAINT FOR DAMAGES

1 CULP was given control and supervision over the BROSAMER employees assigned to work on
2 the Coachella Project.

3        19.     In or about February of 2006, work on the Coachella Project commenced.
4 The Coachella Project was completed on or about August 4, 2006. From the commencement to
5 the completion of the Coachella Project, SHOEMAKER worked on said project and, at all times,
6 was under the direction and supervision of CULP. It was during such time that the unlawful acts
7 alleged herein, including unlawful harassment and discrimination based on sex and unlawful
8 retaliation, took place.

9        20.     SHOEMAKER was constructively discharged from her employment with
10 BROSAMER in or about September of 2006.

11                **FIRST CAUSE OF ACTION**
12 **UNLAWFUL HARASSMENT BASED ON SEX IN VIOLATION OF CALIFORNIA**
13 **GOVERNMENT CODE SECTION 12940, *ET SEQ.***
14 **(Plaintiff Against BROSAMER, CULP, and DOES 1-10)**

15        21.     The allegations contained in paragraphs 1 through 20 are incorporated
16 herein by this reference and re-alleged as though fully set forth herein.

17        22.     California Government Code section 12940 provides in pertinent part as
18 follows:

19           It shall be an unlawful employment practice . . . (j) (1) For an
20           employer... or any other person, because of . . . sex . . . to harass
an employee . . . . An entity shall take all reasonable steps to
21           prevent harassment from occurring.

22        23.     Plaintiff was, at all times relevant herein, an "employee" as defined within
23 California Government Code section 12926 and was, therefore, a member of the group sought to
24 be protected by the provisions of California Government Code section 12940, *et seq.*

25        24.     BROSAMER is and was, at all times relevant herein, an "employer"
26 within the meaning of California Government Code section 12940(j)(4)(A) and, as such, was and
27 is barred from harassing employees on the bases prohibited in said section.
28 ///

aw Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED COMPLAINT FOR DAMAGES*

25.     During the time SHOEMAKER was employed by BROSAMER, she was subjected to unlawful harassment based on sex. Specifically, she was subjected to unwelcome and unsolicited offensive, sexually oriented and/or gender-based, explicit and implicit verbal, visual, physical, and physically threatening conduct by CULP that took place during and throughout the course of the Coachella Project. Such conduct took a variety of forms, including, but not limited to, the following:

a.     In or about March of 2006, CULP brought a rope to the jobsite of the Coachella Project. Over the course of approximately two (2) days, CULP repeatedly assaulted, harassed, battered, and terrified employees with the rope, including, but not limited to, lassoing certain employees, specifically including SHOEMAKER. When CULP lassoed SHOEMAKER, she almost fell into the canal;

b.     Approximately one (1) week later, CULP brought a whip to the jobsite of the Coachella Project. SHOEMAKER witnessed CULP terrify, assault, harass, and intimidate other BROSAMER employees by means of snapping a whip at said employees at the job site over a two (2)-day period of time.

c.     SHOEMAKER witnessed, on at least two (2) separate occasions, CULP, without invitation, announcement, or authorization, throw rocks at a male employee's crotch while said employee's hands were occupied in such a manner that he was helpless and precluded from protecting himself;

d.     SHOEMAKER witnessed, on at least three (3) occasions, CULP, without invitation, announcement, or authorization, forcibly simulate anal intercourse with a male employee;

e.     On approximately three (3) to four (4) occasions during the course of the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, hugged SHOEMAKER from behind and forcibly simulated anal intercourse with her;

///

///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

7

*FIRST AMENDED COMPLAINT FOR DAMAGES*

1           f.     On approximately two (2) occasions while working on the

2  Coachella Project, CULP, without prior invitation, announcement, or authorization, grabbed

3  SHOEMAKER's breasts;

4           g.     During the course of the Coachella Project, CULP would follow

5  and/or chase SHOEMAKER in his truck while she was driving along the canal in her truck at

6  nighttime. CULP did this in such a manner as to intimidate SHOEMAKER and cause her to be

7  afraid. CULP would occasionally pull his truck over behind SHOEMAKER's truck at nighttime

8  and, on one occasion, even ran his truck into hers. As a result of this conduct, SHOEMAKER

9  became afraid to drive her truck along the canal roads at nighttime; and

10           h.     SHOEMAKER regularly and continuously heard CULP make

11  comments or jokes that were gender-based and derogatory toward women, as well as comments

12  or jokes that were sexual in content and/or were vulgar.

13         26.     The aforementioned behavior, conduct, comments, and harassment toward

14  Plaintiff and others, including fellow employees of BROSAMER, created a work environment

15  that was intimidating, hostile, oppressive, abusive, derogatory toward females, and offensive to

16  Plaintiff and that had the effect of altering the conditions of Plaintiff's employment at

17  BROSAMER, thereby depriving Plaintiff of the benefit of a harassment-free work environment,

18  all in violation of California Government Code section 12940, *et seq.*

19         27.     BROSAMER further violated Plaintiff's rights in that it, amongst other

20  acts and/or omissions:

21           a.     Failed to provide Plaintiff with employment conditions and an

22  employment relationship where she could safely and comfortably work, free from physically

23  threatening, visual, and/or verbal harassment based on sex;

24           b.     Failed to respond adequately and/or effectively to Plaintiff's

25  complaints of sexual harassment;

26           c.     Failed to timely, thoroughly, and/or objectively investigate

27  Plaintiff's complaints of sexual harassment;

28  ///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED COMPLAINT FOR DAMAGES*

d.    Retaliated against Plaintiff for her complaint of and/or opposition to sexual harassment in the workplace, as set forth more particularly below;

e.    Failed to take appropriate action when they knew or should have known of the unlawful sexual harassment of and/or retaliation against Plaintiff;

f.    Failed to take appropriate and/or effective remedial action against those who perpetrated, acquiesced and ratified, or ignored the unlawful sexual harassment of Plaintiff and retaliated against Plaintiff;

g.    Failed to adhere to and/or enforce an effective anti-sexual harassment policy with respect to management, supervisors, staff, and employees; and

h.    Aided and abetted in the commission of the above wrongful acts.

28.    As a direct and proximate result of Defendants' unlawful conduct and employment practices, Plaintiff has suffered interference with her employment responsibilities, the indignity of harassment, the invasion of her rights to be free from harassment, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or have been, manifested as emotional distress and mental suffering, as well as physical manifestations of her emotional distress.

29.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, severe anxiety, painful embarrassment among friends, family, and co-workers, disruption of her personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

30.    In performing the acts and/or failing to perform the acts alleged hereinabove, Defendants, and each of them, acted with malice toward Plaintiff and/or a reckless indifference to her statutorily protected rights and in conscious disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of California.  As such, Defendants are guilty of oppression and malice for which Plaintiff is entitled to punitive damages, in an amount to be proven at trial.

31.    California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.  California

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

9

1  Government Code section 12965, subsection (b), provides that reasonable attorneys' fees and
2  costs are recoverable herein by the prevailing party, within the discretion of the court. Plaintiff
3  has retained attorneys for the prosecution of this action. As a result, Plaintiff is entitled to her
4  reasonable attorneys' fees and costs herein incurred.

**SECOND CAUSE OF ACTION**

**UNLAWFUL DISCRIMINATION IN PAY BASED ON SEX IN VIOLATION OF**

**CALIFORNIA LABOR CODE § 1197.5**

**(Plaintiff Against BROSAMER and DOES 11-20)**

9      32.    The allegations contained in paragraphs 1 through 31 are incorporated
10 herein by this reference and re-alleged as though fully set forth herein.

11     33.    California Labor Code section 1197.5 provides in pertinent part as
12 follows:

> No employer shall pay any individual in the employer's employ
> at wage rates less than the rates paid to employees of the
> opposite sex in the same establishment for equal work on jobs
> the performance of which requires equal skill, effort, and
> responsibility, and which are performed under similar working
> conditions.

17     34.    Almost immediately following commencement of the Coachella Project,
18 SHOEMAKER was promoted to the position of "foreman." As a foreman, SHOEMAKER was
19 paid a daily premium rate of $25.00 in addition to her hourly wages. However, male foremen at
20 BROSAMER who performed equal work on jobs that required the same amount of skill, effort,
21 and responsibility and were performed under similar working conditions were paid a daily
22 premium rate of $50.00 in addition to their hourly wages earned. Moreover, on or about June 4,
23 2006, the male foremen were given a raise in their daily premium pay from the amount of $50.00
24 to $65.00. However, SHOEMAKER's daily premium pay as a foreman was not increased and
25 remained at $25.00 throughout the duration of her time as a foreman with BROSAMER.
26 SHOEMAKER is informed and believes, and thereon alleges, that she received a lower daily
27 premium pay as a foreman because she was female.
28 ///

10

*FIRST AMENDED COMPLAINT FOR DAMAGES*

35.    Plaintiff is informed and believes, and thereon alleges, that BROSAMER failed and refused to pay her the amount of the difference in the pay she received as a foreman and the pay her male co-workers received as foremen ("Pay Variance") and, in so doing, violated California Labor Code § 1197.5.

36.    Plaintiff is further informed and believes, and thereon alleges, that BROSAMER's violation of California Labor Code § 1197.5 was willful in that, among other things, Plaintiff brought the Pay Variance to the attention of BROSAMER management while she was still employed at BROSAMER.    Nevertheless, BROSAMER continued to pay SHOEMAKER a lower daily premium as a foreman than that paid to its male foremen.

37.    Pursuant to California Labor Code section 1197.5, SHOEMAKER is entitled to the amount of the Pay Variance, plus interest thereon, plus "liquidated damages" in an amount equal to the Pay Variance.

38.    California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.    California Labor Code section 1197.5, subsection (g), provides that reasonable attorneys' fees and costs are recoverable herein by the prevailing party, within the discretion of the court.    Plaintiff has retained attorneys for the prosecution of this action.    As a result, Plaintiff is entitled to her reasonable attorneys' fees and costs herein incurred.

## THIRD CAUSE OF ACTION

## UNLAWFUL DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940, *ET SEQ.*

### (Plaintiff Against BROSAMER and DOES 21-30)

39.    The allegations contained in paragraphs 1 through 38 are incorporated herein by this reference and re-alleged as though fully set forth herein.

40.    California Government Code section 12940 provides in pertinent part as follows:

It shall be an unlawful employment practice . . . (a) For an employer, because of . . . sex . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

11

***FIRST AMENDED COMPLAINT FOR DAMAGES***

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

41. Plaintiff was, at all times relevant herein, an "employee" as defined within California Government Code section 12926 and was, therefore, a member of the group sought to be protected by the provisions of California Government Code section 12940, *et seq.*

42. BROSAMER is and was, at all times relevant herein, an "employer" within the meaning of California Government Code section 12940(j)(4)(A) and, as such, was and is barred from discriminating against employees on the bases prohibited in said section.

43. During the time SHOEMAKER was employed by BROSAMER, she was subjected to unlawful discrimination based on sex. Specifically, she was discriminated against in compensation, as well as in the terms, conditions, and privileges of employment at BROSAMER because she was female. Such discrimination took a variety of forms, including, but not limited to, the following:

a. As a female, SHOEMAKER was denied equal pay and was paid a lower daily premium rate of pay as a foreman than her male co-workers in equivalent positions were paid, as more specifically alleged above;

b. As a female, SHOEMAKER was denied a raise in her daily premium rate of pay as a foreman when her male co-workers in equivalent positions were given such a raise;

c. In or about August of 2006, SHOEMAKER was demoted from her position as a foreman to that of a laborer. SHOEMAKER is informed and believes, and thereon alleges, that she was demoted, at least in part, because she was female; and

d. In or about September of 2006, SHOEMAKER was constructively discharged from her employment at BROSAMER, as more specifically detailed below.

44. The aforementioned behavior, actions, omissions, conduct, comments, discharge, and discrimination committed by BROSAMER and its agents, representatives, and employees against Plaintiff on the basis of her sex deprived Plaintiff of the benefit of a discrimination-free work environment, all in violation of California Government Code section 12940, *et seq.*

///

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

12

*FIRST AMENDED COMPLAINT FOR DAMAGES*

45.    As a direct and proximate result of Defendants' unlawful conduct and employment practices, Plaintiff suffered interference with her employment responsibilities, the indignity of harassment, the invasion of her rights to be free from harassment, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or have been, manifested as emotional distress and mental suffering, as well as physical manifestations of her emotional distress.

46.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, severe anxiety, painful embarrassment among friends, family, and co-workers, disruption of her personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

47.    In performing the acts and/or failing to perform the acts alleged hereinabove, BROSAMER, and its agents, representatives, and employees, acted with malice toward Plaintiff and/or a reckless indifference to her statutorily protected rights and in conscious disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of California.    As such, Defendants are guilty of oppression and malice for which Plaintiff is entitled to punitive damages, in an amount to be proven at trial.

48.    California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.    California Government Code section 12965, subsection (b), provides that reasonable attorneys' fees and costs are recoverable herein by the prevailing party, within the discretion of the court.    Plaintiff has retained attorneys for the prosecution of this action.    As a result, Plaintiff is entitled to her reasonable attorneys' fees and costs herein incurred.

## FOURTH CAUSE OF ACTION

## UNLAWFUL RETALIATION IN EMPLOYMENT IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, *ET SEQ.*

### (Plaintiff Against All Defendants and DOES 31-40)

49.    The allegations contained in paragraphs 1 through 48 are incorporated herein by this reference and re-alleged as though fully set forth herein.

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

13

*FIRST AMENDED* COMPLAINT FOR DAMAGES

50.    California Government Code section 12940 provides in pertinent part as follows:

It shall be an unlawful employment practice . . . (h) for any employer . . . or person . . . to harass . . . to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden under this part, or because the person has filed a complaint, testified or assisted in any proceeding under this part. (i)  For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this part, or attempt to do so.

51.    Plaintiff was, at all times relevant to this Complaint, an employee as defined by California Government Code section 12940, which prohibits any employer or person from harassing, discharging, expelling, or otherwise discriminating (i.e., "retaliating") against anyone because he or she opposes the practices made illegal by California Government Code section 12940, et *seq.* and was, therefore, a member of the group sought to be protected by the statute.

52.    Defendants were, at all times herein, employers and/or persons within the meaning of California Government Code section 12940(j)(4)(A) and, as such, are barred from discriminating in employment decisions, harassing, or discharging an employee because that employee opposed practices that are made illegal under FEHA.

53.    During the course of the Coachella Project, SHOEMAKER repeatedly complained to higher management at BROSAMER, including, but not limited to, CULP, OTHEIN, POLEGARD, and ESCOBEDO, of the aforementioned conduct, including, but not limited to, the harassment and discrimination to which she was subjected based on her sex, which conduct was unlawful in violation of FEHA and which SHOEMAKER reasonably believed to be unlawful.

54.    Plaintiff is informed and believes, and thereafter alleges, that CULP was eventually suspended from work as a result of his inappropriate, harassing, and/or discriminatory conduct at work.  However, following said suspension, CULP returned to the Coachella Project and remained in the position of paving superintendent, where he continued to have direct supervisory control over SHOEMAKER and other employees.  Following his return, CULP

Law Offices of Sofian
Solomon Dawood
7170 N Financial Drive,
Suite 101
Fresno, CA  93720

14

*FIRST AMENDED* COMPLAINT FOR DAMAGES

1  continued to engage in the same type of harassing conduct as before, including, but not limited
2  to, throwing rocks at an employee in the crotch.  In addition, following CULP's return from said
3  suspension, he followed and/or chased SHOEMAKER in her truck along the canal at the
4  Coachella Project jobsite, as more specifically described above.  Also following CULP's return
5  from said suspension, he attempted to alienate SHOEMAKER from the other members of the
6  crew by instructing them not to communicate with her.  SHOEMAKER is informed and believes,
7  and thereon alleges, that said actions of CULP were retaliatory in nature and that said harassment
8  and/or discrimination against her increased because she had complained about and opposed
9  CULP's unlawful conduct.

10         55.      Approximately  six  (6)  weeks  following  CULP's  return  from  his
11 suspension, the Coachella Poject ended.  Following completion of the Coachella Project, CULP
12 went to work as the paving superintendent of a project in San Jose, California (the "San Jose
13 Project").

14         56.      Based on Plaintiff's past experience in working for BROSAMER, Plaintiff
15 is informed and believes, and thereon alleges, that the ordinary practice of BROSAMER upon
16 completion of a project would be to transfer most, if not all, of the crew who worked on the
17 completed project to the project where the paving superintendent of the completed project was
18 being transferred. However, SHOEMAKER was not transferred to work on the San Jose Project.
19 Plaintiff is informed and believes, and thereon alleges, that no member of the crew who worked
20 on  the  Coachella  Project  was  transferred  to  work  on  the  San  Jose  Project.   Although
21 BROSAMER proffered that a crew was already in place to work on the San Jose Project,
22 Plaintiff is informed and believes, and thereon alleges, that this proffered reason was merely a
23 pretext and that the real reason for which SHOEMAKER was not transferred to work on the San
24 Jose Project was because SHOEMAKER had complained about and opposed the unlawful
25 practices set forth herein, which SHOEMAKER reasonably believed to be, and which were, in
26 violation of FEHA.  With respect to the entire crew from the Coachella Project, Plaintiff is
27 informed and believes, and thereon alleges, that said crew was not transferred to work on the San
28 Jose Project because the members had knowledge of the unlawful conduct that had taken place

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

15

1    on the Coachella Project jobsite with respect to SHOEMAKER and other employees, as alleged

2    herein.

3        57.        As a result of not being transferred to work on the San Jose Project,

4    SHOEMAKER was assigned by BROSAMER to the task of working in the yard. At this time,

5    SHOEMAKER was demoted from her position as a foreman. SHOEMAKER is informed and

6    believes, and thereon alleges, that said demotion was, at least in part, due to the fact that

7    SHOEMAKER had complained about, and opposed, conduct that she reasonably believed to be

8    unlawful under FEHA. While assigned to the task of working in the yard, SHOEMAKER

9    earned a lower wage than she had earned during the course of the Coachella Project. She was

10   also scheduled to work fewer hours, and the task of working in the yard was far less desirable

11   than working on a paving project, such as the Coachella Project or the San Jose Project. As a

12   result of these factors, SHOEMAKER was forced to quit her employment with BROSAMER and

13   seek employment elsewhere, which constituted a constructive discharge.

14       58.        The aforesaid acts, conduct, behavior, discharge and discrimination

15   committed by Defendants and their agents, representatives, and employees, against Plaintiff on

16   the basis of Plaintiff's opposition to and complaints about practices made illegal by California

17   Government Code section 12940, et seq., which Plaintiff reasonably believed to be illegal, such

18   as, but not limited to, the unlawful harassment and/or discrimination of Plaintiff and/or other

19   employees of BROSAMER, including, but not limited to, Plaintiff's demotion and constructive

20   discharge of employment, as well as increased harassment and/or other inappropriate and

21   outrageous conduct directed toward Plaintiff, created a work environment that was intimidating,

22   hostile, oppressive, abusive, and offensive to Plaintiff, and had the effect of altering the

23   conditions of Plaintiff 's employment with the Company, thereby depriving Plaintiff of the

24   benefit of a harassment-free, discrimination-free, and retaliation-free work environment, all in

25   violation of California Government Code section 12940, et seq.

26   ///

27   ///

28   ///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

59.     Defendants further violated Plaintiff's rights in that they, amongst other acts and/ or omissions:

a.     Failed to provide Plaintiff with employment conditions and a relationship where she could safely work, free from physically threatening, visual, and/or verbal harassment and/or discrimination;

b.     Failed to respond adequately or effectively to Plaintiff's complaints of reasonably perceived sexual harassment and/or discrimination;

c.     Failed to timely, thoroughly, and/or objectively investigate Plaintiff's complaints of reasonably perceived sexual harassment and/or discrimination;

d.     Retaliated against Plaintiff for her complaints of and/or opposition to reasonably perceived unlawful harassment and/or discrimination in the workplace;

e.     Demoted, constructively discharged, and discriminated against Plaintiff for her complaints of and opposition to reasonably perceived unlawful harassment and/or discrimination in the workplace;

f.     Failed to take appropriate action when they knew, or should have known, of the unlawful harassment of, retaliation against, discharge, and/or discrimination against Plaintiff;

g.     Failed to take appropriate and/or effective remedial action against those who perpetrated, acquiesced and ratified, or ignored the unlawful harassment and/or discrimination of Plaintiff and retaliated, discharged, and/or discriminated against Plaintiff;

h.     Failed to adopt and/or disseminate, adhere to, or enforce an effective anti-sexual harassment and/or discrimination policy with respect to management, supervisors, staff, and employees; and

i.     Aided and abetted each other in committing these wrongful acts.

60.     As a further direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered interference with her employment responsibilities, the indignity of discrimination, the invasion of her right to be free from discrimination, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

17

*FIRST AMENDED* COMPLAINT FOR DAMAGES

1  have been, manifested as emotional distress and mental suffering and physical manifestations of

2  his emotional distress.

3      61.      As a further direct and proximate result of said unlawful employment

4  practices, Plaintiff has suffered mental anguish, outrage, severe anxiety about her future and her

5  ability to support herself and her family, the potential of harm to her employability and earning

6  capacity, painful embarrassment among friends, family and co-workers, disruption of her

7  personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

8      62.      In doing the acts and/or failing to do the acts alleged hereinabove, the

9  Defendants and each of them, engaged in discriminatory acts and conduct with malice toward

10  Plaintiff and/or a reckless indifference to her statutorily protected rights and in a conscious

11  disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of

12  California.  As such, Defendants are guilty of oppression and malice for which Plaintiff is

13  entitled to punitive damages, in an amount to be proven at trial.

14      63.      California Code of Civil Procedure section 1021 provides that attorneys'

15  fees are recoverable in an action for which they are specifically provided by statute.  Government

16  Code section 12965(b) provides that reasonable attorneys' fees and costs are recoverable herein

17  by the prevailing party, within the discretion of the court.  Plaintiff has retained attorneys for the

18  prosecution of this action.  As a result, Plaintiff is entitled to her reasonable attorneys' fees and

19  costs herein incurred.

20  ## FIFTH CAUSE OF ACTION

21  ## WRONGFUL TERMINATION AND RETALIATION IN VIOLATION OF PUBLIC

22  ## POLICY

23  ### (Plaintiff Against All Defendants and DOES 41-50)

24      64.      The allegations contained in paragraphs 1 through 63 are incorporated

25  herein by this reference and re-alleged as though fully set forth herein.

26      65.      At all times mentioned herein, California Government Code section 12940

27  was in full force and effect and was binding on Defendants.  Said section requires Defendants to

28  refrain from retaliating against any employee, such as by discharging such employee and/or

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

18

*FIRST AMENDED COMPLAINT FOR DAMAGES*

1  otherwise discriminating against such employee, on the basis of his or her opposition to the

2  practices forbidden, or reasonably perceived as forbidden, by California Government Code

3  section 12940, et *seq.* or participation in a complaint of such unlawful practices. In addition, at

4  all times relevant hereto, California Labor Code section 1102.5 (the California "Whistleblower

5  Statute") was and is in full force and effect. Said statute prohibits employers from retaliating

6  against employees for reporting information that discloses what the employee reasonably

7  believes to be a violation of, or non-compliance with, a state and/or federal statute or regulation

8  (i.e., a violation of FEHA or parallel federal laws).

9       66.    Plaintiff believes, and thereon alleges, that her opposition to, reports of,

10  and complaints about practices made unlawful under California Government Code section

11  12940, et *seq.* and California Labor Code section 1197.5, which Plaintiff reasonably believed to

12  be unlawful thereunder, were factors in Defendants' hostility towards and retaliation against

13  Plaintiff, including Defendants' demotion of Plaintiff and failure to transfer and/or assign

14  Plaintiff to the San Jose Project and to transfer her to work in the yard instead, which ultimately

15  culminated in Plaintiff's constructive discharge of employment. Such retaliation is in violation

16  of California Government Code section 12940, et *seq.*, as well as the whistleblower protections

17  provided in, among other California statutes, California Labor Code section 1102, et *seq.*, and

18  has resulted in damages and harm to Plaintiff as alleged herein.

19       67.    As a proximate result of Defendants' willful, knowing, and intentional

20  discrimination and retaliation against Plaintiff, as alleged herein, Plaintiff has sustained, and

21  continues to sustain, substantial losses in earnings and/or other employment benefits in an

22  amount according to proof at trial.

23       68.    As a further proximate result of Defendants' willful, knowing, and

24  intentional discrimination and retaliation against Plaintiff, as alleged herein, Plaintiff has

25  suffered, and will continue to suffer, humiliation, emotional distress, mental and physical pain

26  and anguish, and the manifestations thereof, all to her damage in an amount according to proof at

27  trial.

28  ///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

19
*FIRST AMENDED COMPLAINT FOR DAMAGES*

69.    Plaintiff has incurred, and will continue to incur, legal expenses and attorneys fees in an amount according to proof at trial.

70.    In doing the things herein alleged, Defendants acted oppressively, maliciously, intentionally, despicably, and in conscious disregard of Plaintiff's rights. Consequently, Plaintiff is entitled to recovery of exemplary or punitive damages in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

### ASSAULT

### (Plaintiff Against CULP and DOES 51-60)

71.    The allegations contained in paragraphs 1 through 70 are incorporated herein by this reference and re-alleged as though fully set forth herein.

72.    While working on the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, hugged SHOEMAKER from behind and forcibly simulated anal intercourse with her.  Also while working on the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, grabbed SHOEMAKER's breasts.  In addition, during the course of the Coachella Project, CULP would follow and/or chase SHOEMAKER in his truck while she was driving along the canal in her truck at nighttime.  CULP did this in such a manner as to intimidate SHOEMAKER and cause her to be afraid.  CULP would occasionally pull his truck over behind SHOEMAKER's truck at nighttime and, on one occasion, even ran his truck into hers.  As a result of this conduct, SHOEMAKER became afraid to drive her truck along the canal roads at nighttime.  In addition, CULP lassoed SHOEMAKER with a rope at the Coachella Project jobsite.

73.    In doing the acts as alleged herein, CULP intended to cause or to place SHOEMAKER in apprehension of a harmful and/or offensive contact with her person.

74.    As a proximate result of CULP's acts as alleged herein, SHOEMAKER was, in fact, placed in great apprehension of a harmful and/or offensive contact with her person.

///

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

20

*FIRST AMENDED COMPLAINT FOR DAMAGES*

75.    As a proximate result of the acts of CULP as alleged herein, SHOEMAKER was injured in her health, strength, and activity, sustaining injuries to her nervous system and person, all of which have caused, and continue to cause, SHOEMAKER great mental, physical, and nervous pain and suffering. As a result of these injuries, Plaintiff has suffered general damages in an amount according to proof at trial.

76.    The aforementioned conduct of CULP was willful and malicious and was intended to oppress and cause injury to SHOEMAKER. As such, Plaintiff is entitled to an award of exemplary or punitive damages in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

### BATTERY

### (Plaintiff Against CULP and DOES 61-70)

77.    The allegations contained in paragraphs 1 through 76 are incorporated herein by this reference and re-alleged as though fully set forth herein.

78.    Immediately following the above assault committed by CULP against SHOEMAKER, CULP made contact with SHOEMAKER's person, including her buttocks and breasts. Moreover, immediately following the above assaults committed by CULP against SHOEMAKER, CULP made contact with SHOEMAKER's person with the rope he used to lasso her, as well as when he ran his truck into SHOEMAKER's truck.

79.    In doing the things alleged herein, CULP acted with the intent to make a contact with SHOEMAKER's person.

80.    At no time did SHOEMAKER consent to any of CULP's contact with SHOEMAKER's person, as alleged herein. At all times herein mentioned, SHOEMAKER in fact found the contact CULP made with her person to be offensive to her person and dignity.

81.    As a proximate result of the acts of CULP as alleged herein, SHOEMAKER was injured in her health, strength, and activity, sustaining injuries to her nervous system and person, all of which have caused, and continue to cause, SHOEMAKER great mental, physical, and nervous pain and suffering. As a result of these injuries, Plaintiff has suffered general damages in an amount according to proof at trial.

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

21

82.     The aforementioned conduct of CULP was willful and malicious and was intended to oppress and cause injury to SHOEMAKER. As such, Plaintiff is entitled to an award of exemplary or punitive damages in an amount according to proof at trial.

## EIGHTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and DOES 71-80)

83.     The allegations contained in paragraphs 1 through 82 are incorporated herein by this reference and re-alleged as though fully set forth herein.

84.     In doing the things alleged herein, Defendants engaged in outrageous and unprivileged conduct with reckless disregard of the probability of causing Plaintiff emotional distress.

85.     Such outrageous and unprivileged conduct on the part of Defendants caused Plaintiff to suffer severe emotional distress. As a proximate result of Defendants' intentional infliction of emotional distress on Plaintiff, Plaintiff has suffered damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

86.     In doing the things alleged herein, Defendants acted oppressively, maliciously, intentionally, and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to recover exemplary or punitive damages in an amount according to proof at trial.

## NINTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and DOES 81-90)

87.     The allegations contained in paragraphs 1 through 86 are incorporated herein by this reference and re-alleged as though fully set forth herein.

88.     In doing the things alleged herein, Defendants breached the duty of care that they owed to Plaintiff to act in a reasonable manner and provide a workplace free of unlawful harassment, discrimination, and retaliation.

///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

FIRST AMENDED COMPLAINT FOR DAMAGES

1        89.      As a proximate result of Defendants' careless breach of such duty of care

2  owed to Plaintiff, Plaintiff has suffered consequential damages in an amount according to proof

3  for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished

4  employability, and emotional distress damages.

5        90.      In doing the things alleged herein, Defendants acted oppressively and

6  maliciously with intentional and conscious disregard of Plaintiff's rights.  Accordingly, Plaintiff

7  is entitled to recover exemplary or punitive damages in an amount according to proof.

8                          **TENTH CAUSE OF ACTION**

9                         **NEGLIGENT HIRING OF CULP**

10        **(Plaintiff Against Defendant BROSAMER and DOES 91-100)**

11        91.      The allegations contained in paragraphs 1 through 90 are incorporated

12  herein by this reference and re-alleged as though fully set forth herein.

13        92.      Defendant BROSAMER owed a duty of care to its employees, including

14  Plaintiff, to take reasonable measures to ensure that the supervisors it hired and required its

15  employees to work under were adequately screened so that its employees were not exposed to

16  abuse.

17        93.      Defendant BROSAMER breached said duty of care when it hired and

18  placed Defendant CULP into a supervisory position when BROSAMER knew, or should have

19  known by an exercise of reasonable diligence, that CULP was not suited to serve as a supervisor.

20        94.      As a proximate result of Defendant BROSAMER's breach of its duty of

21  care owed to its employees, including Plaintiff, Plaintiff was subjected to the unlawful harassing,

22  discriminatory, retaliatory, and/or tortuous conduct of CULP as alleged herein..  As a proximate

23  result of BROSAMER'S negligent hiring of CULP, Plaintiff has suffered damages in an amount

24  according to proof for lost past and future wages, out-of-pocket expenses, lost employment

25  benefits, diminished employability, and emotional distress damages.

26  ///

27  ///

28  ///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED* **COMPLAINT FOR DAMAGES**

## ELEVENTH CAUSE OF ACTION

### NEGLIGENT RETENTION OF CULP

#### (Plaintiff Against Defendant BROSAMER and DOES 101-110)

95.     The allegations contained in paragraphs 1 through 94 are incorporated herein by this reference and re-alleged as though fully set forth herein.

96.     Defendant BROSAMER owed a duty of care to its employees, including Plaintiff, to take reasonable measures to ensure that supervisors were not being retained within the Company if said supervisors were unfit as such.  BROSAMER owed its employees, including Plaintiff, this duty so that such employees were not exposed to abuse and the conduct alleged herein.

97.     Defendant BROSAMER breached said duty of care to its employees, including Plaintiff, by retaining CULP when BROSAMER knew, or should have known, by an exercise of reasonable diligence, that CULP was not suited to be retained as a supervisor.  In addition to CULP'S conduct being capable of observance and evaluation by BROSAMER, including its owners and/or upper management, BROSAMER was specifically informed by Plaintiff of the unlawful, harassing, discriminatory, retaliatory, and/or tortious conduct of CULP toward Plaintiff and/or other employees of BROSAMER.

98.     As a result of BROSAMER's breach of its duty of care owed to its employees, including Plaintiff, Plaintiff was subjected to the unlawful harassing, discriminatory, retaliatory, and/or tortious conduct of CULP, as alleged herein.  As a result of Defendant BROSAMER'S negligent retention of CULP, Plaintiff has suffered damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

## TWELFTH CAUSE OF ACTION

### RECOVERY OF UNPAID WAGES, INCLUDING OVERTIME COMPENSATION

#### (Plaintiff Against Defendant BROSAMER and DOES 111-120)

99.     The allegations contained in paragraphs 1 through 98 are incorporated herein by this reference and re-alleged as though fully set forth herein.

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED* COMPLAINT FOR DAMAGES

100.    During the entire time Plaintiff worked on the Coachella Project, as set forth more specifically above, she reported to work no less than one hour prior to the start time of each of her shifts and performed work from said time up to the start of each shift ("Pre-Shift Hours"). Plaintiff is informed and believes, and thereon alleges, that CULP and/or other supervisors at BROSAMER were aware that Plaintiff would begin work no less than one (1) hour prior to the start of her shift time and that they permitted Plaintiff to do so. On average, Plaintiff worked at least five (5) shifts per work throughout the duration of the Coachella Project, which resulted in Plaintiff having worked a total of approximately 5 Pre-Shift Hours per week throughout said period of time. Plaintiff was not paid wages for any of these Pre-Shift Hours worked. Approximately all of the Pre-Shift Hours were worked by Plaintiff in addition to her eight (8)-hour shift per scheduled work day, thereby entitling Plaintiff to overtime compensation for each of the Pre-Shift Hours. Plaintiff's regular rate of pay, when including her daily premium pay as set forth above, was at least $28.13 per hour during this period of time. Accordingly, Plaintiff's applicable overtime rate of pay, when including her daily premium pay as set forth above and calculating said overtime rate of pay as one and one-half (1½) times her regular rate of pay, was at least $42.20 per hour during this period of time.

101.    Throughout the duration of the Coachella Project, Plaintiff was not paid for the Pre-Shift Hours worked at the time of the applicable pay periods for which such hours were worked. In addition, at the time of Plaintiff's constructive discharge, as alleged above, she was not paid for any of the Pre-Shift Hours worked.

102.    Plaintiff did not accrue additional vacation time, retirement pay, and/or paid time off based on the Pre-Shift Hours she worked, to which she was entitled. Throughout the duration of the Coachella Project, Plaintiff accrued vacation pay, retirement pay, and/or paid time off at a rate later to be determined.

103.    BROSAMER's failure to pay Plaintiff the amount due for the Pre-Shift Hours worked, in addition to accrued vacation time based on the Pre-Shift Hours, violated California Labor Code section 201.

///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED* COMPLAINT FOR DAMAGES

104.    There is now due and owing to Plaintiff unpaid wages, including overtime compensation, in the total amount of at least $42.20 for each Pre-Shift Hour worked. BROSAMER has failed to pay said amounts that are due and owing, and continues to fail to pay said amounts, to Plaintiff.

105.    California Labor Code section 1198 makes it unlawful for an employer to employ its employees for longer than the hours set forth in the Industrial Welfare Commission orders ("IWC Orders") or under conditions prohibited by such orders. Plaintiff is informed and believes, and thereon alleges, that at all times during and throughout the Coachella Project, the applicable IWC Order(s) required BROSAMER to pay Plaintiff at a rate equal to one and one-half (1½) times her regular rate of pay for all hours worked in excess of eight (8), but less than 12, hours per workday.

106.    BROSAMER's failure to pay Plaintiff at the rate of one and one-half (1½) times her regular rate of pay for each of the Pre-Shift Hours worked violated California Labor Code section 1198.

107.    Under 29 U.S.C. section 216, subsection (b), Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime compensation;

108.    Pursuant to California Labor Code sections 218.5 and 1194, subsection (a), Plaintiff is entitled to recover her reasonable attorneys' fees and costs incurred in this action, which Plaintiff requests this Court to so award.

109.    Pursuant to California Labor Code sections 218.6 and 1194, subsection (a), Plaintiff further requests that the Court award her interest on all due and unpaid wages and overtime compensation, at the legal rate set forth in California Civil Code section 3289, subsection (b), accruing from and after the date the wages and overtime compensation were due and payable.

///

///

///

///

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

*FIRST AMENDED* COMPLAINT FOR DAMAGES

1

## THIRTEENTH CAUSE OF ACTION

2

### RECOVERY OF WAITING TIME PENALTIES

3

#### (Plaintiff Against Defendant BROSAMER and DOES 121-130)

4        110.        The allegations contained in paragraphs 1 through 109 are incorporated

5   herein by this reference and re-alleged as though fully set forth herein.

6        111.        BROSAMER's failure to pay wages, including overtime compensation, to

7   Plaintiff, as alleged above, was willful in that BROSAMER intentionally failed to pay Plaintiff

8   the wages and overtime compensation owed to her, thereby entitling Plaintiff to an award of

9   penalties under California Labor Code section 203, which provides that an employee's wages

10  shall continue as a penalty until paid or for a period of up to 30 days from the time they were

11  due, whichever period is shorter.

12        112.        Defendant has continued to fail to pay Plaintiff the wages, including

13  overtime compensation, owed to her.  Such failure has continued over a period of time well in

14  excess of 30 days from the date such wages were due, thereby entitling Plaintiff to an award of

15  penalties in an amount equal to her daily rate of pay multiplied by 30 days, the exact amount of

16  which is subject to proof at trial.

17                                  ## REQUEST FOR JURY TRIAL

18        WHEREFORE, the Plaintiff prays as follows:

19        1.        For compensatory damages, including but not limited to, past and future

20  lost wages, lost employee benefits (with interest on said amounts), diminished employability,

21  other economic injury, and emotional distress damages, all in an amount according to proof at

22  trial;

23        2.        For liquidated damages in accordance with California Labor Code section

24  1197.5, subsection (b), in an amount according to proof at trial;

25        3.        For unpaid wages and overtime compensation in an amount according to

26  proof at trial;

Law Offices of Sofian
Solomon Dawood
7170 N. Financial Drive,
Suite 101
Fresno, CA 93720

27  ///

28  ///

27

*FIRST AMENDED* COMPLAINT FOR DAMAGES

4.    For interest on unpaid wages and overtime compensation in accordance with California Labor Code sections 218.6 and 1194, subsection (a), in an amount according to proof at trial;

5.    For liquidated damages in an amount equal to the unpaid overtime compensation in accordance with 29 U.S.C. section 216, subsection (b), in an amount according to proof at trial;

6.    For waiting time penalties under California Labor Code section 203 in an amount according to proof at trial;

7.    For special damages, according to proof at trial;

8.    For exemplary and punitive damages, according to proof;

9.    For pre-judgment interest under Civil Code section 3288, as well as any and all other applicable statutory authority, in an amount according to proof at trial;

10.    For costs of suit, including reasonable attorneys' fees, according to proof; and

11.    For such other and further relief as the Court may deem just and proper.

Dated: April 21, 2008

LAW OFFICES OF SOFIAN SOLOMON DAWOOD

By _SOFIAN SOLOMON DAWOOD_

SOFIAN DAWOOD
Attorney for Plaintiff
CHARLENE SHOEMAKER

Law Offices of Sofian
Solomon Dawood
7170 N. FINANCIAL DRIVE,
SUITE 101
FRESNO, CA 93720

28

*FIRST AMENDED* COMPLAINT FOR DAMAGES

**<u>SHOEMAKER vs. BROSAMER</u>**

# EXHIBIT "A"

# *·-* * EMPLOYMENT * *·-*

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

II.   ...ed with EEOC, this form may be affected by the Privacy Act of 1974.

DFEH #   E200607 M-0961-00-rse

EEOC #   37AA708167

### CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

COMPLAINANT'S NAME (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

ADDRESS
2875 F Northtowne Lane #140

TELEPHONE NUMBER (INCLUDE AREA CODE)
(530) 200-3168

CITY          STATE          ZIP
Reno, NV 89512

COUNTY          COUNTY CODE
Washoe          NV

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
R & L Brosamer, Inc.

ADDRESS
1777 Oakland Blvd. Ste 300

TELEPHONE NUMBER (INCLUDE AREA CODE)
(925) 837-5600

CITY          STATE          ZIP
Walnut Creek, CA 94596

COUNTY          COUNTY CODE
Contra Costa          013

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))
☐ RACE   ☐ SEX   ☐ DISABILITY   ☐ RELIGION   ☐ NATIONAL ORIGIN/ANCESTRY   ☐ DENIAL OF FAMILY/MEDICAL LEAVE   ☐ SEXUAL ORIENTATION
☐ COLOR   ☐ AGE   ☐ MARITAL STATUS   ☐ MEDICAL CONDITION (cancer or genetic characteristics)   ☒ OTHER (SPECIFY) Retaliation for Protesting

NO. OF EMPLOYEES/MEMBERS
500

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year) September 29, 2006

RESPONDENT CODE
16

THE PARTICULARS ARE:

I.    From approximately January 2006 to May 2006, I was denied equal pay of $50.00 per day of subsistence pay as a Labor Foreman. From approximately June 4, 2006 to August 2006, I was denied subsistence pay of $65.00 a day as a Labor Foreman. From approximately January 2006 to August 2006, I sexually harassed during my employment as a Labor Foreman. On or about August 2006, I was demoted from Labor Foreman to Laborer. On or about September 30, 2006, I was constructively discharged (forced to quit) and at the time of my constructive discharge I was earning 23.39 an hour as a Laborer.

II.   Guy Culp, Superintendent did not give me a reason for denial of increase for my subsistence pay, he just told me that I was a stupid woman. On or about August 2006, Ken Gilmore, Consultant stated that I was going back to be a Laborer, no reason was given.

III.  I believe that I was denied equal pay, sexually harassed, and constructively discharged on the basis of my sex (female). I believe that I was demoted and constructively discharged (forced to quit) in retaliation for complaining about the sexual harassment.

A.   On or about January 1, 2006, I was promoted to Labor Foreman. While all male Labor Foremen were paid $50.00 a day subsistence, I was only paid $25.00 a day. When I asked Guy Culp, Superintendent, why I was not getting the same daily rate, he did not give me a reason, he just stated that I was a stupid woman.

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200607 M-0961-00-rse |
|---|---|---|
| | EEOC # | 37AA708167 |

CC    AINANT'S NAME(S) (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

RESPONDENT'S NAME
R & L Brosamer, Inc.

THE PARTICULARS ARE:

B. On May 31, 2006, Bob Brosamer, Owner, sent out a memorandum stating that all Labor Foreman's daily subsistence of $50.00 was increasing to $65.00 effective June 4, 2006. Guy Culp's reason for the denial is stated in II above.

C. From approximately January 2006 to August 2006, Guy Culp, Superintendent, subjected me to physical and verbal sexual harassment. The harassment occurred on a weekly basis and created a hostile and threatening work environment.

D. From January 2006 to June 2006, I complained to the following management staff about the sexual harassment; Jose Escobedo, EEO; Shawn Othein, Project/EEO Manager, and John Polegard, Southern Area Manager. Even though they talked to Guy Culp, Superintendent, the harassment continued.

E. On or about August 2006 Ken Gilmore, Consultant stated that I was going back to being a Laborer and no reason was given. I believe that I was demoted in retaliation for complaining about the sexual harassment as prior to this I was not informed of any performance problems.

F. On September 2006 I was constructively discharged (forced to quit) because the hostile work environment was affecting my well being.

Page 2 of 2

RECEIVED

JAN 22 2007

Department of Fair
Employment and Housing
Oakland District Office

---

I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge cept as to matters stated on my information and belief, and as to those matters I believe it to be true.

ated    1-16-07

Fresno
City

COMPLAINANT'S SIGNATURE

EH-300-01 (12/99)        F:JRR:sm
PARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: January 22, 2007

STATE OF CALIFORNIA

## *-* * EMPLOYMENT * *-*

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 M-0961-01-rs

~~EEOC #~~ N/A

If ~~filed~~ with EEOC, this form may be affected by the Privacy Act of 1974.

### CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ~~and EEOC~~

COMPLAINANT'S NAME (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

ADDRESS
2875 F Northtowne Lane #140

| CITY | STATE | ZIP | COUNTY | COUNTY CODE | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|------|-------|-----|--------|-------------|--------------------------------------|
| Reno, NV 89512 | | | Washoe | NV | (530) 200-3168 |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
Sterling Culp, Guy, As An Individual

ADDRESS
1777 Oakland Blvd. Ste 300

| CITY | STATE | ZIP | COUNTY | COUNTY CODE | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|------|-------|-----|--------|-------------|--------------------------------------|
| Walnut Creek, CA 94596 | | | Contra Costa | 013 | (925) 837-5600 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))

☐ RACE   ☐ SEX   ☐ DISABILITY   ☐ RELIGION   ☐ NATIONAL ORIGIN/ANCESTRY   ☐ DENIAL OF FAMILY/MEDICAL LEAVE   ☐ SEXUAL ORIENTATION
☐ COLOR   ☐ AGE   ☐ MARITAL STATUS   ☐ MEDICAL CONDITION (cancer or genetic characteristics)   ☒ OTHER (SPECIFY) Retaliation for Protesting

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|--------------------------|-------------------------------------------------------------------------------|-----------------|
| 500 | September 29, 2006 | 16 |

THE PARTICULARS ARE:

I.    From approximately January 2006 to May 2006, I was denied equal pay of $50.00 per day of subsistence pay as a Labor Foreman. From approximately June 4, 2006 to August 2006, I was denied subsistence pay of $65.00 a day as a Labor Foreman. From approximately January 2006 to August 2006, I sexually harassed during my employment as a Labor Foreman. On or about August 2006, I was demoted from Labor Foreman to Laborer. On or about September 30, 2006, I was constructively discharged (forced to quit) and at the time of my constructive discharge I was earning 23.39 an hour as a Laborer.

II.   Guy Culp, Superintendent did not give me a reason for denial of increase for my subsistence pay, he just told me that I was a stupid woman. On or about August 2006, Ken Gilmore, Consultant stated that I was going back to be a Laborer, no reason was given.

III.  I believe that I was denied equal pay, sexually harassed, and constructively discharged on the basis of my sex (female). I believe that I was demoted and constructively discharged (forced to quit) in retaliation for complaining about the sexual harassment.

A.    On or about January 1, 2006, I was promoted to Labor Foreman. While all male Labor Foremen were paid $50.00 a day subsistence, I was only paid $25.00 a day. When I asked Guy Culp, Superintendent, why I was not getting the same daily rate, he did not give me a reason, he just stated that I was a stupid woman.

## *-* * EMPLOYMENT * *~*

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #    E200607 M-0961-01-rs

~~EEOC #~~    N/A

C    ~~..~~AINANT'S NAME(S) (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

RESPONDENT'S NAME
Sterling Culp, Guy, As An Individual

THE PARTICULARS ARE:

B. On May 31, 2006, Bob Brosamer, Owner, sent out a memorandum stating that all Labor Foreman's daily subsistence of $50.00 was increasing to $65.00 effective June 4, 2006. Guy Culp's reason for the denial is stated in II above.

C. From approximately January 2006 to August 2006, Guy Culp, Superintendent, subjected me to physical and verbal sexual harassment. The harassment occurred on a weekly basis and created a hostile and threatening work environment.

D. From January 2006 to June 2006, I complained to the following management staff about the sexual harassment; Jose Escobedo, EEO; Shawn Othein, Project/EEO Manager, and John Polegard, Southern Area Manager. Even though they talked to Guy Culp, Superintendent, the harassment continued.

E. On or about August 2006 Ken Gilmore, Consultant stated that I was going back to being a Laborer and no reason was given. I believe that I was demoted in retaliation for complaining about the sexual harassment as prior to this I was not informed of any performance problems.

F. On September 2006 I was constructively discharged (forced to quit) because the hostile work environment was affecting my well being.

**RECEIVED**

JAN 2 2 2007

Department of Fair
Employment and Housing
Oakland District Office

Page 2 of 2

~~I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).~~

~~..~~clare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge
~~..~~ept as to matters stated on my information and belief, and as to those matters I believe it to be true.

ed    1-16-07

Fresno
City

COMPLAINANT'S SIGNATURE

H-300-01 (12/99)
~~..~~ARTMENT OF FAIR EMPLOYMENT AND HOUSING

F:JRR:sm

DATE FILED: January 22, 2007

STATE OF CALIFORNIA

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # E200607 M-0961-02-rs |
|---|---|

If c    d with EEOC, this form may be affected by the Privacy Act of 1974.    ~~EEOC #~~    N/A

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ~~and EEOC~~

COMPLAINANT'S NAME (indicate Mr. or Ms.)

SHOEMAKER, Charlene (Ms.)

ADDRESS

2875 F Northtowne Lane #140

| CITY | STATE | ZIP | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|---|
| Reno, NV 89512 | | | (530) 200-3168 |
| | | COUNTY Washoe | COUNTY CODE NV |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME

Polegard, John, As An Individual

ADDRESS

1777 Oakland Blvd. Ste 300

| CITY | STATE | ZIP | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|---|
| Walnut Creek, CA 94596 | | | (925) 837-5600 |
| | | COUNTY Contra Costa | COUNTY CODE 013 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))

☐ RACE    ☐ SEX    ☐ DISABILITY    ☐ RELIGION    ☐ NATIONAL ORIGIN/ANCESTRY    ☐ DENIAL OF FAMILY/MEDICAL LEAVE    ☐ SEXUAL ORIENTATION
☐ COLOR    ☐ AGE    ☐ MARITAL STATUS    ☐ MEDICAL CONDITION (cancer or genetic characteristics)    ☑ OTHER (SPECIFY) Retaliation for Protesting

| NO. OF EMPLOYEES/MEMBERS 500 | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) September 29, 2006 | RESPONDENT CODE 16 |
|---|---|---|

THE PARTICULARS ARE:

From approximately January 2006 to May 2006, I was denied equal pay of $50.00 per day of subsistence pay as a Labor Foreman. From approximately June 4, 2006 to August 2006, I was denied subsistence pay of $65.00 a day as a Labor Foreman. From approximately January 2006 to August 2006, I sexually harassed during my employment as a Labor Foreman. On or about August 2006, I was demoted from Labor Foreman to Laborer. On or about September 30, 2006, I was constructively discharged (forced to quit) and at the time of my constructive discharge I was earning 23.39 an hour as a Laborer.

II.    Guy Culp, Superintendent did not give me a reason for denial of increase for my subsistence pay, he just told me that I was a stupid woman. On or about August 2006, Ken Gilmore, Consultant stated that I was going back to be a Laborer, no reason was given.

III.    I believe that I was denied equal pay, sexually harassed, and constructively discharged on the basis of my sex (female). I believe that I was demoted and constructively discharged (forced to quit) in retaliation for complaining about the sexual harassment.

A.    On or about January 1, 2006, I was promoted to Labor Foreman. While all male Labor Foremen were paid $50.00 a day subsistence, I was only paid $25.00 a day. When I asked Guy Culp, Superintendent, why I was not getting the same daily rate, he did not give me a reason, he just stated that I was a stupid woman.

Page 1 of 2

## * * * EMPLOYMENT * * *

| | |
|---|---|
| **COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT** | DFEH #    E200607 M-0961-02-rs |
| C̲ ___AINANT'S NAME(S) (indicate Mr. or Ms.) | EEOC #    N/A |

C̲ ___AINANT'S NAME(S) (indicate Mr. or Ms.)

SHOEMAKER, Charlene (Ms.)

RESPONDENT'S NAME

Polegard, John, As An Individual

THE PARTICULARS ARE:

B.  On May 31, 2006, Bob Brosamer, Owner, sent out a memorandum stating that all Labor Foreman's daily subsistence of $50.00 was increasing to $65.00 effective June 4, 2006.  Guy Culp's reason for the denial is stated in II above.

C.  From approximately January 2006 to August 2006, Guy Culp, Superintendent, subjected me to physical and verbal sexual harassment.  The harassment occurred on a weekly basis and created a hostile and threatening work environment.

D.  From January 2006 to June 2006, I complained to the following management staff about the sexual harassment; Jose Escobedo, EEO; Shawn Othein, Project/EEO Manager, and John Polegard, Southern Area Manager.  Even though they talked to Guy Culp, Superintendent, the harassment continued.

E.  On or about August 2006 Ken Gilmore, Consultant stated that I was going back to being a Laborer and no reason was given.  I believe that I was demoted in retaliation for complaining about the sexual harassment as prior to this I was not informed of any performance problems.

F.  On September 2006 I was constructively discharged (forced to quit) because the hostile work environment was affecting my well being.

**RECEIVED**

JAN 2 2 2007

Department of Fair
Employment and Housing
Oakland District Office

Page 2 of 2

~~☑ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).~~

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated    1-16-07

at    Fresno

City

COMPLAINANT'S SIGNATURE

FEH-300-01 (12/99)            F:JRR:sm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  **January 22, 2007**

STATE OF CALIFORNIA

---

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 M-0961-03-rs

If filed with EEOC, this form may be affected by the Privacy Act of 1974.

EEOC # N/A

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC**

COMPLAINANT'S NAME (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

ADDRESS
2875 F Northtowne Lane #140

TELEPHONE NUMBER (INCLUDE AREA CODE)
(530) 200-3168

CITY
Reno, NV  STATE  ZIP 89512  COUNTY Washoe  COUNTY CODE NV

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Othein, Shawn, As An Individual

ADDRESS
1777 Oakland Blvd. Ste 300

TELEPHONE NUMBER (INCLUDE AREA CODE)
(925) 837-5600

CITY
Walnut Creek, CA  STATE  ZIP 94596  COUNTY Contra Costa  COUNTY CODE 013

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX[ES])
☐ RACE ☐ SEX ☐ DISABILITY ☐ RELIGION ☐ NATIONAL ORIGIN/ANCESTRY ☐ DENIAL OF FAMILY/MEDICAL LEAVE ☐ SEXUAL ORIENTATION
☐ COLOR ☐ AGE ☐ MARITAL STATUS ☐ MEDICAL CONDITION (cancer or genetic characteristics) ☑ OTHER (SPECIFY) Retaliation for Protesting

NO. OF EMPLOYEES/MEMBERS
500

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) September 29, 2006

RESPONDENT CODE
16

THE PARTICULARS ARE:

I. From approximately January 2006 to May 2006, I was denied equal pay of $50.00 per day of subsistence pay as a Labor Foreman. From approximately June 4, 2006 to August 2006, I was denied subsistence pay of $65.00 a day as a Labor Foreman. From approximately January 2006 to August 2006, I sexually harassed during my employment as a Labor Foreman. On or about August 2006, I was demoted from Labor Foreman to Laborer. On or about September 30, 2006, I was constructively discharged (forced to quit) and at the time of my constructive discharge I was earning 23.39 an hour as a Laborer.

II. Guy Culp, Superintendent did not give me a reason for denial of increase for my subsistence pay, he just told me that I was a stupid woman. On or about August 2006, Ken Gilmore, Consultant stated that I was going back to be a Laborer, no reason was given.

III. I believe that I was denied equal pay, sexually harassed, and constructively discharged on the basis of my sex (female). I believe that I was demoted and constructively discharged (forced to quit) in retaliation for complaining about the sexual harassment.

A. On or about January 1, 2006, I was promoted to Labor Foreman. While all male Labor Foremen were paid $50.00 a day subsistence, I was only paid $25.00 a day. When I asked Guy Culp, Superintendent, why I was not getting the same daily rate, he did not give me a reason, he just stated that I was a stupid woman.

Page 1 of 2

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #    E200607 M-0961-03-rs

EEOC #    N/A

COMPLAINANT'S NAME(S) (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

RESPONDENT'S NAME
Othein, Shawn,  As An Individual

THE PARTICULARS ARE:

B. On May 31, 2006, Bob Brosamer, Owner, sent out a memorandum stating that all Labor Foreman's daily subsistence of $50.00 was increasing to $65.00 effective June 4, 2006.  Guy Culp's reason for the denial is stated in II above.

C. From approximately January 2006 to August 2006, Guy Culp, Superintendent, subjected me to physical and verbal sexual harassment.  The harassment occurred on a weekly basis and created a hostile and threatening work environment.

D. From January 2006 to June 2006, I complained to the following management staff about the sexual harassment; Jose Escobedo, EEO; Shawn Othein, Project/EEO Manager, and John Polegard, Southern Area Manager.  Even though they talked to Guy Culp, Superintendent, the harassment continued.

E. On or about August 2006 Ken Gilmore, Consultant stated that I was going back to being a Laborer and no reason was given.  I believe that I was demoted in retaliation for complaining about the sexual harassment as prior to this I was not informed of any performance problems.

F. On September 2006 I was constructively discharged (forced to quit) because the hostile work environment was affecting my well being.

**RECEIVED**

JAN 22 2007

Department of Fair
Employment and Housing
Oakland District Office

Page 2 of 2

I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated    1-16-07

Fresno
City

COMPLAINANT'S SIGNATURE

DFEH-300-01 (12/99)    F:JRR:sm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  **January 22, 2007**

STATE OF CALIFORNIA

# * * * EMPLOYMENT * - *

| **COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT** | DFEH # | E200607 M-0961-04-rs |
|---|---|---|
| If ... d with EEOC, this form may be affected by the Privacy Act of 1974. | ~~EEOC #~~ | N/A |

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ~~and EEOC~~

COMPLAINANT'S NAME (indicate Mr. or Ms.)
**SHOEMAKER, Charlene (Ms.)**

ADDRESS
**2875 F Northtowne Lane #140**

TELEPHONE NUMBER (INCLUDE AREA CODE)
**(530) 200-3168**

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Reno, NV 89512 | | | Washoe | NV |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
**Escobedo, Jose, As An Individual**

ADDRESS
**1777 Oakland Blvd. Ste 300**

TELEPHONE NUMBER (INCLUDE AREA CODE)
**(925) 837-5600**

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Walnut Creek, CA 94596 | | | Contra Costa | 013 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))

☐ RACE  ☐ SEX  ☐ DISABILITY  ☐ RELIGION  ☐ NATIONAL ORIGIN/ANCESTRY  ☐ DENIAL OF FAMILY/MEDICAL LEAVE  ☐ SEXUAL ORIENTATION
☐ COLOR  ☐ AGE  ☐ MARITAL STATUS  ☐ MEDICAL CONDITION (cancer or genetic characteristics)  ☒ OTHER (SPECIFY) Retaliation for Protesting

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|
| 500 | September 29, 2006 | 16 |

THE PARTICULARS ARE:

I.   From approximately January 2006 to May 2006, I was denied equal pay of $50.00 per day of subsistence pay as a Labor Foreman. From approximately June 4, 2006 to August 2006, I was denied subsistence pay of $65.00 a day as a Labor Foreman. From approximately January 2006 to August 2006, I sexually harassed during my employment as a Labor Foreman. On or about August 2006, I was demoted from Labor Foreman to Laborer. On or about September 30, 2006, I was constructively discharged (forced to quit) and at the time of my constructive discharge I was earning 23.39 an hour as a Laborer.

II.  Guy Culp, Superintendent did not give me a reason for denial of increase for my subsistence pay, he just told me that I was a stupid woman. On or about August 2006, Ken Gilmore, Consultant stated that I was going back to be a Laborer, no reason was given.

III. I believe that I was denied equal pay, sexually harassed, and constructively discharged on the basis of my sex (female). I believe that I was demoted and constructively discharged (forced to quit) in retaliation for complaining about the sexual harassment.

   A. On or about January 1, 2006, I was promoted to Labor Foreman. While all male Labor Foremen were paid $50.00 a day subsistence, I was only paid $25.00 a day. When I asked Guy Culp, Superintendent, why I was not getting the same daily rate, he did not give me a reason, he just stated that I was a stupid woman.

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200607 M-0961-04-rs |
|---|---|---|
| | EEOC # | N/A |

COMPLAINANT'S NAME(S) (indicate Mr. or Ms.)
SHOEMAKER, Charlene (Ms.)

RESPONDENT'S NAME
Escobedo, Jose,  As An Individual

THE PARTICULARS ARE:

B.  On May 31, 2006, Bob Brosamer, Owner, sent out a memorandum stating that all Labor Foreman's daily subsistence of $50.00 was increasing to $65.00 effective June 4, 2006.  Guy Culp's reason for the denial is stated in II above.

C.  From approximately January 2006 to August 2006, Guy Culp, Superintendent, subjected me to physical and verbal sexual harassment.  The harassment occurred on a weekly basis and created a hostile and threatening work environment.

D.  From January 2006 to June 2006, I complained to the following management staff about the sexual harassment; Jose Escobedo, EEO; Shawn Othein, Project/EEO Manager, and John Polegard, Southern Area Manager.  Even though they talked to Guy Culp, Superintendent, the harassment continued.

E.  On or about August 2006 Ken Gilmore, Consultant stated that I was going back to being a Laborer and no reason was given.  I believe that I was demoted in retaliation for complaining about the sexual harassment as prior to this I was not informed of any performance problems.

F.  On September 2006 I was constructively discharged (forced to quit) because the hostile work environment was affecting my well being.

**RECEIVED**

JAN 22 2007

Department of Fair
Employment and Housing
Oakland District Office

Page 2 of 2

☑ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Date  1-16-07

At  Fresno
City

*Charlene R Shoemaker*
COMPLAINANT'S SIGNATURE

DFEH-300-01 (12/99)          F:JRR:sm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  **January 22, 2007**

STATE OF CALIFORNIA

<u>**SHOEMAKER vs. BROSAMER**</u>

# EXHIBIT "B"

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland,    94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



August 8, 2007


CHARLENE SHOEMAKER
2875 F Northtowne Lane, #140
Reno, NV 89512

RE:   E200607M0961-00-rse/37AA708167
      <u>SHOEMAKER/R & L BROSAMER, INC.</u>

Dear CHARLENE SHOEMAKER:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective August 8, 2007.

This letter is also your Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation. If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two


This case may be referred to the U.S. Equal Employment Opportunity Commission (EEOC) for further review. If so, pursuant to Government Code section 12965, subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator


cc:    Case File


Elizabeth A. Madden
Legal Counsel
LYNCH, GILARDI & GRUMMER
475 Sansome St Ste 1800
San Francisco, CA  94111

DFEH-200-08e (06/06)
MALSCHEC

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland,    94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



August 8, 2007


CHARLENE SHOEMAKER
2875 F Northtowne Lane, #140
Reno, NV 89512

RE:    E200607M0961-01-rse
       SHOEMAKER/STERLING CULP, GUY, As an individual

Dear CHARLENE SHOEMAKER:

## NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective August 8, 2007.

This letter is also your Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates ~~Civil Code section 51, 51.5, 51.7, or 54~~. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation. If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two


This case may be referred to the U.S. Equal Employment Opportunity Commission (EEOC) for further review. If so, pursuant to Government Code section 12965, subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator


cc:    Case File




Guy Sterling Culp
Superintendent
R & L BROSAMER, INC.
1777 Oakland Blvd., #300
Walnut Creek, CA 94596

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



August 8, 2007


CHARLENE SHOEMAKER
2875 F Northtowne Lane, #140
Reno, NV 89512

RE:    E200607M0961-02-rse
       <u>SHOEMAKER/POLEGARD, JOHN, As an individual</u>

Dear CHARLENE SHOEMAKER:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective August 8, 2007.

This letter is also your Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation. If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two

This case may be referred to the U.S. Equal Employment Opportunity Commission
(EEOC) for further review. If so, pursuant to Government Code section 12965,
subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's
review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator


cc:    Case File


John Polegard
Southern Area Manager
R & L BROSAMER, INC.
1777 Oakland Blvd., #300
Walnut Creek, CA  94596

DFEH-200-08e (06/06)
MALSCHEC

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland,    94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



August 8, 2007


CHARLENE SHOEMAKER
2875 F Northtowne Lane, #140
Reno, NV 89512

RE:    E200607M0961-03-rse
       SHOEMAKER/OTHEIN, SHAWN, As an individual

Dear CHARLENE SHOEMAKER:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective August 8, 2007.

This letter is also your Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation. If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two


This case may be referred to the U.S. Equal Employment Opportunity Commission (EEOC) for further review. If so, pursuant to Government Code section 12965, subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator


cc:    Case File


Shawn Othein
Project/EEO Manager
R & L BROSAMER, INC.
1777 Oakland Blvd., #300
Walnut Creek, CA 94596

DFEH-200-08e (06/06)
MALSCHEC

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland,   , 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



August 8, 2007


CHARLENE SHOEMAKER
2875 F Northtowne Lane, #140
Reno, NV 89512

RE:   E200607M0961-04-rse
      SHOEMAKER/ESCOBEDO, JOSE, As an individual

Dear CHARLENE SHOEMAKER:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective August 8, 2007.

This letter is also your Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates Civil Code sections 51, 51.7, and 54.  The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation.  If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two


This case may be referred to the U.S. Equal Employment Opportunity Commission
(EEOC) for further review. If so, pursuant to Government Code section 12965,
subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's
review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator


cc:    Case File


Jose Escobedo
EEO
R & L BROSAMER, INC.
1777 Oakland Blvd., #300
Walnut Creek, CA  94596

DFEH-200-08e (06/06)
MALSCHEC

Exhibit C

SOFIAN DAWOOD 250363
LAW OFFICES OF SOFIAN SOLOMON DAWOOD
7170 N. Financial Suite 101
Fresno, California 93720
Telephone: (559) 447-8768
Facsimile: (559) 447-8765



Attorneys for Plaintiff
CHARLENE SHOEMAKER



FILED

2008 APR -4 P 3:23

SUMMONS ISSUED

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA

UNLIMITED CIVIL DIVISION

* * *

CHARLENE SHOEMAKER, an individual,

Plaintiff,

vs.

R & L BROSAMER, INC., a California corporation; GUY CULP, an individual; JOHN POLEGARD, an individual; SHAWN OTHEN, an individual; JOSE ESCOBEDO, an individual; and DOES 1 through 120, inclusive,

Defendants.

Case No. C 08-00913

COMPLAINT FOR DAMAGES FOR:

(1) UNLAWFUL HARASSMENT BASED ON SEX IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, *ET SEQ.*; (2) UNLAWFUL DISCRIMINATION IN PAY BASED ON SEX IN VIOLATION OF CALIFORNIA LABOR CODE § 1197.5; (3) UNLAWFUL DISCRIMINATION BASED ON SEX IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, *ET SEQ.*; (4) UNLAWFUL RETALIATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, *ET SEQ.*; (5) WRONGFUL TERMINATION AND RETALIATION IN VIOLATION OF PUBLIC POLICY; (6) ASSAULT; (7) BATTERY; (8) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (9) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; (10) NEGLIGENT HIRING OF GUY CULP; (11) NEGLIGENT RETENTION OF GUY CULP; (12) RECOVERY OF UNPAID WAGES, INCLUDING OVERTIME COMPENSATION; AND (13) RECOVERY OF WAITING TIME PENALTIES

COMPLAINT FOR DAMAGES

1        COMES NOW Plaintiff CHARLENE SHOEMAKER (hereinafter referred to as

2 "Plaintiff" or "SHOEMAKER"), alleging for her Complaint as follows:

3                        I.

4             **GENERAL ALLEGATIONS**

5        1.      SHOEMAKER is an adult female residing at all times alleged herein in

6 the State of California.

7        2.      Plaintiff is informed and believes, and thereon alleges, that Defendant R &

8 L BROSAMER, INC. ("BROSAMER" or the "Company") is a California corporation with its

9 principal place of business in the City of Walnut Creek, County of Contra Costa, State of

10 California. At all times alleged herein, BROSAMER was an employer as defined in California

11 Government Code section 12926(d) and within the meaning of the California Fair Employment

12 and Housing Act ("FEHA").

13        3.      Plaintiff is informed and believes, and thereon alleges, that Defendant

14 GUY CULP ("CULP") is an individual residing in the State of California who, at all times

15 alleged herein, is and was employed as a paving superintendent at BROSAMER. CULP was, at

16 all times alleged herein, a managing agent of BROSAMER and had both direct and indirect

17 supervisory authority over SHOEMAKER and was her actual and/or ostensible supervisor within

18 the meaning of California Government Code section 12926, subdivision (r). At all times alleged

19 herein, CULP was acting, at least in part, in the course and scope of his employment with

20 BROSAMER and with the permission, consent, and knowledge of BROSAMER.

21 BROSAMER and other managing agents aided, abetted, authorized, condoned, conspired with,

22 and/or ratified the acts of CULP alleged herein.

23        4.      Plaintiff is informed and believes, and thereon alleges, that Defendant

24 JOHN POLEGARD ("POLEGARD") is an individual residing in the State of California who, at

25 all times alleged herein, is and was employed as a Southern Area Manager at BROSAMER.

26 POLEGARD was, at all times alleged herein, a managing agent of BROSAMER and had both

27 direct and indirect supervisory authority over SHOEMAKER and was her actual and/or

28 ostensible supervisor within the meaning of California Government Code section 12926,

**COMPLAINT FOR DAMAGES**

subdivision (r). At all times alleged herein, POLEGARD was acting, at least in part, in the course and scope of his employment with BROSAMER and with the permission, consent, and knowledge of BROSAMER. BROSAMER and other managing agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of POLEGARD alleged herein.

5.     Plaintiff is informed and believes, and thereon alleges, that Defendant SHAWN OTHEIN ("OTHEIN") is an individual residing in the State of California who, at all times alleged herein, is and was employed as a Project/Equal Employment Opportunity Manager ("Project/EEO Manager") at BROSAMER. OTHEIN was, at all times alleged herein, a managing agent of BROSAMER and had both direct and indirect supervisory authority over SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California Government Code section 12926, subdivision (r). At all times alleged herein, OTHEIN was acting, at least in part, in the course and scope of his employment with BROSAMER and with the permission, consent, and knowledge of BROSAMER. BROSAMER and other managing agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of OTHEIN alleged herein.

6.     Plaintiff is informed and believes, and thereon alleges, that Defendant JOSE ESCOBEDO ("ESCOBEDO") is an individual residing in the State of California who, at all times alleged herein, is and was employed as an Equal Employment Opportunity Officer ("EEO Officer") at BROSAMER. ESCOBEDO was, at all times alleged herein, a managing agent of BROSAMER and had both direct and indirect supervisory authority over SHOEMAKER and was her actual and/or ostensible supervisor within the meaning of California Government Code section 12926, subdivision (r). At all times alleged herein, ESCOBEDO was acting, at least in part, in the course and scope of his employment with BROSAMER and with the permission, consent, and knowledge of BROSAMER. BROSAMER and other managing agents aided, abetted, authorized, condoned, conspired with, and/or ratified the acts of ESCOBEDO alleged herein.

7.     At all relevant times herein, SHOEMAKER was an employee of BROSAMER, said employment having commenced in or about May of 2003 and having

1  continued intermittently since said date until her constructive discharge, as set forth below. At

2  all times mentioned herein, SHOEMAKER was duly qualified to perform, and did perform, her

3  employment duties in a satisfactory manner.

4          8.      This action is brought in part to remedy discrimination and harassment

5  against SHOEMAKER on the basis of sex, in the terms, conditions, and privileges of

6  employment; and, to remedy retaliation against Plaintiff for activity protected under, and in

7  violation of, California Government Code section 12900, *et seq.* This action is also brought to

8  remedy discrimination, harassment, and retaliation against SHOEMAKER on the basis of her

9  opposition to the Company's illegal and/or unethical conduct, as well as on the basis of her

10  complaints of, and opposition to, sexual harassment in the workplace and in the terms,

11  conditions, and privileges of employment, and to remedy retaliation against Plaintiff for activity

12  protected under, and in violation of, California Government Code section 12900, *et. seq.*

13          9.      SHOEMAKER timely filed charges of discrimination, harassment, and

14  retaliation with the Department of Fair Employment and Housing (DFEH) against Defendants,

15  true and correct copies of which are attached hereto collectively as Exhibit "A" and incorporated

16  herein by this reference.

17          10.     SHOEMAKER received her Right to Sue letters from the DFEH with

18  respect to the above complaints submitted thereto, true and correct copies of which are attached

19  hereto collectively as Exhibit "B" and incorporated herein by this reference.

20          11.     SHOEMAKER has complied with all prerequisites to jurisdiction of this

21  Court under California Government Code section 12900, *et seq.* and has, therefore, exhausted

22  her administrative remedies.

23          12.     Venue is proper in this County because it is the county in which

24  BROSAMER's principal place of business is located.

25          13.     The true names and capacities of the defendants named herein as DOES 1

26  through 120, inclusive, whether an individual, corporation or otherwise, are unknown to the

27  Plaintiff who, therefore, sues such defendants by fictitious names pursuant to Code of Civil

28  Procedure Section 474. Alternatively, such DOE Defendants are persons whose identities are

known to Plaintiff, but about whom sufficient facts are not known that would support the assertion by Plaintiff of a civil claim at this time. When Plaintiff obtains information supporting a claim against any DOE Defendant, she will seek leave to amend this Complaint and will assert appropriate charging allegations.

14.    BROSAMER, CULP, POLEGARD, OTHEIN, ESCOBEDO, and the DOE Defendants may hereinafter sometimes be referred to collectively as "Defendants."

15.    Plaintiff is informed and believes, and thereon alleges, that defendants, and each of them, are the agents, employees, shareholders, and/or parent, subsidiary, or sister corporations of each other and are responsible for the acts complained of herein and in so acting were functioning as the owner, shareholder, principal, agent, servant, partner, joint venturer, alter-ego, employee, proxy, and/or managing agent of the other defendants herein, and in performing the acts mentioned herein were acting, at least in part, within the course and scope of such authority and with the permission and consent of the other defendants.

16.    Plaintiff is informed and believes, and thereon alleges, that the above defendants, managing agents, and supervisors, aided, abetted, condoned, permitted, approved, authorized, and/or ratified the unlawful acts described herein.

## II.

## BACKGROUND ALLEGATIONS

17.    SHOEMAKER commenced employment with BROSAMER in or about May of 2003 and continued to work for BROSAMER intermittently thereafter until the time of her constructive discharge in or about September of 2006. SHOEMAKER was initially hired as a laborer but was subsequently promoted to the position of foreman.

18.    Plaintiff is informed and believes, and thereon alleges, that in or about January of 2006, CULP was interviewed and hired by Bob Brosamer, one of the owners of BROSAMER, as a paving superintendent. Plaintiff is further informed and believes, and thereon alleges, that immediately thereafter, CULP was assigned to be the paving superintendent of the project about to commence at a canal located in Coachella, California (the "Coachella Project").

LAW OFFICES OF BRIAN
HEFTON HOWARD
...

COMPLAINT FOR DAMAGES

1  CULP was given control and supervision over the BROSAMER employees assigned to work on

2  the Coachella Project.

3       19.    In or about February of 2006, work on the Coachella Project commenced.

4  The Coachella Project was completed on or about August 4, 2006.  From the commencement to

5  the completion of the Coachella Project, SHOEMAKER worked on said project and, at all times,

6  was under the direction and supervision of CULP.  It was during such time that the unlawful acts

7  alleged herein, including unlawful harassment and discrimination based on sex and unlawful

8  retaliation, took place.

9       20.    SHOEMAKER was constructively discharged from her employment with

10  BROSAMER in or about September of 2006.

11                        **FIRST CAUSE OF ACTION**

12   **UNLAWFUL HARASSMENT BASED ON SEX IN VIOLATION OF CALIFORNIA**

13           **GOVERNMENT CODE SECTION 12940,** *ET SEQ.*

14          **(Plaintiff Against BROSAMER, CULP, and DOES 1-10)**

15       21.    The allegations contained in paragraphs 1 through 20 are incorporated

16  herein by this reference and re-alleged as though fully set forth herein.

17       22.    California Government Code section 12940 provides in pertinent part as

18  follows:

19           It shall be an unlawful employment practice . . . (j) (1) For an
            employer... or any other person, because of . . . sex . . . to harass
20           an employee . . . .  An entity shall take all reasonable steps to
            prevent harassment from occurring.
21

22       23.    Plaintiff was, at all times relevant herein, an "employee" as defined within

23  California Government Code section 12926 and was, therefore, a member of the group sought to

24  be protected by the provisions of California Government Code section 12940, *et seq.*

25       24.    BROSAMER is and was, at all times relevant herein, an "employer"

26  within the meaning of California Government Code section 12940(j)(4)(A) and, as such, was and

27  is barred from harassing employees on the bases prohibited in said section.

28

---

5

**COMPLAINT FOR DAMAGES**

25.    During the time SHOEMAKER was employed by BROSAMER, she was subjected to unlawful harassment based on sex. Specifically, she was subjected to unwelcome and unsolicited offensive, sexually oriented and/or gender-based, explicit and implicit verbal, visual, physical, and physically threatening conduct by CULP that took place during and throughout the course of the Coachella Project. Such conduct took a variety of forms, including, but not limited to, the following:

a.    In or about March of 2006, CULP brought a rope to the jobsite of the Coachella Project. Over the course of approximately two (2) days, CULP repeatedly assaulted, harassed, battered, and terrified employees with the rope, including, but not limited to, lassoing certain employees, specifically including SHOEMAKER. When CULP lassoed SHOEMAKER, she almost fell into the canal;

b.    Approximately one (1) week later, CULP brought a whip to the jobsite of the Coachella Project. SHOEMAKER witnessed CULP terrify, assault, harass, and intimidate other BROSAMER employees by means of snapping a whip at said employees at the job site over a two (2)-day period of time.

c.    SHOEMAKER witnessed, on at least two (2) separate occasions, CULP, without invitation, announcement, or authorization, throw rocks at a male employee's crotch while said employee's hands were occupied in such a manner that he was helpless and precluded from protecting himself;

d.    SHOEMAKER witnessed, on at least three (3) occasions, CULP, without invitation, announcement, or authorization, forcibly simulate anal intercourse with a male employee;

e.    On approximately three (3) to four (4) occasions during the course of the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, hugged SHOEMAKER from behind and forcibly simulated anal intercourse with her;

27    ///

28    ///

f.    On approximately two (2) occasions while working on the Coachella Project, CULP, without prior invitation, announcement, or authorization, grabbed SHOEMAKER's breasts;

g.    During the course of the Coachella Project, CULP would follow and/or chase SHOEMAKER in his truck while she was driving along the canal in her truck at nighttime. CULP did this in such a manner as to intimidate SHOEMAKER and cause her to be afraid. CULP would occasionally pull his truck over behind SHOEMAKER's truck at nighttime and, on one occasion, even ran his truck into hers. As a result of this conduct, SHOEMAKER became afraid to drive her truck along the canal roads at nighttime; and

h.    SHOEMAKER regularly and continuously heard CULP make comments or jokes that were gender-based and derogatory toward women, as well as comments or jokes that were sexual in content and/or were vulgar.

26.    The aforementioned behavior, conduct, comments, and harassment toward Plaintiff and others, including fellow employees of BROSAMER, created a work environment that was intimidating, hostile, oppressive, abusive, derogatory toward females, and offensive to Plaintiff and that had the effect of altering the conditions of Plaintiff's employment at BROSAMER, thereby depriving Plaintiff of the benefit of a harassment-free work environment, all in violation of California Government Code section 12940, *et seq.*

27.    BROSAMER further violated Plaintiff's rights in that it, amongst other acts and/or omissions:

a.    Failed to provide Plaintiff with employment conditions and an employment relationship where she could safely and comfortably work, free from physically threatening, visual, and/or verbal harassment based on sex;

b.    Failed to respond adequately and/or effectively to Plaintiff's complaints of sexual harassment;

c.    Failed to timely, thoroughly, and/or objectively investigate Plaintiff's complaints of sexual harassment;

///

8

**COMPLAINT FOR DAMAGES**

d.    Retaliated against Plaintiff for her complaint of and/or opposition to sexual harassment in the workplace, as set forth more particularly below;

e.    Failed to take appropriate action when they knew or should have known of the unlawful sexual harassment of and/or retaliation against Plaintiff;

f.    Failed to take appropriate and/or effective remedial action against those who perpetrated, acquiesced and ratified, or ignored the unlawful sexual harassment of Plaintiff and retaliated against Plaintiff;

g.    Failed to adhere to and/or enforce an effective anti-sexual harassment policy with respect to management, supervisors, staff, and employees; and

h.    Aided and abetted in the commission of the above wrongful acts.

28.    As a direct and proximate result of Defendants' unlawful conduct and employment practices, Plaintiff has suffered interference with her employment responsibilities, the indignity of harassment, the invasion of her rights to be free from harassment, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or have been, manifested as emotional distress and mental suffering, as well as physical manifestations of her emotional distress.

29.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, severe anxiety, painful embarrassment among friends, family, and co-workers, disruption of her personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

30.    In performing the acts and/or failing to perform the acts alleged hereinabove, Defendants, and each of them, acted with malice toward Plaintiff and/or a reckless indifference to her statutorily protected rights and in conscious disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of California.    As such, Defendants are guilty of oppression and malice for which Plaintiff is entitled to punitive damages, in an amount to be proven at trial.

31.    California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.    California

9

COMPLAINT FOR DAMAGES

1   Government Code section 12965, subsection (b), provides that reasonable attorneys' fees and

2   costs are recoverable herein by the prevailing party, within the discretion of the court. Plaintiff

3   has retained attorneys for the prosecution of this action. As a result, Plaintiff is entitled to her

4   reasonable attorneys' fees and costs herein incurred.

5                                **SECOND CAUSE OF ACTION**

6   **UNLAWFUL DISCRIMINATION IN PAY BASED ON SEX IN VIOLATION OF**

7                          **CALIFORNIA LABOR CODE § 1197.5**

8                        **(Plaintiff Against BROSAMER and DOES 11-20)**

9           32.     The allegations contained in paragraphs 1 through 31 are incorporated

10  herein by this reference and re-alleged as though fully set forth herein.

11          33.     California Labor Code section 1197.5 provides in pertinent part as

12  follows:

13              No employer shall pay any individual in the employer's employ
14              at wage rates less than the rates paid to employees of the
                opposite sex in the same establishment for equal work on jobs
15              the performance of which requires equal skill, effort, and
                responsibility, and which are performed under similar working
16              conditions.

17          34.     Almost immediately following commencement of the Coachella Project,

18  SHOEMAKER was promoted to the position of "foreman." As a foreman, SHOEMAKER was

19  paid a daily premium rate of $25.00 in addition to her hourly wages. However, male foremen at

20  BROSAMER who performed equal work on jobs that required the same amount of skill, effort,

21  and responsibility and were performed under similar working conditions were paid a daily

22  premium rate of $50.00 in addition to their hourly wages earned. Moreover, on or about June 4,

23  2006, the male foremen were given a raise in their daily premium pay from the amount of $50.00

24  to $65.00. However, SHOEMAKER's daily premium pay as a foreman was not increased and

25  remained at $25.00 throughout the duration of her time as a foreman with BROSAMER.

26  SHOEMAKER is informed and believes, and thereon alleges, that she received a lower daily

27  premium pay as a foreman because she was female.

28  ///

---

                                        10

                            COMPLAINT FOR DAMAGES

35.     Plaintiff is informed and believes, and thereon alleges, that BROSAMER failed and refused to pay her the amount of the difference in the pay she received as a foreman and the pay her male co-workers received as foremen ("Pay Variance") and, in so doing, violated California Labor Code § 1197.5.

36.     Plaintiff is further informed and believes, and thereon alleges, that BROSAMER's violation of California Labor Code § 1197.5 was willful in that, among other things, Plaintiff brought the Pay Variance to the attention of BROSAMER management while she was still employed at BROSAMER.  Nevertheless, BROSAMER continued to pay SHOEMAKER a lower daily premium as a foreman than that paid to its male foremen.

37.     Pursuant to California Labor Code section 1197.5, SHOEMAKER is entitled to the amount of the Pay Variance, plus interest thereon, plus "liquidated damages" in an amount equal to the Pay Variance.

38.     California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.  California Labor Code section 1197.5, subsection (g), provides that reasonable attorneys' fees and costs are recoverable herein by the prevailing party, within the discretion of the court.  Plaintiff has retained attorneys for the prosecution of this action.  As a result, Plaintiff is entitled to her reasonable attorneys' fees and costs herein incurred.

## THIRD CAUSE OF ACTION

### UNLAWFUL DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940, *ET SEQ.*

#### (Plaintiff Against BROSAMER and DOES 21-30)

39.     The allegations contained in paragraphs 1 through 38 are incorporated herein by this reference and re-alleged as though fully set forth herein.

40.     California Government Code section 12940 provides in pertinent part as follows:

> It shall be an unlawful employment practice . . . . (a) For an employer, because of . . . sex . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

41.    Plaintiff was, at all times relevant herein, an "employee" as defined within California Government Code section 12926 and was, therefore, a member of the group sought to be protected by the provisions of California Government Code section 12940, *et seq.*

42.    BROSAMER is and was, at all times relevant herein, an "employer" within the meaning of California Government Code section 12940(j)(4)(A) and, as such, was and is barred from discriminating against employees on the bases prohibited in said section.

43.    During the time SHOEMAKER was employed by BROSAMER, she was subjected to unlawful discrimination based on sex. Specifically, she was discriminated against in compensation, as well as in the terms, conditions, and privileges of employment at BROSAMER because she was female. Such discrimination took a variety of forms. including, but not limited to, the following:

a.    As a female, SHOEMAKER was denied equal pay and was paid a lower daily premium rate of pay as a foreman than her male co-workers in equivalent positions were paid, as more specifically alleged above;

b.    As a female, SHOEMAKER was denied a raise in her daily premium rate of pay as a foreman when her male co-workers in equivalent positions were given such a raise;

c.    In or about August of 2006, SHOEMAKER was demoted from her position as a foreman to that of a laborer. SHOEMAKER is informed and believes, and thereon alleges, that she was demoted, at least in part, because she was female; and

d.    In or about September of 2006, SHOEMAKER was constructively discharged from her employment at BROSAMER, as more specifically detailed below.

44.    The aforementioned behavior, actions, omissions. conduct, comments, discharge, and discrimination committed by BROSAMER and its agents, representatives, and employees against Plaintiff on the basis of her sex deprived Plaintiff of the benefit of a discrimination-free work environment, all in violation of California Government Code section 12940, *et seq.*

///

45.    As a direct and proximate result of Defendants' unlawful conduct and employment practices, Plaintiff suffered interference with her employment responsibilities, the indignity of harassment, the invasion of her rights to be free from harassment, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or have been, manifested as emotional distress and mental suffering, as well as physical manifestations of her emotional distress.

46.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, severe anxiety, painful embarrassment among friends, family, and co-workers, disruption of her personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

47.    In performing the acts and/or failing to perform the acts alleged hereinabove, BROSAMER, and its agents, representatives, and employees, acted with malice toward Plaintiff and/or a reckless indifference to her statutorily protected rights and in conscious disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of California.  As such, Defendants are guilty of oppression and malice for which Plaintiff is entitled to punitive damages, in an amount to be proven at trial.

48.    California Code of Civil Procedure section 1021 provides that attorneys' fees are recoverable in an action for which they are specifically provided by statute.  California Government Code section 12965, subsection (b), provides that reasonable attorneys' fees and costs are recoverable herein by the prevailing party, within the discretion of the court.  Plaintiff has retained attorneys for the prosecution of this action.  As a result, Plaintiff is entitled to her reasonable attorneys' fees and costs herein incurred.

## FOURTH CAUSE OF ACTION

### UNLAWFUL RETALIATION IN EMPLOYMENT IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940, *ET SEQ.*

### (Plaintiff Against All Defendants and DOES 31-40)

49.    The allegations contained in paragraphs 1 through 48 are incorporated herein by this reference and re-alleged as though fully set forth herein.

**COMPLAINT FOR DAMAGES**

50.    California Government Code section 12940 provides in pertinent part as follows:

It shall be an unlawful employment practice . . . (h) for any employer . . . or person . . . to harass . . . to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden under this part, or because the person has filed a complaint, testified or assisted in any proceeding under this part. (i) For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this part, or attempt to do so.

51.    Plaintiff was, at all times relevant to this Complaint, an employee as defined by California Government Code section 12940, which prohibits any employer or person from harassing, discharging, expelling, or otherwise discriminating (i.e., "retaliating") against anyone because he or she opposes the practices made illegal by California Government Code section 12940, et seq. and was, therefore, a member of the group sought to be protected by the statute.

52.    Defendants were, at all times herein, employers and/or persons within the meaning of California Government Code section 12940(j)(4)(A) and, as such, are barred from discriminating in employment decisions, harassing, or discharging an employee because that employee opposed practices that are made illegal under FEHA.

53.    During the course of the Coachella Project, SHOEMAKER repeatedly complained to higher management at BROSAMER, including, but not limited to, CULP, OTHEIN, POLEGARD, and ESCOBEDO, of the aforementioned conduct, including, but not limited to, the harassment and discrimination to which she was subjected based on her sex, which conduct was unlawful in violation of FEHA and which SHOEMAKER reasonably believed to be unlawful.

54.    Plaintiff is informed and believes, and thereafter alleges, that CULP was eventually suspended from work as a result of his inappropriate, harassing, and/or discriminatory conduct at work. However, following said suspension, CULP returned to the Coachella Project and remained in the position of paving superintendent, where he continued to have direct supervisory control over SHOEMAKER and other employees. Following his return, CULP

1  continued to engage in the same type of harassing conduct as before, including, but not limited
2  to, throwing rocks at an employee in the crotch. In addition, following CULP's return from said
3  suspension, he followed and/or chased SHOEMAKER in her truck along the canal at the
4  Coachella Project jobsite, as more specifically described above. Also following CULP's return
5  from said suspension, he attempted to alienate SHOEMAKER from the other members of the
6  crew by instructing them not to communicate with her. SHOEMAKER is informed and believes,
7  and thereon alleges, that said actions of CULP were retaliatory in nature and that said harassment
8  and/or discrimination against her increased because she had complained about and opposed
9  CULP's unlawful conduct.

10      55.      Approximately six (6) weeks following CULP's return from his
11  suspension, the Coachella Poject ended. Following completion of the Coachella Project, CULP
12  went to work as the paving superintendent of a project in San Jose, California (the "San Jose
13  Project").

14      56.      Based on Plaintiff's past experience in working for BROSAMER, Plaintiff
15  is informed and believes, and thereon alleges, that the ordinary practice of BROSAMER upon
16  completion of a project would be to transfer most, if not all, of the crew who worked on the
17  completed project to the project where the paving superintendent of the completed project was
18  being transferred. However, SHOEMAKER was not transferred to work on the San Jose Project.
19  Plaintiff is informed and believes, and thereon alleges, that no member of the crew who worked
20  on the Coachella Project was transferred to work on the San Jose Project. Although
21  BROSAMER proffered that a crew was already in place to work on the San Jose Project,
22  Plaintiff is informed and believes, and thereon alleges, that this proffered reason was merely a
23  pretext and that the real reason for which SHOEMAKER was not transferred to work on the San
24  Jose Project was because SHOEMAKER had complained about and opposed the unlawful
25  practices set forth herein, which SHOEMAKER reasonably believed to be, and which were, in
26  violation of FEHA. With respect to the entire crew from the Coachella Project, Plaintiff is
27  informed and believes, and thereon alleges, that said crew was not transferred to work on the San
28  Jose Project because the members had knowledge of the unlawful conduct that had taken place

15

COMPLAINT FOR DAMAGES

1 | on the Coachella Project jobsite with respect to SHOEMAKER and other employees, as alleged

2 | herein.

3 |       57.    As a result of not being transferred to work on the San Jose Project,

4 | SHOEMAKER was assigned by BROSAMER to the task of working in the yard. At this time,

5 | SHOEMAKER was demoted from her position as a foreman. SHOEMAKER is informed and

6 | believes, and thereon alleges, that said demotion was, at least in part, due to the fact that

7 | SHOEMAKER had complained about, and opposed, conduct that she reasonably believed to be

8 | unlawful under FEHA. While assigned to the task of working in the yard, SHOEMAKER

9 | earned a lower wage than she had earned during the course of the Coachella Project. She was

10 | also scheduled to work fewer hours, and the task of working in the yard was far less desirable

11 | than working on a paving project, such as the Coachella Project or the San Jose Project. As a

12 | result of these factors, SHOEMAKER was forced to quit her employment with BROSAMER and

13 | seek employment elsewhere, which constituted a constructive discharge.

14 |       58.    The aforesaid acts, conduct, behavior, discharge and discrimination

15 | committed by Defendants and their agents, representatives, and employees, against Plaintiff on

16 | the basis of Plaintiff's opposition to and complaints about practices made illegal by California

17 | Government Code section 12940, et *seq.*, which Plaintiff reasonably believed to be illegal, such

18 | as, but not limited to, the unlawful harassment and/or discrimination of Plaintiff and/or other

19 | employees of BROSAMER, including, but not limited to, Plaintiff's demotion and constructive

20 | discharge of employment, as well as increased harassment and/or other inappropriate and

21 | outrageous conduct directed toward Plaintiff, created a work environment that was intimidating,

22 | hostile, oppressive, abusive, and offensive to Plaintiff, and had the effect of altering the

23 | conditions of Plaintiff's employment with the Company, thereby depriving Plaintiff of the

24 | benefit of a harassment-free, discrimination-free, and retaliation-free work environment, all in

25 | violation of California Government Code section 12940, et *seq.*

26 | ///

27 | ///

28 | ///

**COMPLAINT FOR DAMAGES**

59.     Defendants further violated Plaintiff's rights in that they, amongst other acts and/or omissions:

a.     Failed to provide Plaintiff with employment conditions and a relationship where she could safely work, free from physically threatening, visual, and/or verbal harassment and/or discrimination;

b.     Failed to respond adequately or effectively to Plaintiff's complaints of reasonably perceived sexual harassment and/or discrimination;

c.     Failed to timely, thoroughly, and/or objectively investigate Plaintiff's complaints of reasonably perceived sexual harassment and/or discrimination;

d.     Retaliated against Plaintiff for her complaints of and/or opposition to reasonably perceived unlawful harassment and/or discrimination in the workplace;

e.     Demoted, constructively discharged, and discriminated against Plaintiff for her complaints of and opposition to reasonably perceived unlawful harassment and/or discrimination in the workplace;

f.     Failed to take appropriate action when they knew, or should have known, of the unlawful harassment of, retaliation against, discharge, and/or discrimination against Plaintiff;

g.     Failed to take appropriate and/or effective remedial action against those who perpetrated, acquiesced and ratified, or ignored the unlawful harassment and/or discrimination of Plaintiff and retaliated, discharged, and/or discriminated against Plaintiff;

h.     Failed to adopt and/or disseminate, adhere to, or enforce an effective anti-sexual harassment and/or discrimination policy with respect to management, supervisors, staff, and employees; and

i.     Aided and abetted each other in committing these wrongful acts.

60.     As a further direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered interference with her employment responsibilities, the indignity of discrimination, the invasion of her right to be free from discrimination, the invasion of her emotional tranquility, loss of self-esteem and grave humiliation, which are, or

-17-
**COMPLAINT FOR DAMAGES**

1  have been, manifested as emotional distress and mental suffering and physical manifestations of
2  his emotional distress.

3      61.    As a further direct and proximate result of said unlawful employment
4  practices, Plaintiff has suffered mental anguish, outrage, severe anxiety about her future and her
5  ability to support herself and her family, the potential of harm to her employability and earning
6  capacity, painful embarrassment among friends, family and co-workers, disruption of her
7  personal life, and loss of enjoyment of many of the ordinary pleasures of her everyday life.

8      62.    In doing the acts and/or failing to do the acts alleged hereinabove, the
9  Defendants and each of them, engaged in discriminatory acts and conduct with malice toward
10 Plaintiff and/or a reckless indifference to her statutorily protected rights and in a conscious
11 disregard of the rights, both statutory and common law, guaranteed to Plaintiff by the State of
12 California.  As such, Defendants are guilty of oppression and malice for which Plaintiff is
13 entitled to punitive damages, in an amount to be proven at trial.

14     63.    California Code of Civil Procedure section 1021 provides that attorneys'
15 fees are recoverable in an action for which they are specifically provided by statute.  Government
16 Code section 12965(b) provides that reasonable attorneys' fees and costs are recoverable herein
17 by the prevailing party, within the discretion of the court.  Plaintiff has retained attorneys for the
18 prosecution of this action.  As a result, Plaintiff is entitled to her reasonable attorneys' fees and
19 costs herein incurred.

20 ## FIFTH CAUSE OF ACTION
21 ## WRONGFUL TERMINATION AND RETALIATION IN VIOLATION OF PUBLIC
22 ## POLICY
23 ### (Plaintiff Against All Defendants and DOES 41-50)

24     64.    The allegations contained in paragraphs 1 through 63 are incorporated
25 herein by this reference and re-alleged as though fully set forth herein.

26     65.    At all times mentioned herein, California Government Code section 12940
27 was in full force and effect and was binding on Defendants.  Said section requires Defendants to
28 refrain from retaliating against any employee, such as by discharging such employee and/or

1   otherwise discriminating against such employee, on the basis of his or her opposition to the

2   practices forbidden, or reasonably perceived as forbidden, by California Government Code

3   section 12940, et seq. or participation in a complaint of such unlawful practices. In addition, at

4   all times relevant hereto, California Labor Code section 1102.5 (the California "Whistleblower

5   Statute") was and is in full force and effect. Said statute prohibits employers from retaliating

6   against employees for reporting information that discloses what the employee reasonably

7   believes to be a violation of, or non-compliance with, a state and/or federal statute or regulation

8   (i.e., a violation of FEHA or parallel federal laws).

9           66.     Plaintiff believes, and thereon alleges, that her opposition to, reports of,

10  and complaints about practices made unlawful under California Government Code section

11  12940, et seq. and California Labor Code section 1197.5, which Plaintiff reasonably believed to

12  be unlawful thereunder, were factors in Defendants' hostility towards and retaliation against

13  Plaintiff, including Defendants' demotion of Plaintiff and failure to transfer and/or assign

14  Plaintiff to the San Jose Project and to transfer her to work in the yard instead, which ultimately

15  culminated in Plaintiff's constructive discharge of employment. Such retaliation is in violation

16  of California Government Code section 12940, et seq., as well as the whistleblower protections

17  provided in, among other California statutes, California Labor Code section 1102, et seq., and

18  has resulted in damages and harm to Plaintiff as alleged herein.

19          67.     As a proximate result of Defendants' willful, knowing, and intentional

20  discrimination and retaliation against Plaintiff, as alleged herein, Plaintiff has sustained, and

21  continues to sustain, substantial losses in earnings and/or other employment benefits in an

22  amount according to proof at trial.

23          68.     As a further proximate result of Defendants' willful, knowing, and

24  intentional discrimination and retaliation against Plaintiff, as alleged herein, Plaintiff has

25  suffered, and will continue to suffer, humiliation, emotional distress, mental and physical pain

26  and anguish, and the manifestations thereof, all to her damage in an amount according to proof at

27  trial.

28

19

**COMPLAINT FOR DAMAGES**

69.    Plaintiff has incurred, and will continue to incur, legal expenses and attorneys fees in an amount according to proof at trial.

70.    In doing the things herein alleged, Defendants acted oppressively, maliciously, intentionally, despicably, and in conscious disregard of Plaintiff's rights. Consequently, Plaintiff is entitled to recovery of exemplary or punitive damages in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

### ASSAULT

### (Plaintiff Against CULP and DOES 51-60)

71.    The allegations contained in paragraphs 1 through 70 are incorporated herein by this reference and re-alleged as though fully set forth herein.

72.    While working on the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, hugged SHOEMAKER from behind and forcibly simulated anal intercourse with her.  Also while working on the Coachella Project, CULP, while standing behind SHOEMAKER and without prior invitation, announcement, or authorization, grabbed SHOEMAKER's breasts.  In addition, during the course of the Coachella Project, CULP would follow and/or chase SHOEMAKER in his truck while she was driving along the canal in her truck at nighttime.  CULP did this in such a manner as to intimidate SHOEMAKER and cause her to be afraid.  CULP would occasionally pull his truck over behind SHOEMAKER's truck at nighttime and, on one occasion, even ran his truck into hers.  As a result of this conduct, SHOEMAKER became afraid to drive her truck along the canal roads at nighttime.  In addition, CULP lassoed SHOEMAKER with a rope at the Coachella Project jobsite.

73.    In doing the acts as alleged herein, CULP intended to cause or to place SHOEMAKER in apprehension of a harmful and/or offensive contact with her person.

74.    As a proximate result of CULP's acts as alleged herein, SHOEMAKER was, in fact, placed in great apprehension of a harmful and/or offensive contact with her person.

///

**COMPLAINT FOR DAMAGES**

75.     As a proximate result of the acts of CULP as alleged herein, SHOEMAKER was injured in her health, strength, and activity, sustaining injuries to her nervous system and person, all of which have caused, and continue to cause, SHOEMAKER great mental, physical, and nervous pain and suffering. As a result of these injuries, Plaintiff has suffered general damages in an amount according to proof at trial.

76.     The aforementioned conduct of CULP was willful and malicious and was intended to oppress and cause injury to SHOEMAKER. As such, Plaintiff is entitled to an award of exemplary or punitive damages in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

## BATTERY

### (Plaintiff Against CULP and DOES 61-70)

77.     The allegations contained in paragraphs 1 through 76 are incorporated herein by this reference and re-alleged as though fully set forth herein.

78.     Immediately following the above assault committed by CULP against SHOEMAKER, CULP made contact with SHOEMAKER's person, including her buttocks and breasts. Moreover, immediately following the above assaults committed by CULP against SHOEMAKER, CULP made contact with SHOEMAKER's person with the rope he used to lasso her, as well as when he ran his truck into SHOEMAKER's truck.

79.     In doing the things alleged herein, CULP acted with the intent to make a contact with SHOEMAKER's person.

80.     At no time did SHOEMAKER consent to any of CULP's contact with SHOEMAKER's person, as alleged herein. At all times herein mentioned, SHOEMAKER in fact found the contact CULP made with her person to be offensive to her person and dignity.

81.     As a proximate result of the acts of CULP as alleged herein, SHOEMAKER was injured in her health, strength, and activity, sustaining injuries to her nervous system and person, all of which have caused, and continue to cause, SHOEMAKER great mental, physical, and nervous pain and suffering. As a result of these injuries, Plaintiff has suffered general damages in an amount according to proof at trial.

---

21

**COMPLAINT FOR DAMAGES**

82.     The aforementioned conduct of CULP was willful and malicious and was intended to oppress and cause injury to SHOEMAKER. As such, Plaintiff is entitled to an award of exemplary or punitive damages in an amount according to proof at trial.

## EIGHTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Plaintiff Against All Defendants and DOES 71-80)

83.     The allegations contained in paragraphs 1 through 82 are incorporated herein by this reference and re-alleged as though fully set forth herein.

84.     In doing the things alleged herein, Defendants engaged in outrageous and unprivileged conduct with reckless disregard of the probability of causing Plaintiff emotional distress.

85.     Such outrageous and unprivileged conduct on the part of Defendants caused Plaintiff to suffer severe emotional distress. As a proximate result of Defendants' intentional infliction of emotional distress on Plaintiff, Plaintiff has suffered damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

86.     In doing the things alleged herein, Defendants acted oppressively, maliciously, intentionally, and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to recover exemplary or punitive damages in an amount according to proof at trial.

## NINTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### (Plaintiff Against All Defendants and DOES 81-90)

87.     The allegations contained in paragraphs 1 through 86 are incorporated herein by this reference and re-alleged as though fully set forth herein.

88.     In doing the things alleged herein, Defendants breached the duty of care that they owed to Plaintiff to act in a reasonable manner and provide a workplace free of unlawful harassment, discrimination, and retaliation.

///

22

COMPLAINT FOR DAMAGES

89.    As a proximate result of Defendants' careless breach of such duty of care owed to Plaintiff, Plaintiff has suffered consequential damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

90.    In doing the things alleged herein, Defendants acted oppressively and maliciously with intentional and conscious disregard of Plaintiff's rights.  Accordingly, Plaintiff is entitled to recover exemplary or punitive damages in an amount according to proof.

### TENTH CAUSE OF ACTION

### NEGLIGENT HIRING OF CULP

### (Plaintiff Against Defendant BROSAMER and DOES 91-100)

91.    The allegations contained in paragraphs 1 through 90 are incorporated herein by this reference and re-alleged as though fully set forth herein.

92.    Defendant BROSAMER owed a duty of care to its employees, including Plaintiff, to take reasonable measures to ensure that the supervisors it hired and required its employees to work under were adequately screened so that its employees were not exposed to abuse.

93.    Defendant BROSAMER breached said duty of care when it hired and placed Defendant CULP into a supervisory position when BROSAMER knew, or should have known by an exercise of reasonable diligence, that CULP was not suited to serve as a supervisor.

94.    As a proximate result of Defendant BROSAMER's breach of its duty of care owed to its employees, including Plaintiff, Plaintiff was subjected to the unlawful harassing, discriminatory, retaliatory, and/or tortuous conduct of CULP as alleged herein..  As a proximate result of BROSAMER'S negligent hiring of CULP, Plaintiff has suffered damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

///
///
///

**COMPLAINT FOR DAMAGES**

## ELEVENTH CAUSE OF ACTION

## NEGLIGENT RETENTION OF CULP

### (Plaintiff Against Defendant BROSAMER and DOES 101-110)

95.     The allegations contained in paragraphs 1 through 94 are incorporated herein by this reference and re-alleged as though fully set forth herein.

96.     Defendant BROSAMER owed a duty of care to its employees, including Plaintiff, to take reasonable measures to ensure that supervisors were not being retained within the Company if said supervisors were unfit as such.  BROSAMER owed its employees, including Plaintiff, this duty so that such employees were not exposed to abuse and the conduct alleged herein.

97.     Defendant BROSAMER breached said duty of care to its employees, including Plaintiff, by retaining CULP when BROSAMER knew, or should have known, by an exercise of reasonable diligence, that CULP was not suited to be retained as a supervisor.  In addition to CULP'S conduct being capable of observance and evaluation by BROSAMER, including its owners and/or upper management, BROSAMER was specifically informed by Plaintiff of the unlawful, harassing, discriminatory, retaliatory, and/or tortious conduct of CULP toward Plaintiff and/or other employees of BROSAMER.

98.     As a result of BROSAMER's breach of its duty of care owed to its employees, including Plaintiff, Plaintiff was subjected to the unlawful harassing, discriminatory, retaliatory, and/or tortious conduct of CULP, as alleged herein.  As a result of Defendant BROSAMER'S negligent retention of CULP, Plaintiff has suffered damages in an amount according to proof for lost past and future wages, out-of-pocket expenses, lost employment benefits, diminished employability, and emotional distress damages.

## TWELFTH CAUSE OF ACTION

## RECOVERY OF UNPAID WAGES, INCLUDING OVERTIME COMPENSATION

### (Plaintiff Against Defendant BROSAMER and DOES 111-120)

99.     The allegations contained in paragraphs 1 through 98 are incorporated herein by this reference and re-alleged as though fully set forth herein.

Law Offices of Sofian
Solomon Dawood
710 N. Brand Blvd.
Suite 120
Glendale, CA 91203

100.    During the entire time Plaintiff worked on the Coachella Project, as set forth more specifically above, she reported to work no less than one hour prior to the start time of each of her shifts and performed work from said time up to the start of each shift ("Pre-Shift Hours"). Plaintiff is informed and believes, and thereon alleges, that CULP and/or other supervisors at BROSAMER were aware that Plaintiff would begin work no less than one (1) hour prior to the start of her shift time and that they permitted Plaintiff to do so. On average, Plaintiff worked at least five (5) shifts per work throughout the duration of the Coachella Project, which resulted in Plaintiff having worked a total of approximately 5 Pre-Shift Hours per week throughout said period of time. Plaintiff was not paid wages for any of these Pre-Shift Hours worked. Approximately all of the Pre-Shift Hours were worked by Plaintiff in addition to her eight (8)-hour shift per scheduled work day, thereby entitling Plaintiff to overtime compensation for each of the Pre-Shift Hours. Plaintiff's regular rate of pay, when including her daily premium pay as set forth above, was $25.00 per hour during this period of time. Accordingly, Plaintiff's applicable overtime rate of pay, when including her daily premium pay as set forth above and calculating said overtime rate of pay as one and one-half (1½) times her regular rate of pay, was $37.50 per hour during this period of time.

101.    Throughout the duration of the Coachella Project, Plaintiff was not paid for the Pre-Shift Hours worked at the time of the applicable pay periods for which such hours were worked. In addition, at the time of Plaintiff's constructive discharge, as alleged above, she was not paid for any of the Pre-Shift Hours worked.

102.    Plaintiff did not accrue additional vacation time, retirement pay, and/or paid time off based on the Pre-Shift Hours she worked, to which she was entitled. Throughout the duration of the Coachella Project, Plaintiff accrued vacation pay, retirement pay and/or paid time off at the rate of 25.00 per hour.

103.    BROSAMER's failure to pay Plaintiff the amount due for the Pre-Shift Hours worked, in addition to accrued vacation time based on the Pre-Shift Hours, violated California Labor Code section 201.

///

104.    There is now due and owing to Plaintiff unpaid wages, including overtime compensation, in the total amount of $37.50 for each Pre-Shift Hour worked. BROSAMER has failed to pay said amounts that are due and owing, and continues to fail to pay said amounts, to Plaintiff.

105.    California Labor Code section 1198 makes it unlawful for an employer to employ its employees for longer than the hours set forth in the Industrial Welfare Commission orders ("IWC Orders") or under conditions prohibited by such orders. At all times during and throughout the Coachella Project, the applicable IWC Order(s) required BROSAMER to pay Plaintiff at a rate equal to one and one-half (1½) times her regular rate of pay for all hours worked in excess of eight (8), but less than 12, hours per workday.

106.    BROSAMER's failure to pay Plaintiff at the rate of one and one-half (1½) times her regular rate of pay for each of the Pre-Shift Hours worked violated California Labor Code section 1198.

107.    Under 29 U.S.C. section 216, subsection (b), Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime compensation;

108.    Pursuant to California Labor Code sections 218.5 and 1194, subsection (a), Plaintiff is entitled to recover her reasonable attorneys' fees and costs incurred in this action, which Plaintiff requests this Court to so award.

109.    Pursuant to California Labor Code sections 218.6 and 1194, subsection (a), Plaintiff further requests that the Court award her interest on all due and unpaid wages and overtime compensation, at the legal rate set forth in California Civil Code section 3289, subsection (b), accruing from and after the date the wages and overtime compensation were due and payable.

## THIRTEENTH CAUSE OF ACTION

### RECOVERY OF WAITING TIME PENALTIES

#### (Plaintiff Against Defendant BROSAMER and DOES 121-130)

110.    The allegations contained in paragraphs 1 through 109 are incorporated herein by this reference and re-alleged as though fully set forth herein.

26

**COMPLAINT FOR DAMAGES**

1     111.     BROSAMER's failure to pay wages, including overtime compensation, to

2 Plaintiff, as alleged above, was willful in that BROSAMER intentionally failed to pay Plaintiff

3 the wages and overtime compensation owed to her, thereby entitling Plaintiff to an award of

4 penalties under California Labor Code section 203, which provides that an employee's wages

5 shall continue as a penalty until paid or for a period of up to 30 days from the time they were

6 due, whichever period is shorter.

7     112.     Defendant has continued to fail to pay Plaintiff the wages, including

8 overtime compensation, owed to her. Such failure has continued over a period of time well in

9 excess of 30 days from the date such wages were due, thereby entitling Plaintiff to an award of

10 penalties in an amount equal to her daily rate of pay multiplied by 30 days.

11                         **REQUEST FOR JURY TRIAL**

12         WHEREFORE, the Plaintiff prays as follows:

13     1.     For compensatory damages, including but not limited to, past and future

14 lost wages, lost employee benefits (with interest on said amounts), diminished employability,

15 other economic injury, and emotional distress damages, all in an amount according to proof at

16 trial;

17     2.     For liquidated damages in accordance with California Labor Code section

18 1197.5, subsection (b), in an amount according to proof at trial;

19     3.     For unpaid wages and overtime compensation in an amount according to

20 proof at trial;

21     4.     For interest on unpaid wages and overtime compensation in accordance

22 with California Labor Code sections 218.6 and 1194, subsection (a), in an amount according to

23 proof at trial;

24     5.     For liquidated damages in an amount equal to the unpaid overtime

25 compensation in accordance with 29 U.S.C. section 216, subsection (b), in an amount according

26 to proof at trial;

27     6.     For waiting time penalties under California Labor Code section 203 in an

28 amount according to proof at trial;

LAW OFFICES OF SCHAN
CHAPMAN STANDER
1737 N. Figueroa Street
Suite 101
Fresno, CA 93705

---

37

**COMPLAINT FOR DAMAGES**

7.    For special damages, according to proof at trial;

8.    For exemplary and punitive damages, according to proof;

9.    For pre-judgment interest under Civil Code section 3288, as well as any and all other applicable statutory authority, in an amount according to proof at trial;

10.    For costs of suit, including reasonable attorneys' fees, according to proof; and

11.    For such other and further relief as the Court may deem just and proper.

Dated: April 1, 2008                          LAW OFFICES OF SOFIAN SOLOMON DAWOOD

                                              By _____
                                                 SOFIAN DAWOOD
                                                 Attorney for Plaintiff
                                                 CHARLENE SHOEMAKER

Law Offices of Sofian
Solomon Dawood
3170 N. Travers de Drive,
Suite 101
Napa, CA 93700

28

**COMPLAINT FOR DAMAGES**